UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

KATHRYN FJELD,

                          Plaintiff,

  -against-

INTERNATIONAL BUSINESS MACHINES,
INC., d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ, and
ROBERT BARRITZ,

                        Defendants.

Index No. 07-CV-10355 (CM)(HBP)

**DECLARATION OF
DIANE KREBS IN SUPPORT OF
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR A MORE
DEFINITE STATEMENT**

----------------------------------------------------------------X

      Diane Krebs, an attorney duly admitted to practice in the State of New York, hereby declares the following under the penalty of perjury:

      1.     I am a partner with the law firm of Gordon & Rees, LLP, attorneys for Defendants IBM and Isogon Corporation.

      2.     I submit this declaration in support of Defendant's motion to dismiss or, in the alternative, for a more definite statement.

      3.     Annexed hereto as Exhibit A is Plaintiff's initial Complaint, filed in Supreme Court, New York County on or about January 4, 2006.

      5.     Annexed hereto as Exhibit B is Defendants' notice of motion to dismiss Plaintiff's initial Complaint in Supreme Court, New York County, dated February 9, 2006.

      6.     Annexed hereto as Exhibit C is the Affirmation of Mercedes Colwin, dated February 7, 2006, filed in support of Defendants' motion to dismiss Plaintiff's initial Complaint.

      7.     Annexed hereto as Exhibit D is Defendants' Memorandum of Law in support of the motion to dismiss Plaintiff's initial Complaint, dated February 7, 2006.

8.     Annexed hereto as Exhibit E is the Stipulation providing that Plaintiff had until April 20, 2006 to file an amended Complaint correcting the deficiencies noted in Defendants' motion to dismiss the Complaint, in lieu of filing opposition papers.

9.     Annexed hereto as Exhibit F is the May 11, 2006 Order of the Supreme Court, New York County, dismissing Plaintiff's Complaint for failure to file papers in opposition to Defendants' motion to dismiss.

10.    Annexed hereto as Exhibit G is Plaintiff's re-filed Complaint, dated September 24, 2007, which has been removed to federal court in the instant matter.

11.    Annexed hereto as Exhibit H is Defendants' Statement in Support of Removal, dated November 15, 2007, without attachments.


Dated: New York, New York                     Respectfully submitted,
         November 26, 2007

                                              GORDON & REES LLP


                                     By:      _____
                                              Diane Krebs (DK 8280)
                                              Attorneys for Defendants IBM and Isogon
                                              Corporation
                                              90 Broad Street
                                              23rd Floor
                                              New York, NY  10004
                                              (212) 269-5500

TO:    Robert D. Goner, Esq.
       BUNTING, GONER & ASSOCIATES P.C.
       *Attorneys for Plaintiff*
       1983 Marcus Avenue, Suite 117
       Lake Success, New York 11042
       (516) 358-8825

       Joseph J. Ortego, Esq.
       Thomas M. Mealiffe, Esq.
       NIXON PEABODY LLP
       *Attorneys for Defendants*
       *Steven Barritz and Robert Barritz*
       50 Jericho Quadrangle
       Jericho, New York 11753
       (516) 832-7500

       Tetragon, LLC
       57 Ira Place
       Syosset, NY

EXHIBIT "A"

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
------------------------------------------------------------x          Index No.          /2005
KATHRYN FJELD

              Plaintiff,

          - against -                                                    **VERIFIED COMPLAINT**

INTERNATIONAL BUSINESS MACHINES, INC,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN,
PER HELBERG, DAVID VARDI
and STEVEN YOUCHNOW,

              Defendants.
------------------------------------------------------------

*FILED*

*JAN 04 2006*

*NEW YORK COUNTY CLERK'S C.*

06100071

        Plaintiff KATHRYN FJELD, by her attorneys, THE LAW OFFICES OF

GERALD BUNTING, complaining of the defendants, respectfully alleges, upon information and

belief, as follows:

        **The Parties**:

        1.     That at all times herein mentioned plaintiff KATHRYN FJELD, ("Plaintiff" or

"Fjeld"), was and still is an individual domiciled in the State of New Jersey.

        2.     That at all times herein mentioned, and upon information and belief, defendant

INTERNATIONAL BUSINESS MACHINES, INC. d/b/a IBM, (hereinafter "IBM"), was and

still is a corporation or other business entity organized and existing under the laws of the State

of New York with a principal place of business at 1133 Westchester Avenue, White Plains, New

York. Upon information and belief, IBM is the successor in interest to defendant ISOGON

CORPORATION.

        3.     That at all times herein mentioned, and upon information and belief, defendant

ISOGON CORPORATION, (hereinafter "Isogon"), was and still is a corporation or other business entity organized and existing under the laws of the State of New York and with a principal place of business at 330 Seventh Avenue, New York, NY 10001.

4.      Upon information and belief, defendant Isogon, a privately-held corporation, was acquired by defendant IBM and has ceased to have an independent corporate identity.

5.      That at all times herein mentioned, and upon information and belief, defendant TETRAGON, L.L.C., (hereinafter "Tetragon"), was and still is a limited liability company or other business entity organized and existing under the laws of the State of New York and with a principal place of business at 57 Ira Place, Syosset, New York.  Upon information and belief, Tetragon is a successor in interest to defendant Isogon.

6.      That at all times herein mentioned, and upon information and belief, defendant ROBERT BARRITZ, was the President and majority shareholder of Isogon.  Defendant Robert Barritz has a business address located at 330 Seventh Avenue, New York, NY 10001.

7.      That at all times herein mentioned, and upon information and belief, defendant STEVEN BARRITZ, was the son of defendant ROBERT BARRITZ.  Defendant Steven Barritz has a business address located at 330 Seventh Avenue, New York, NY 10001.

8.      That at all times herein mentioned, and upon information and belief, defendants PETER KASSAN ("Kasan"), PER HELBERG ("Helberg"), DAVID VARDI, ("Vardi") and STEVEN YOUCHNOW ("Youchnow"), together with defendant Robert Barritz were the sole shareholders of defendant ISOGON.  Upon information and belief, defendants Kasan, Helberg, Vardi, Youchnow and Robert Barritz remain personally liable for all or some of the obligations and claims of Isogon which accrued prior to the sale of Isogon to defendant IBM.

## FACTS COMMON TO ALL CAUSES OF ACTION:

9.    Plaintiff Kathryn Fjeld was employed by defendant Isogon as a Product Manager. Plaintiff began work at Isogon in April, 1996 and was employed there continuously until April, 2005. Plaintiff is a member of a protected class - female.

10.    Upon information and belief defendant Steven Barritz was employed by defendant Isogon as a marketing manager from 1998 to the present.

11.    Plaintiff's responsibilities at Isogon as Product Manager required almost daily contact with defendant Steven Barritz, a marketing manager. As the only son of Isogon's principal shareholder and President, defendant Steven Barritz was in a position of corporate authority.

12.    During the course of her employment with Defendant Isogon, plaintiff was subjected to a hostile, offensive and discriminatory work environment. The environment plaintiff endured involved conduct by the marketing manager Steven Barritz, which included but was not limited to the following: unwanted sexual advances; threatening e-mails; sexually-charged suggestions and questions; and photographs of plaintiff digitally mutilated by defendant Steven Barritz and then e-mailed to plaintiff.

13.    Having worked with defendant Steven Barritz since 1998 plaintiff and her husband developed a limited friendship with defendant Steven Barritz.

14.    Upon information and belief, defendant Steven Barritz suffers from numerous behavioral and mental maladies. These aforementioned behavioral and mental maladies were known to defendant Isogon and defendant Robert Barritz. Notwithstanding the foregoing, defendants Isogon and Robert Barritz took no steps to protect plaintiff from the offensive conduct of defendant Steven Barritz. Moreover, acting at the specific request of Defendant

Steven Barritz, Robert Barritz routinely assigned his son to work on projects to which plaintiff was already assigned so that defendant Steven Barritz could have more access to plaintiff.

15.    In the year 2004 defendant Steven Barritz began to make sexual advances towards plaintiff. Defendant Steven Barritz also demanded that plaintiff enter into a sexual relationship with him. These advances were rejected by plaintiff.

16.    Knowing that defendant Steven Barritz was the only son of the President and majority shareholder of Isogon, plaintiff feared retaliation for rejecting these advances and attempted to retain a limited friendship with defendant Steven Barritz.

17.    Notwithstanding plaintiff's efforts to retain a professional working relationship, defendant Steven Barritz instead began to make obscene, sexually-loaded and suggestive comments to plaintiff both orally and via e-mail during the course of each work-day at Isogon.

18.    On Wednesday, February 4, 2004, while at the Isogon offices, defendant Steven Barritz sent plaintiff a crude message: "I shall not be going to any sales kickoff related activities. Fuc- them. That's what I say. Fuc- them with a 12 inch dildo. s"

19.    The increasingly demeaning messages from defendant Steven Barritz made it difficult for plaintiff to perform her duties as Product Manager. On Friday, March 19, 2004, increasingly angered by plaintiff's rejections of his advances, defendant Steven Barritz sent an e-mail using the Isogon network containing the following:

"See, this is the type of thing you, if you were in a better universe, would be doing: writing scripts like my pal Zack over here. In that universe, in that alternate reality, you are, right now, writing a script. I suppose there's also another alternate reality where you're a baby elephant. *Kathryn the baby elephant.* Here, you have a sister elephant, who constantly pushes at your

trunk. Eventually, you're attacked and eaten by a pride of hungry lions, all republicans. *Kathryn the nail polish remover.* Guaranteed to remove every last speck of nail polish with a perfectionist's tendency. And a billion more Kathryns littering the landscape. They're out there somewhere. I can feel them. Their cosmic vibrations tickle my fingertips as I type these words. I'd like to collect all these Kathryns up, and put them in a traveling freakshow called *Freaky Kathryn Freakfest Extravaganza*. I'd have the Kathryns compete against each -- primarily mud wrestling. Kathryn the chewing gum wrapper vs. Kathryn the nail clippings (having been formed by *Kathryn the anxiety ridden teeth*). The clippings would tear the wrapper to pieces. At the end of the day, I'd take all the Kathryns, put them in a giant barrel, and roll them down a hill. That would be fun. The barrel crashes into a tree and explodes apart, a zillion Kathryns flying every which way. A montage of Kathryns flying through the air, with terror striken faces. What fun! All the Kathryns would live together in one giant nunnery, with a single *Kathryn Mother Superior* to lord over them. She'd smoke, but she'd never use an ashtray. The Kathryns would hold their hands out for Mother Superior to ash in. They'd all be her bitches. sb [Steven Barritz]"

20.    As Product Manager, plaintiff was required to work with defendant Steven Barritz, a situation increasingly made difficult by his sexual advances and the barrage of vulgar, sexually-suggestive e-mails. For example, on May 18, 2004, defendant Steven Barritz sent the following e-mail using the Isogon network: " **Subject:** You didn't notice  ...but I slinked under your desk and fell asleep by your feet. The smell of your feet reminds me of the smell inside my mother's womb: moist & stinky, a bit like rotting leaves. You wiggle your toes often. Did you know that? Or do those piggies have minds of their own? Sometimes one of them wriggles,

while the others sleep. Other times all of them are awake. I've named them. I've given them all

silly names, like Mopsy and Flopsy. I'm not that creative. I'm only a little kitty kat, after all. sb"

21.    On Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff an e-

mail which stated, inter alia, the following: "Do I need TRAINING? (Emphasis in the original).

I'm laughing as I write this. I'm just playing at being angry. Or maybe I'm being passive

aggressive. I say I'm playing angry, but, maybe I really am angry, and therefore am playing at

playing at being angry. (Maybe I'm on the rag.) Whatever happened to that little Linux penguin

that used to sit on your desk? What, wasn't he good enough to sit on your desk any longer?

You're cold blooded, that's what you are. To kick a poor little defenseless penguin out onto the

street! Into the cold!!! How can you be so cruel? Exclamation point! Well, Francis Farmer

Will Have Her Revenge on Kathryn. That's what I say. ***Don't tell me I didn't warn you.*** And

while we're on the subject, just why are you so damn frisky all the time? I mean, really."

(Emphasis supplied)

22.    Later on Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff

another e-mail message which stated a bizarre threat: "Deadly Nightshade. One leaf.

Approximately midnight."

23.    The next day plaintiff received from defendant Steven Barritz the following e-

mail message at work: "I ate a leaf of Deadly Nightshade last night, which is a non-lethal dose.

This is evident, since I'm still alive. In fact, I read on a science site, that no dose is lethal

(despite the claims you'll find elsewhere on the net). Eating large quantities will just make you

sick. I did all this research before eating the leaf. But, just in case I was wrong, and I died, and

people were wondering why, you'd have a clue with the e-mail I sent you last night. Better to play it safe, that's my motto."

24.    On October 12, 2004, defendant Steven Barritz sent an e-mail message containing crude sexual innuendo:

"It took me a half an hour to get out of bed this morning. I used the lightbox this morning, while I had my morning breakfast of Special K with bananas, Dexedrine, and Zoloft. I have decided I have to start using it every morning, that the Seasonal Affective Disorder is kicking in, which is the only reason I can think of to explain the funk I've been in as of late. I know the light bothers your eyes, but, I think you might benefit from using the one you have in your office. Are you combing your cats, every other day, like you said you were going to? I added commas to the last sentence to please you. *Did they give you syntax pleasure? Go ahead, have yourself an after syntax cigarette. Look at the word 'syntax'. Say it aloud. Let it roll back and forth on your tongue, as if you had a marble in your mouth. I've decided what area of business I'd like to pursue. Tonight, I'm going to have dinner with my parents, and tell them about my desire to go into the gay porn industry. I'd like to hire Phil for my first film. Phil would be giving a demo, and I'd be playing the client, and I'd be sitting there, watching him, and I'd start wiping the sweat off my brow, loosening my tie, etc. You can probably fill in the rest.* " (emphasis supplied)

25.    Because defendant Steven Barritz had made it clear that he could cause plaintiff to lose her job, plaintiff was compelled to endure a continuous barrage of weird, perverse and sexually-humiliating advances and e-mails at the Isogon facilities. On Monday, September 6,

2004, defendant Steven Barritz wrote and asked if plaintiff would wear a "Pussy Wagon" t-shirt to a gynecologist's office.

26.    Plaintiff attempted to reason with defendant Steven Barritz so as to preserve a working relationship and to avoid his becoming more unstable and causing him to have her terminated.   On Wednesday September 15, 2005 defendant Steven Barritz wrote:

"Is it possible to sprain one's tush? Last night, when I was rollerblading, I think I sprained my left cheek. I thought you'd find that amusing. Because all that, my left cheek has been nagging for my attention. I wish my left cheek was lower maintenance. s [Steven Barritz]"

27.    On November 5,2004 defendant Steven Barritz wrote plaintiff an e-mail which concluded with his disturbing opinion about the Mel Gibson film "Passion of the Christ": **"PS Have you seen the Passion?  It's great fun!  You have to fast forward past the boring non-violent parts, of course.  My favorite part is this one time they tear a huge chunk of flesh off near his rib cage.  I almost came in my pants when they did that."** [Emphasis supplied]

28.    Despite all the efforts of plaintiff to resist defendant Steven Barritz's advances in a diplomatic fashion and to ignore his entreaties, he still persisted in sexual overtures.  On Tuesday, November 12, 2004, angry  that plaintiff had ignored his advances, Steven Barritz wrote:  **" Let's just say, I expect a phone call from you sometime this month.** I also ask one other thing of you.  That you let me know if you want to go to the dance thing on the **20th.  Those are the two things I expect from you right now.  I want a whole lot more, but, I'm trying to control myself,** chill out, and re-direct this energy towards other parts of my life; I think this is healthy for me, and I think you'd agree.  I know that we have a bit of a dysfunctional relationship, which is pretty much all my fault, but, I want to work to make our friendship as

healthy as it can be. I don't want you feeling guilty about not calling or emailing me. I know

you're busy and that you're a loner and that you're mentally overwhelmed; I understand you more

than you think. I want to be a positive aspect in your life, not a drain; that is why I'm letting the

phone call and email thing slide. That's all for now. I hope you are having a modestly okay

day. I voted this morning. The pain in my arm is lesser than it has been. I'm feeling good, and in

high spirits. Oh, wait, there's something else I want from you: if you're not going to use the

bright light thing in your office, I'd like it back. Please let me know. So, there are three SB

requests. There, now I'll stop writing, cuz, I mean, I really should do some work." (Emphasis

supplied)

     29.    In his various e-mails defendant Steven Barritz made it clear that he had control

over plaintiff's employment at Isogon.  In a rambling message sent Tuesday, November 23,

2005, he wrote in part: " Maybe the reason you haven't called me about this, is because you don't

want to be better friends with me.  That's okay, I mean, you're certainly allowed to not be friends

with me.  It's not as if it would be comfortable for you to come right out and say it, so, if this is

the way you feel, which is fine, then, I should make it easy for you.  I guess I'll just say, if you

want to be friends with me, you know where to find me.  I'm not mad at you, if this is the case,

you must understand that.  And friends or not, **I'll still make sure you are treated right by**

**Isogon**, you don't have to worry about that.  I still hope that we can have a working relationship.

Though, I'm not quite sure if I can take assignments from you.  I am having my job radically

restructured -- this is confidential, btw.  I suppose it's still possible, but we'd have to talk.  A

week of doing QA is not possible for me at all.  Anyway, it sounds like it's Dmitri's fault, not

yours, so, don't worry about it.  It may be that you simply can't be friends with me at this point in

your life. That's okay too. Like I said, you know where to find me. I'm kewl with it. You'll see. Steven" (emphasis supplied)

30.     This message was sent to plaintiff about the same time that defendant Steven Barritz sent plaintiff a photograph of herself that defendant had mutilated using Photoshop software.    This document was created by defendant Steven Barritz under the file name "K Face Distort 2.jpg" and is reproduced herein below:

K Face Distort 2.jpg



31.     On November 24, 2004, defendant Steven Barritz sent plaintiff an e-mail stating: "Is it healthy to have a friendship when I'm so enamored of you? My therapist says not to see you no more. She says you're like a disease without any cure. She said I'm so obsessed I'm becoming a bore, oh no. You think you're so pretty. (Well, I think you are, but you see what a little Photoshop can do.) I think my unreasoning love or attachment has caused me to behave foolishly." Along with the November 24, 2004 e-mail message was an attached digital file

which contained a another photograph of the plaintiff which had been defaced by defendant

Steven Barritz using Photoshop software. At the end of the November 24, 2004 e-mail message

was the following: " **PPS I think you should watch more porn.**" (Emphasis in the original)

32.    Plaintiff continued to ask defendant Steven Barritz to stop e-mailing her. In

response to the message detailed in paragraph "31" above, plaintiff responded via e-mail: "please

do not write things like this to me." Instead, defendant Steven Barritz increased the volume of

offensive e-mails and in private conversations at Isogon's offices threatened to have her

terminated from her job if she did not agree to spend more time with him. On December 1,

2004, defendant Steven Barritz refused to stop sending e-mails and instead wrote " Emailing you

is fun! / It's like push-ups. How many can I do?  s "

33.    Plaintiff was unable to bear the continued harassment and informed defendant

Steven Barritz that she would be making a formal complaint to Isogon management. In

response, on February 20, 2005 defendant Barritz sent plaintiff an e-mail with a 90 page

attachment. It was the exit strategies manual for soon-to-be terminated Isogon executives:

"**From:** Steve Barritz / **Sent:** Sunday, February 20, 2005 12:04 PM / **To:** Kathryn Fjeld /

**Subject:** FW: the black book BP Exec Manual (for one on one).DOC " Executive Career

Transition Counseling"" The threat was clear. If she complained about his advances then

defendant Steven Barritz would use his access to his father to have her terminated.

34.    The sexually discriminatory acts and environment described in this complaint

were otherwise known to defendant Isogon and defendant Robert Barritz, Kassan, Helberg, Vardi

and Youchnow in mid-2004 through mid-2005 .

35.    The defendants treated similarly situated male employees more favorably in that

they did not subject them to this discriminatory and offensive behavior.

36.    On or about February, 2005, plaintiff made a complaint to Isogon's Chief Financial Officer regarding the increasingly threatening conduct of defendant Steven Barritz..

37.    Notwithstanding plaintiff's complaints about the sexually discriminatory and demeaning acts and environment described herein above, defendants Robert Barritz and Isogon took no appropriate remedial action.

38.    Defendants Isogon and Robert Barritz were aware of the sexual harassment and discrimination, but failed and/or refused to stop it or otherwise take appropriate remedial action, thereby subjecting plaintiff to continued, on-going and more severe harassment.

39.    Shortly thereafter, defendant Steven Barritz made an explicit verbal threat to plaintiff that he would have Isogon retaliate against plaintiff for having complained about his conduct.

40.    Upon information and belief, the primary harasser, defendant Steven Barritz, continues to be employed by defendant Isogon.

41.    In spite of plaintiff's complaints about defendant Steven Barritz's increasingly hostile and discriminatory acts, the defendants Robert Barritz and Isogon went out of their way to make plaintiff's job more difficult.  Ultimately, Defendant Isogon, through defendant Robert Barritz, terminated plaintiff in retaliation for having complained about the conduct of defendant Steven Barritz.

42.    It was as a direct and proximate result of plaintiff's opposition to the sexual harassment and sexual discrimination that caused plaintiff to be terminated by defendants Robert

Barritz and Isogon.

43.    All of the foregoing conduct was offensive to plaintiff and would be offensive to a reasonable person.

44.    Defendants created and perpetuated a work environment that was so offensive and severe that no reasonable person could expect to endure it.

45.    As a direct and proximate result of the foregoing conduct, plaintiff suffered embarrassment, humiliation, emotional distress and other forms of damage.  These damages are of an on-going and continuous nature.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ, INDIVIDUALLY

46.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" inclusive as if more fully set forth herein.

47.    Defendant Steven Barritz treated plaintiff differently and less favorably than similarly situated male employees.

48.    Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Steven Barritz sexually harassed her and deprived plaintiff of her constitutional right to equal protection under the law.

49.    Defendant Steven Barritz intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

50.    At all relevant times, defendant Steven Barritz acted under the color of state law in willfully  and purposefully depriving plaintiff of constitutionally guaranteed rights of equal

protection under the law.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ, INDIVIDUALLY

51.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "one"

through "forty-five" and "forty-seven" through "fifty" inclusive as if more fully set forth herein.

52.     Defendant Steven Barritz intentionally sent vulgar and sexually threatening e-

mails to plaintiff in a deliberate effort to inflict emotional harm on plaintiff and to interfere with

the course of her employment.

53.     As a result of the foregoing, defendant Steven Barritz intentionally caused and

inflicted emotional distress upon plaintiff.


## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, INDIVIDUALLY

54.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "one"

through "forty-five" and "forty-seven" through "fifty" and "fifty-two" through "fifty-three"

inclusive as if more fully set forth herein.

55.     Defendant Robert Barritz treated plaintiff differently and less favorably than

similarly situated male employees. Defendant Robert Barritz knew or should have known that

his son and employee was engaging in inappropriate and harmful conduct towards plaintiff.

Defendant Robert Barritz knew or should have known that this conduct was harmful to plaintiff

and that similarly situated male employees of Isogon were not subject to such conduct.

56.     Through the actions, policies, employment practices and conduct directed at

plaintiff, and by causing plaintiff to be terminated in April 2005 in retaliation for her complaints

regarding the conduct of Steven Barritz, defendant Robert Barritz deprived plaintiff of her constitutional right to equal protection under the law.

57.     Defendant Robert Barritz intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

58.     At all relevant times, defendant Robert Barritz acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.


**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, KASAN, HELBERG, VARDI AND YOUCHNOW, INDIVIDUALLY**

59.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" and "forty-seven" through "fifty"; "fifty-two" through "fifty-three"; and "fifty-five" through "fifty-eight" inclusive as if more fully set forth herein.

60.     Defendants Robert Barritz, Kasan, Helberg, Vardi and Youchnow, as officers and principals of defendant Isogon and Isogon, knew or should have known of the campaign of sexual harassment being waged by Steven Barritz against plaintiff. Defendant knew or should have known of the vulgar and sexually-suggestive e-mails being intentionally sent by Steven Barritz to plaintiff.

61.     As a result of the foregoing, defendants are liable for the negligent infliction of emotional distress on plaintiff.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS IBM, ISOGON, AND TETRAGON**

61.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five"; "forty-seven" through "fifty"; "fifty-two" through "fifty-three"; "Fifty-five" through "fifty-eight" and ""sixty" through "sixty-one" inclusive as if more fully set forth herein.

62.    Defendant Isogon, and thereby its successors in interest IBM and Tetragon, treated plaintiff differently and less favorably than similarly situated male employees. Defendant Isogon knew or should have known that its employee was engaging in inappropriate and harmful conduct towards plaintiff. Defendant Isogon, through its shareholders, officers and employees knew or should have known that this conduct was harmful to plaintiff and that similarly situated male employees of Isogon were not subject to such conduct.

63.    Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Isogon permitted the existence of a hostile work environment by which defendant Steven Barritz was permitted to sexually harass plaintiff and deprive plaintiff of her constitutional right to equal protection under the law.

64.    Defendant Isogon intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

65.    At all relevant times, defendant Isogon acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.

**WHEREFORE,**

On the First Cause of Action against defendant Steven Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Second Cause of Action against defendant Steven Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Third Cause of Action against defendant Robert Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Fourth Cause of Action against defendant Robert Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Fifth Cause of Action against defendants IBM, Isogon and Tetragon, plaintiff demands judgment in the amount of Ten Million Dollars, and together with attorneys fees, the costs and disbursements of this action and with such further relief as to the Court seems just, equitable and proper.

Dated: Mineola, New York
       December 12, 2005

Yours, etc.,

_____
LAW OFFICES OF GERALD A. BUNTING
Attorneys for the Plaintiff
114 Old Country Road, Suite 616
Mineola, New York 11501
(516) 741-0687

## ATTORNEY'S VERIFICATION

GERALD A. BUNTING, an attorney duly admitted to practice before the courts of the State of New York, affirms the following pursuant to CPLR Section 2106:

That I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

The reason this verification is not made by the plaintiff is because plaintiff does not reside within Nassau County, where your affirmant maintains his office. That the source of your affirmant's knowledge is based upon communications with plaintiff as well as a review of the case file, electronic data and e-mail, and documents provided by the plaintiff.

Dated:     Mineola, New York
           December 3, 2005

_____
Gerald A. Bunting

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
-------------------------------------------------------------------x
KATHRYN FJELD

                     Plaintiff,

              - against -

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., ROBERT BARRITZ
and STEVEN BARRITZ,
                   Defendants.
-------------------------------------------------------------------x

Index No.      /2006

**SUMMONS AND**
**VERIFIED COMPLAINT**

# The Law Offices of Gerald A. Bunting

Attorneys for the Plaintiff
114 Old Country Road
Suite 616
Mineola, New York
(516) 248-2366



# EXHIBIT "B"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
KATHRYN FJELD,

                        Plaintiff,                        Index No.: 100071/2006

                                                  **AMENDED**
                                                  **<u>NOTICE OF MOTION</u>**

                    - against –

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

                        Defendants.
-------------------------------------------------------------------X

      **PLEASE TAKE NOTICE**, that upon the annexed affirmation of Mercedes Colwin,

dated February 7, 2006, the accompanying memorandum of law, and upon all prior pleadings

and proceedings heretofore had herein, the undersigned will move before the Motion Submission

Part, Room 130 at the Supreme Court located at 60 Centre Street, New York, NY 10007, on the

28th day of February 2006, at 9:30 o'clock in the forenoon or as soon thereafter as counsel can be

heard for an order pursuant to CPLR § 3211 dismissing the plaintiff's claims for negligent

infliction of emotional distress (the Fourth Cause of Action) as against defendants Per Hellberg

and Steven Youchnow, and the Fifth unspecified Cause of Action as against defendants IBM and

Isogon Corporation on the grounds that they fail to state a cause of action, and for such other and

further relief as this Honorable Court may deem just, proper, and equitable.



RECEIVED

FEB 10 2006

NEW YORK
COUNTY CLERK

**PLEASE TAKE FURTHER NOTICE**, that answering papers and reply papers, if any, must be served at least seven (7) days and one (1) day, respectively, prior to the return date of this motion, pursuant to Rule 2214(b) of the CPLR.

Dated: New York, New York
February 9, 2006

Respectfully submitted,

GORDON & REES LLP

By: _____
Diane Krebs, Esq.
Attorneys for Defendants
IBM, Isogon Corporation, Per Hellberg and
Steven Youchnow
One Liberty Plaza
23d Floor
New York, NY 10006
(212) 201-6777

TO:    Gerald A. Bunting, Esq.
Law Offices of Gerald A. Bunting
Attorneys for Plaintiff
114 Old Country Road
Suite 616
Mineola, NY 14623
(516) 248-2366

Joseph Ortego, Esq.
Nixon Peabody LLP
Attorneys for Defendants Robert Barritz and Steven Barritz
990 Stewart Avenue
Garden City, NY 11530

Tetragon, LLC
57 Ira Place
Syosset, NY

Mr. Peter Kassan
330 Seventh Avenue
New York, NY 10001

2

Mr. David Vardi
330 Seventh Avenue
New York, NY  10001

**EXHIBIT "C"**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
KATHRYN FJELD,

                          Plaintiff,                                Index No.: 100071/2006

                                                        **AFFIRMATION**

                    - against –

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

                          Defendants.
-------------------------------------------------------------------X

       MERCEDES COLWIN, an attorney duly admitted to practice law before the Courts of
the State of New York, affirms the following to be true under the penalties of perjury:

       1.     I am a partner with the law firm of Gordon & Rees, LLP, attorneys for
Defendants IBM, Isogon Corporation ("Isogon"), Per Hellberg ("Hellberg") and Steven
Youchnow ("Youchnow") (collectively referred to herein as "Defendants"). As such, I am fully
familiar with all of the facts and proceedings set forth herein.

       2.     This affirmation is submitted in support of Defendants' motion, pursuant to CPLR
§ 3211, to dismiss plaintiff's claims in her Complaint for negligent infliction of emotional
distress (the Fourth Cause of Action) as against defendants Per Hellberg and Steven Youchnow,
and the unspecified Fifth Cause of Action as against defendants IBM and Isogon Corporation.

       3.     Plaintiff contends in her Fourth Cause of Action that, because they were officers
and principals of Isogon, defendants Hellberg and Youchnow knew or should have known of the
sexual harassment purportedly being directed at Plaintiff by Isogon employee Steven Barritz.
Plaintiff further alleges that because they knew or should have known of the alleged harassment,
defendants Hellberg and Youchnow are liable for negligent infliction of emotional distress.

1

4.    It is unclear what Plaintiff is attempting to claim in the Fifth Cause of Action. Plaintiff states some conclusions that are apparently designed to support a sexual harassment claim, but there is no indication as to their statutory basis.

## RELEVANT BACKGROUND[1]

5.    While employed as a Product Manager at Isogon, Plaintiff was allegedly subjected to sexual harassment by the conduct of Steven Barritz, who was also an Isogon employee and the son of one of the shareholders, defendant Robert Barritz. The alleged conduct consisted solely of e-mail messages and there is no allegation of any actual or attempted physical contact.

6.    Defendants Hellberg and Youchnow were shareholders of defendant Isogon.

7.    Defendant Isogon was acquired by defendant IBM, and no longer has a separate corporate identity.

## SUMMARY OF ARGUMENT

8.    Plaintiff's Fourth Cause of Action alleges defendants Hellberg and Youchnow are liable for negligent infliction of emotional distress. However, this claim suffers from an at least two insurmountable, fatal defects. First, the case law makes clear that the New York Workers' Compensation Law provides the sole and exclusive remedy for negligence claims, including claims for negligent infliction of emotional distress, against an employer. Additionally, the workers' compensation exclusivity provision applies to both employers and their agents. Therefore, Plaintiff's claim should be dismissed as barred by the Workers' Compensation Law.

9.    Second, Plaintiff does not allege facts sufficient to support a claim for negligent infliction of emotional distress. There are at least two areas in which the facts are deficient: (1) Plaintiff alleges no special duty by Hellberg and Youchnow owed to her other than the duty to obey the law; and (2) Plaintiff does not allege any manner of physical touching, or that she was

---

[1]    On a motion to dismiss, all facts listed in the Complaint are presumed true for purposes of the motion, and Defendants do so here solely for that purpose. The facts are therefore taken from the Complaint.

placed in fear of physical impact or injury. As case law clearly demonstrates, Plaintiff's negligence claim should properly be dismissed in such circumstances.

10.    It is not entirely clear what the basis is of Plaintiff's Fifth Cause of Action against Defendants IBM and Isogon. Based on some conclusory statements within the Complaint, it appears Plaintiff is attempting to state some manner of sexual harassment claim, but the Cause of Action is not sufficiently particular such that the Defendants can determine the relief Plaintiff seeks or the applicable standards, as required by law. This has deprived the IBM and Isogon of adequate notice and the ability to prepare a response and/or defense. Indeed, the claim is wholly devoid of any statutory or other basis for relief. Accordingly, the Fifth Cause of Action is defective on its face and should be dismissed.

Dated: New York, New York
        February 7, 2006

                                        Respectfully submitted,

                                        GORDON & REES LLP

                                        By: _____
                                             Mercedes Colwin, Esq.
                                        Attorneys for Defendants
                                        IBM, Isogon Corporation, Per Hellberg and
                                        Steven Youchnow
                                        One Liberty Plaza
                                        23d Floor
                                        New York, NY 10006
                                        (212) 201-6777

TO:    Gerald A. Bunting, Esq.
       Law Offices of Gerald A. Bunting
       Attorneys for Plaintiff
       114 Old Country Road
       Suite 616
       Mineola, NY 14623
       (516) 248-2366

       Joseph Ortego, Esq.
       Nixon Peabody LLP
       Attorneys for Defendants Robert Barritz and Steven Barritz
       990 Stewart Avenue
       Garden City, NY 11530

3

Tetragon, LLC
57 Ira Place
Syosset, NY

Mr. Peter Kassan
330 Seventh Avenue
New York, NY 10001

Mr. David Vardi
330 Seventh Avenue
New York, NY 10001

EXHIBIT "D"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------X

KATHRYN FJELD,

                  Plaintiff,                        Index No.: 100071/2006

                - against –

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

                  Defendants.

------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT
## OF THE MOTION OF DEFENDANTS
## IBM, ISOGON CORPORATION, PER HELLBERG AND STEVEN YOUCHNOW
## TO DISMISS THE COMPLAINT

On The Brief:
Mercedes Colwin, Esq.
Diane Krebs, Esq.

## GORDON & REES, LLP
ATTORNEYS FOR DEFENDANTS
**IBM, ISOGON CORPORATION, PER HELLBERG and STEVEN YOUCHNOW**
ONE LIBERTY PLAZA, 23RD FLOOR
NEW YORK, NEW YORK 10006
PHONE: (212) 201.6777
FAX:   (212) 201.6778

## TABLE OF CONTENTS

PRELIMINARY STATEMENT...........................................................................1

STATEMENT OF FACTS.............................................................................2

ARGUMENT................................................................................................2

**I.    Plaintiff's Fourth Cause of Action for Negligent Infliction Of Emotional Distress Fails to State a Claim Against Per Hellberg and Steven Youchnow.......................................2**

    A. Plaintiff's Negligence Claim Is Barred By the Workers' Compensation Law..........................................................................2

    B. Plaintiff Does Not Allege Facts Sufficient to Support a Claim of Negligent Infliction of Emotional Distress.............................4

        1.    *No Special Duty Was Owed to Plaintiff by Hellberg and Youchnow*................................................................4

        2.    *Plaintiff Was Not Subjected To a Threat of Physical Impact or Injury*................................................................5

**II.   Plaintiff's Unspecified Fifth Cause of Action Fails to State a Claim Against IBM and Isogon Corporation.......................................6**

**CONCLUSION**...........................................................................................6

## PRELIMINARY STATEMENT

During the course of Plaintiff's employment with Isogon Corporation ("Isogon"), she allegedly suffered sexual harassment perpetrated by an Isogon employee. As a result, Plaintiff sued, among others, Isogon, two of Isogon's former shareholders, Per Hellberg ("Hellberg") and Steven Youchnow ("Youchnow"), and its current parent company, International Business Machines ("IBM"), which acquired Isogon after the conduct in Plaintiff's complaint allegedly occurred (collectively, "Defendants"). In an apparent ignorance of the New York Worker's Compensation Law, Plaintiff alleged negligence claims against the Isogon shareholders individually for infliction of emotional distress (Fourth Cause of Action). Plaintiff also alleges claims against IBM and Isogon, although it is unclear exactly what the claims are, as set forth in Plaintiff's Fifth Cause of Action.

Neither of these causes of action can be sustained. First, the negligent infliction of emotional distress claim suffers from at least two fatal defects. Most glaringly, Plaintiff's negligence claims against her employer are barred by the Worker's Compensation Law. Additionally, beyond that insurmountable obstacle, Plaintiff fails to allege facts sufficient to support a claim of negligent infliction of emotional distress. Therefore, the Fourth Cause of Action should be dismissed.

Plaintiff's claims in her Fifth Cause of Action are similarly deficient. Other than proffering some conclusory statements regarding sexual harassment, Plaintiff fails to identify the basis for which she believes she is entitled to relief. Indeed, defendants IBM and Isogon have no idea upon which statute or other ground Plaintiff is making her claims. As the claim currently stands, the Defendants have not been provided adequate notice of any potential liabilities and cannot determine the relief Plaintiff seeks or the appropriate applicable standards for Plaintiff's claim, as required by law. As such, the defendants cannot prepare a response and/or defense. Accordingly, the Fifth Cause of Action is defective on its face and should be dismissed.

## STATEMENT OF FACTS[1]

Plaintiff, a female, was employed as a Product Manager by defendant Isogon from April 1996 to April 2005. (Complaint ¶ 9). During the course of her employment, Plaintiff was allegedly subjected to sexual harassment perpetrated by defendant Steven Barritz, who was also employed at Isogon as a marketing manager and is the son of Robert Barritz, one of Isogon's shareholders. (Comp. ¶¶ 10-12). The nature of the harassment consisted solely of e-mail communications between Steven Barritz and Plaintiff. Plaintiff alleges no actual or attempted physical touching. (Comp. ¶¶ 18-33).

IBM acquired Isogon, which has ceased to have an independent corporate identity. (Comp. ¶ 4). Defendants Hellberg and Youchnow were shareholders of Isogon during the course of Plaintiff's employment. (Comp. ¶ 8). Plaintiff does not allege Hellberg or Youchnow participated in any harassing conduct towards her, but does believe they knew of the harassment by Steven Barritz. (Comp. ¶ 34).

## ARGUMENT

I.    **Plaintiff's Fourth Cause of Action for Negligent Infliction Of Emotional Distress Fails to State a Claim Against Per Hellberg and Steven Youchnow**

Plaintiff's Fourth Cause of Action alleges Hellberg and Youchnow are liable for negligent infliction of emotional distress. However, this claim is fatally deficient because any negligence claim against an employer and its agents is barred by the New York Workers' Compensation Law. Moreover, even beyond the Workers' Compensation prohibition, Plaintiff fails to allege facts sufficient to support a claim for negligent infliction of emotional distress.

A.    The Workers' Compensation Law Provides the Sole and Exclusive Remedy to Employees Injured By the Negligence of An Employer

The Worker's Compensation Law is abundantly clear that "[t]he right to compensation or benefits under this chapter, ***shall be the exclusive remedy*** to an employee…when such employee is injured or killed by the ***negligence*** or wrong of another in the same employ." N.Y. Workers'

---

[1]    On a motion to dismiss, all facts listed in the Complaint are presumed true for purposes of the motion, and Defendants do so here solely for that purpose. The facts are therefore taken from the Complaint. Defendants reserve their right to challenge the allegations in the future.

Comp. L. § 29(6) (McKinney 2005) (emphasis added). *See, e.g., Miller v. Huntington Hospital*, 15 A.D.3d 548, 550 (2nd Dept. 2005) (holding employer's negligent exposure of an employee to a substantial risk of injury insufficient to circumvent the exclusivity of the Workers' Compensation Law); *Gerson v. Giorgio Sant'Angelo Collectibles, Inc.*, 176 Misc. 2d 388, 392 (N.Y. Sup. Ct. N.Y. Cty. 1998) (holding Workers' Compensation Law bars negligent infliction of emotional distress claim in sexual harassment action); *Souffrant et al., v. Quality Wholesale Veal Center, Inc.*, 135 A.D.2d 398 521 N.Y.S.2d 696, 697 (1st Dept. 1987) (recognizing plaintiff's negligence claims against employer were barred by Workers' Compensation Law); *Hayles v. Advanced Travel Management Corporation*, No. 01 Civ.10017 (BSJ) (DFE), 2004 WL 26548, at *14 (S.D.N.Y. Jan. 5, 2004) (holding "New York Workers' Compensation Law provides the exclusive remedy for injuries resulting from negligence in the workplace"); *Yaba v. Cadwalader, Wickersham & Taft*, 931 F. Supp. 271, 275 (S.D.N.Y. 1996) (holding "Workers' Compensation is the exclusive remedy of an employee who is injured by the negligence or wrong of another in the same employ").

Furthermore, courts have consistently held that claims for negligent infliction of emotional distress are among those negligence claims that are barred by the exclusivity provision. *See Gerson,* 176 Misc. 2d at 392; *Hayles,* 2004 WL 26548 at *14; *Arroyo v. Westlb Administration, Inc.*, 54 F. Supp. 2d 224, 232 (S.D.N.Y. 1999).

Moreover, "the workers' compensation exclusivity provision applies to those employers, *and their agents*, that exercise supervision and control over an employee." *Greene-Wotton v. Fiduciary Trust Company International*, 324 F. Supp. 2d 385, 392 (S.D.N.Y. 2003) (emphasis added). *See also Druiett v. Brenner*, 193 A.D.2d 644, 645 (2nd Dept. 1993) (holding plaintiff barred by Workers' Compensation Law from suing owner of premises for personal injury because owner was officer of company that employed plaintiff); *Hayles,* 2004 WL 26548, at *14 (holding claims would also be barred as against individual defendants because they were acting as agents of the employer).

In light of the above considerable precedent, Plaintiff's claim is barred. Plaintiff makes clear she is alleging a claim for negligent infliction of emotional distress arising out of sexual harassment that occurred at her workplace. Moreover, Plaintiff makes this claim against

Hellberg and Youchnow, whom she admits were officers and shareholders of her employer, Isogon. This is the exact situation the exclusivity provision of the Workers' Compensation Law was designed to address, and there could be no better or clearer example in which to invoke it. Therefore, Plaintiff's cause of action for negligent infliction of emotional distress should be dismissed outright as barred by the Workers' Compensation Law.

B.    Plaintiff Does Not Allege Facts Sufficient to Support a Claim of Negligent Infliction of Emotional Distress.

Independently of the fatal defect of being barred by the Workers' Compensation Law, Plaintiff's Fourth Cause of Action also fails because Plaintiff has not alleged any special duty owed by Hellberg and Youchnow, and Plaintiff was not subjected to a threat of physical impact or injury.

1.    *No Special Duty Was Owed to Plaintiff by Hellberg and Youchnow.*

Plaintiff's claim for negligent infliction of emotional distress fails because she did not allege a special duty owed to her by Hellberg and Youchnow. In New York, "recovery for negligent infliction of emotional distress is circumscribed to unique facts where a special duty is owed." *Kojak v. Jenkins*, No. 98 CIV. 4412 (RPP), 1999 WL 244098, at *9 (S.D.N.Y. April 26, 1999) (in a sexual harassment action, law firm employee failed to allege special duty owed by superior). "Absent such a special duty, a claim for negligent infliction of emotional distress can not stand." *Abdullajeva v. Club Quarters, Inc.*, No. 96 Civ. 0383, 1996 WL 497029, at *9 (S.D.N.Y. Sept. 3, 1996) (dismissing claims for negligent infliction of emotional distress in sexual harassment action).

Here, Plaintiff has alleged nothing to suggest any special duty owed by Hellberg and Youchnow to her. Instead, Plaintiff merely alleges Hellberg and Youchnow are shareholders of Isogon and knew or should have known of the alleged harassment. Clearly, like the employee in *Kojak* who brought a negligent infliction of emotional distress claim against her superior, Plaintiff "has not alleged any special duty owed to her by [Hellberg and Youchnow] other than the duty to obey the law." *Kojak*, 1999 WL 244098, at *9. Therefore, because she has failed entirely to allege a special duty, the cause of action should be dismissed.

- 4 -

2.    *Plaintiff Was Not Subjected To a Threat of Physical Impact or Injury.*

Yet another fatal defect in Plaintiff's claim is that she fails to allege she was subjected to a threat of physical impact or injury. In *Gerson,* 176 Misc. 2d 388, this honorable Court had an occasion to examine a claim for negligent infliction of emotional distress in the context of a sexual harassment action. In addition to holding the claim to be barred by the Workers' Compensation Law (*see* Section I.A., *supra*), Judge Miller held that the claim should also be dismissed because the plaintiff failed to allege any fear of physical injury. *Id.* at 391-92. The Judge noted:

> [T]he circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety.

*Id.* at 391.

Indeed, negligent infliction of emotional distress "is not well suited to deal with sexual harassment not involving physical contact or threat thereof." *Id.* The Court went on to state, "[T]he case history of this state has shown that short of sexual assault or battery, or threat thereof, there will be no cause of action for negligent infliction of emotional distress." *Id.* at 392.

Here, as in *Gerson,* Plaintiff alleges absolutely nothing in her Complaint to indicate any sort of physical contact occurred. Instead, her allegations of harassment consist solely of rambling e-mail messages from defendant Steven Barritz, which involved no touching whatsoever. Moreover, Plaintiff does not allege Hellberg and Youchnow participated in, encouraged, or even knew of any physical touching against her, or put her in fear of physical injury. To the contrary, Plaintiff simply alleges Hellberg and Youchnow knew of the alleged harassment and failed to remedy it. These facts, even if true, fall woefully short of the standard described in *Gerson.* Accordingly, as in *Gerson,* Plaintiff fails to adequately state a cause of action for negligent infliction of emotional distress.

**II.    Plaintiff's Unspecified Fifth Cause of Action Fails to State a Claim Against IBM and Isogon Corporation**

Plaintiff fails to identify in her Fifth Cause of Action a statutory or other basis for which she seeks relief from the Court.  Therefore, Defendants IBM and Isogon cannot determine the relief she seeks or the standards applicable to the cause of action, and the claim is insufficient as a matter of law.  CPLR § 3013 provides:

> Statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense.

N.Y. C.P.L.R. 3013 (McKinney 2005).

In pleading a cause of action, it is "essential…that the pleading enable the defendant to determine the nature of the plaintiff's grievances and the relief [she] seeks in consequence of the alleged wrongs." *Shapolsky v. Shapolsky*, 22 A.D.2d 91 (1st Dept. 1964).  *See also, Barocas v. Schweikart & Co.*, 63 Misc. 2d 131, 134, 311 N.Y.S.2d 445, 448 (N.Y. City Civ. Ct. 1970).

Here, Plaintiff gives no indication as to her statutory or other basis for relief.  Instead, her cause of action contains several conclusory statements regarding equal protection and what appears to be a hostile environment harassment claim.  Yet, Plaintiff inexplicably does not set forth any allegations that would allow the defendants to determine the law or laws upon which she seeks relief.  Considering local and federal laws may contain different applicable standards, defendants are unable to prepare a response or defense unless Plaintiff gives them notice of her basis for relief.  Her pleading fails to do so on its face and consequently, the defendants cannot determine the relief she seeks.  The stark brevity of Plaintiff's claim is a direct indication of its lack of substance.  Accordingly, the Fifth Cause of Action should be dismissed as a matter of law.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request judgment in favor of Defendants and dismissal with prejudice of the Fourth Cause of Action, as against Hellberg and

Youchnow, and the Fifth Cause of Action, as against IBM and Isogon, and any other relief the Court deems just and proper.

Dated: New York, New York
       February 7, 2006

                                        Respectfully submitted,

                                        GORDON & REES LLP


                                        By:  _Diane Krebs_____
                                             Diane Krebs, Esq.
                                        Attorneys for Defendants
                                        IBM, Isogon Corporation, Per Hellberg and
                                        Steven Youchnow
                                        One Liberty Plaza
                                        23rd Floor
                                        New York, NY  10006
                                        (212) 201.6777

TO:    Gerald A. Bunting, Esq.
       Law Offices of Gerald A. Bunting
       Attorneys for Plaintiff
       114 Old Country Road
       Suite 616
       Mineola, NY  14623
       (516) 248.2366

       Joseph Ortego, Esq.
       Nixon Peabody LLP
       Attorneys for Defendants Robert Barritz and Steven Barritz
       990 Stewart Avenue
       Garden City, NY 11530

       Tetragon, LLC
       57 Ira Place
       Syosset, NY

       Mr. Peter Kassan
       330 Seventh Avenue
       New York, NY  10001

       Mr. David Vardi
       330 Seventh Avenue
       New York, NY  10001

# EXHIBIT "E"

03/28/2006  18:18    516-741-8912                                    PAGE  03/03

- 2 -

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
-----------------------------------------------------x        Index No. 100071/2006
KATHRYN FJELD

Plaintiff,

- against -                                          **STIPULATION**

INTERNATIONAL BUSINESS MACHINES, INC,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN,
PER HELBERG, DAVID VARDI
and STEVEN YOUCHNOW,

Defendants.
-----------------------------------------------------x

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned
parties, that the motion by defendants INTERNATIONAL BUSINESS MACHINES, INC,
d/b/a IBM, ISOGON CORPORATION, PER HELBERG and STEVEN YOUCHNOW
originally returnable on February 28, 2006, is hereby adjourned to May 31, 2006 and

IT IS FURTHER STIPULATED AND AGREED that Plaintiffs Fourth Cause of
Action for negligent infliction of emotional distress is hereby withdrawn, with prejudice, as
against all defendants and

IT IS FURTHER STIPULATED AND AGREED that Plaintiffs shall, by April
20, 2006, serve an amended complaint amending the Fifth Cause of Action to correct the
deficiencies noted in Defendants' motion to dismiss, originally returnable on February 28,
2006.

For Plaintiff Kathryn Fjeld
The Law Offices of Gerald Bunting
114 Old Country Road, Suite 616
Mineola, NY 11501

For Defendants IBM, ISOGON CORP.
PER HELBERG and  STEVEN YOUCHNOW
Gordon & Rees, LLP
One Liberty Plaza
23rd Floor
New York, NY 10006

0290925.1

**EXHIBIT "F"**

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **JANE S. SOLOMON**                          PART 55
_____ *Justice*

Field, K.                                    INDEX NO.      100071/06

                                             MOTION DATE

        - v -                                MOTION SEQ. NO.    002

International                                MOTION CAL. NO.
_____

The following papers, numbered 1 to _____ were read on this motion to/for

                                                    **FILED**
                                             PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...

Answering Affidavits — Exhibits _____    MAY 11 2006

Replying Affidavits _____            NEW YORK
                                                     COUNTY CLERKS OFFICE

**Cross-Motion:** ☐ Yes    ☐ No

Upon the foregoing papers, it is ordered that this motion *made on amended with motion sequence 001 to which a copy the complaint is attached, also submitted on default, is granted and to the extent the fourth cause of action seeks relief as against Per Pelling and Steven Goodman, it is dismissed.*

*Moreover, the motion is granted on default also as to defendants Bit Asogn Corporation + the complaint is dismissed as against them. With cost + disbursements of Field the claim is directed to enter judgment accordingly leaving no claim against any prior deft →*

Dated: _____

                                                    J.S.C.

**Check one:** ☑ **FINAL DISPOSITION**    ☐ **NON-FINAL DISPOSITION**

Only remaining deft is to which relief is sought is Tetragon. Co Clerk file on computer shows no proof of service. If this is an error plaintiff can herd reargument within 60 days of entry here.

5/8/06

JANE S. SOLOMON

FILED

MAY 11 2006

NEW YORK
COUNTY CLERK'S OFFICE

**EXHIBIT "G"**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------x

KATHRYN FJELD,

                        Plaintiff,

          -against-

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ, and
ROBERT BARRITZ,

                        Defendants.
--------------------------------------------------------------x

Index No.,
Date filed:

Plaintiff designates New York 0 7 1 1 3 3 0 9
County as the place of trial.

**SUMMONS**

The basis of the venue is the principal
place of business of Defendants, 330
Seventh Ave., New York, NY.

COUNTY CLERK'S OFFICE
NEW YORK
OCT 03 2007
FILED

To the above named Defendants:

      YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's Attorneys within 20 days after the service of this summons, exclusive
of the day of service (or within 30 days after the service is complete if this summons is not
personally delivered to you within the State of New York); and in case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:      Lake Success, New York
            September 24, 2007

                        Yours' etc.,

                        BUNTING, GONER & ASSOCIATES P.C.
                        Attorneys for Plaintiff
                        1983 Marcus Avenue, Suite 117
                        Lake Success, New York 11042
                        (516) 358-8825

Defendants' Address:
IBM, 1133 Westchester Avenue, White Plains, New York
Isogon, 330 Seventh Avenue, New York County, New York
Tetragon, LLC, 57 Ira Place, Syosset, New York
Robert Barritz, 4 Skyview Court, Syosset, New York
Steven Barritz, 4 Skyview Court, Syosset, New York

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------x
KATHRYN FJELD

                              Plaintiff,

                - against -

INTERNATIONAL BUSINESS MACHINES, INC,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON L.L.C., STEVEN BARRITZ and,
ROBERT BARRITZ,

                         Defendants.
---------------------------------------------------------------x

Index No.

**VERIFIED COMPLAINT**

       Plaintiff KATHRYN FJELD, by her attorneys, BUNTING, GONER & ASSOCIATES P.C.,

complaining of the defendants, respectfully alleges, upon information and belief, as follows:

    **The Parties**:

    1.     That at all times herein mentioned plaintiff KATHRYN FJELD, ("Plaintiff" or "Fjeld"), was and

still is an individual domiciled in the State of New Jersey.

    2.     That at all times herein mentioned, and upon information and belief, defendant

INTERNATIONAL BUSINESS MACHINES, INC. d/b/a IBM, (hereinafter "IBM"), was and still is a corporation

or other business entity organized and existing under the laws of the State of New York with a principal place of

business at 1133 Westchester Avenue, White Plains, New York.  Upon information and belief, IBM is the successor

in interest to defendant ISOGON CORPORATION.

    3.     That at all times herein mentioned, and upon information and belief, defendant ISOGON

CORPORATION, (hereinafter "Isogon"), was and still is a corporation or other business entity organized and

existing under the laws of the State of New York and with a principal place of business at 330 Seventh Avenue,

New York, NY 10001.

    4.     Upon information and belief, defendant Isogon, a privately-held corporation, was acquired by

defendant IBM and has ceased to have an independent corporate identity.

    5.     That at all times herein mentioned, and upon information and belief, defendant TETRAGON,

L.L.C., (hereinafter "Tetragon"), was and still is a limited liability company or other business entity organized and

existing under the laws of the State of New York and with a principal place of business at 57 Ira Place, Syosset,

New York. Upon information and belief, Tetragon is a successor in interest to defendant Isogon.

6.       That at all times herein mentioned, and upon information and belief, defendant ROBERT

BARRITZ, was the President and majority shareholder of Isogon. Defendant Robert Barritz has a business address

located at 330 Seventh Avenue, New York, NY 10001.

7.       That at all times herein mentioned, and upon information and belief, defendant STEVEN

BARRITZ, was the son of defendant ROBERT BARRITZ. Defendant Steven Barritz has a business address located

at 330 Seventh Avenue, New York, NY 10001.

8.       That at all times herein mentioned, and upon information and belief, defendants PETER KASSAN

("Kasan"), PER HELBERG ("Helberg"), DAVID VARDI, ("Vardi") and STEVEN YOUCHNOW ("Youchnow"),

together with defendant Robert Barritz were the sole shareholders of defendant ISOGON. Upon information and

belief, defendants Kasan, Helberg, Vardi, Youchnow and Robert Barritz remain personally liable for all or some of

the obligations and claims of Isogon which accrued prior to the sale of Isogon to defendant IBM.


**FACTS COMMON TO ALL CAUSES OF ACTION:**

9.       Plaintiff Kathryn Fjeld was employed by defendant Isogon as a Product Manager. Plaintiff began

work at Isogon in April, 1996 and was employed there continuously until April, 2005. Plaintiff is a member of a

protected class - female.

10.       Upon information and belief defendant Steven Barritz was employed by defendant Isogon as a

marketing manager from 1998 to the present.

11.       Plaintiff's responsibilities at Isogon as Product Manager required almost daily contact with

defendant Steven Barritz, a marketing manager. As the only son of Isogon's principal shareholder and President,

defendant Steven Barritz was in a position of corporate authority.

12.       During the course of her employment with Defendant Isogon, plaintiff was subjected to a hostile,

offensive and discriminatory work environment. The environment plaintiff endured involved conduct by the

marketing manager Steven Barritz, which included but was not limited to the following: unwanted sexual advances;

threatening e-mails; sexually-charged suggestions and questions; and photographs of plaintiff digitally mutilated by

defendant Steven Barritz and then e-mailed to plaintiff.

13.    Having worked with defendant Steven Barritz since 1998 plaintiff and her husband developed a limited friendship with defendant Steven Barritz.

14.    Upon information and belief, defendant Steven Barritz suffers from numerous behavioral and mental maladies. These aforementioned behavioral and mental maladies were known to defendant Isogon and defendant Robert Barritz. Notwithstanding the foregoing, defendants Isogon and Robert Barritz took no steps to protect plaintiff from the offensive conduct of defendant Steven Barritz. Moreover, acting at the specific request of Defendant Steven Barritz, Robert Barritz routinely assigned his son to work on projects to which plaintiff was already assigned so that defendant Steven Barritz could have more access to plaintiff.

15.    In the year 2004 defendant Steven Barritz began to make sexual advances towards plaintiff. Defendant Steven Barritz also demanded that plaintiff enter into a sexual relationship with him. These advances were rejected by plaintiff.

16.    Knowing that defendant Steven Barritz was the only son of the President and majority shareholder of Isogon, plaintiff feared retaliation for rejecting these advances and attempted to retain a limited friendship with defendant Steven Barritz.

17.    Notwithstanding plaintiff's efforts to retain a professional working relationship, defendant Steven Barritz instead began to make obscene, sexually-loaded and suggestive comments to plaintiff both orally and via e-mail during the course of each work-day at Isogon.

18.    On Wednesday, February 4, 2004, while at the Isogon offices, defendant Steven Barritz sent plaintiff a crude message: "I shall not be going to any sales kickoff related activities. Fuc- them. That's what I say. Fuc- them with a 12 inch dildo. s"

19.    The increasingly demeaning messages from defendant Steven Barritz made it difficult for plaintiff to perform her duties as Product Manager. On Friday, March 19, 2004, increasingly angered by plaintiff's rejections of his advances, defendant Steven Barritz sent an e-mail using the Isogon network containing the following: "See, this is the type of thing you, if you were in a better universe, would be doing: writing scripts like my pal Zack over here. In that universe, in that alternate reality, you are, right now, writing a script. I suppose there's also another alternate reality where you're a baby elephant. *Kathryn the baby elephant.* Here, you have a sister

elephant, who constantly pushes at your trunk. Eventually, you're attacked and eaten by a pride of hungry lions, all republicans. *Kathryn the nail polish remover.* Guaranteed to remove every last speck of nail polish with a perfectionist's tendency. And a billion more Kathryns littering the landscape. They're out there somewhere. I can feel them. Their cosmic vibrations tickle my fingertips as I type these words. I'd like to collect all these Kathryns up, and put them in a traveling freakshow called *Freaky Kathryn Freakfest Extravaganza.* I'd have the Kathryns compete against each -- primarily mud wrestling. Kathryn the chewing gum wrapper vs. Kathryn the nail clippings (having been formed by *Kathryn the anxiety ridden teeth*). The clippings would tear the wrapper to pieces. At the end of the day, I'd take all the Kathryns, put them in a giant barrel, and roll them down a hill. That would be fun. The barrel crashes into a tree and explodes apart, a zillion Kathryns flying every which way. A montage of Kathryns flying through the air, with terror striken faces. What fun! All the Kathryns would live together in one giant nunnery, with a single *Kathryn Mother Superior* to lord over them. She'd smoke, but she'd never use an ashtray. The Kathryns would hold their hands out for Mother Superior to ash in. They'd all be her bitches. sb [Steven Barritz]"

20.    As Product Manager, plaintiff was required to work with defendant Steven Barritz, a situation increasingly made difficult by his sexual advances and the barrage of vulgar, sexually-suggestive e-mails. For example, on May 18, 2004, defendant Steven Barritz sent the following e-mail using the Isogon network: " **Subject:** You didn't notice   …but I slinked under your desk and fell asleep by your feet. The smell of your feet reminds me of the smell inside my mother's womb: moist & stinky, a bit like rotting leaves. You wiggle your toes often. Did you know that? Or do those piggies have minds of their own? Sometimes one of them wriggles, while the others sleep. Other times all of them are awake. I've named them. I've given them all silly names, like Mopsy and Flopsy. I'm not that creative. I'm only a little kitty kat, after all. sb"

21.    On Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff an e-mail which stated, inter alia, the following: "Do I need TRAINING? (Emphasis in the original). I'm laughing as I write this. I'm just playing at being angry. Or maybe I'm being passive aggressive. I say I'm playing angry, but, maybe I really am angry, and therefore am playing at playing at being angry. (Maybe I'm on the rag.) Whatever happened to that little Linux penguin that used to sit on your desk? What, wasn't he good enough to sit on your desk any longer? You're cold blooded, that's what you are. To kick a poor little defenseless penguin out onto the street! Into the cold!!!

How can you be so cruel?  Exclamation point!  Well, Francis Farmer Will Have Her Revenge on Kathryn.  That's what I say.  ***Don't tell me I didn't warn you.***  And while we're on the subject, just why are you so damn frisky all the time?  I mean, really."  (Emphasis supplied)

22.     Later on Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff another e-mail message which stated a bizarre threat: "Deadly Nightshade.  One leaf.  Approximately midnight."

23.     The next day plaintiff received from defendant Steven Barritz the following  e-mail message at work: "I ate a leaf of Deadly Nightshade last night, which is a non-lethal dose.  This is evident, since I'm still alive.  In fact, I read on a science site, that no dose is lethal (despite the claims you'll find elsewhere on the net).  Eating large quantities will just make you sick.  I did all this research before eating the leaf.  But, just in case I was wrong, and I died, and people were wondering why, you'd have a clue with the e-mail I sent you last night.  Better to play it safe, that's my motto."

24.     On October 12, 2004, defendant Steven Barritz sent an e-mail message containing crude sexual innuendo:  "It took me a half an hour to get out of bed this morning.  I used the lightbox this morning, while I had my morning breakfast of Special K with bananas, Dexedrine, and Zoloft.  I have decided I have to start using it every morning, that the Seasonal Affective Disorder is kicking in, which is the only reason I can think of to explain the funk I've been in as of late.  I know the light bothers your eyes, but, I think you might benefit from using the one you have in your office.  Are you combing your cats, every other day, like you said you were going to?  I added commas to the last sentence to please you. ***Did they give you syntax pleasure?  Go ahead, have yourself an after syntax cigarette.  Look at the word 'syntax'.  Say it aloud.  Let it roll back and forth on your tongue, as if you had a marble in your mouth.  I've decided what area of business I'd like to pursue.  Tonight, I'm going to have dinner with my parents, and tell them about my desire to go into the gay porn industry.  I'd like to hire Phil for my first film.  Phil would be giving a demo, and I'd be playing the client, and I'd be sitting there, watching him, and I'd start wiping the sweat off my brow, loosening my tie, etc.  You can probably fill in the rest.***  " (emphasis supplied)

25.     Because defendant Steven Barritz had made it clear that he could cause plaintiff to lose her job, plaintiff was compelled to endure a continuous barrage of weird, perverse and sexually-humiliating advances and e-mails at the Isogon facilities.  On Monday, September 6, 2004, defendant Steven Barritz wrote and asked if plaintiff

would wear a "Pussy Wagon" t-shirt to a gynecologist's office.

26.    Plaintiff attempted to reason with defendant Steven Barritz so as to preserve a working

relationship and to avoid his becoming more unstable and causing him to have her terminated.  On Wednesday

September 15, 2005 defendant Steven Barritz wrote:

"Is it possible to sprain one's tush? Last night, when I was rollerblading, I think I sprained my left cheek. I thought

you'd find that amusing. Because all that, my left cheek has been nagging for my attention. I wish my left cheek was

lower maintenance. s [Steven Barritz]"

27.    On November 5,2004 defendant Steven Barritz wrote plaintiff an e-mail which concluded with his

disturbing opinion about the Mel Gibson film "Passion of the Christ": **"PS Have you seen the Passion?  It's great**

**fun!  You have to fast forward past the boring non-violent parts, of course.  My favorite part is this one time**

**they tear a huge chunk of flesh off near his rib cage.  I almost came in my pants when they did that."**

[Emphasis supplied]

28.    Despite all the efforts of plaintiff to resist defendant Steven Barritz's advances in a diplomatic

fashion and to ignore his entreaties, he still persisted in sexual overtures.  On Tuesday, November 12, 2004, angry

that plaintiff had ignored his advances, Steven Barritz wrote:  **" Let's just say, I expect a phone call from you**

**sometime this month.** I also ask one other thing of you.  That you let me know if you want to go to the dance thing

on the 20th. Those are the two things I expect from you right now. **I want a whole lot more, but, I'm trying to**

**control myself, chill out, and re-direct this energy towards other parts of my life; I think this is healthy for me, and I**

think you'd agree. I know that we have a bit of a dysfunctional relationship, which is pretty much all my fault, but, I

want to work to make our friendship as healthy as it can be. I don't want you feeling guilty about not calling or

emailing me. I know you're busy and that you're a loner and that you're mentally overwhelmed; I understand you

more than you think. I want to be a positive aspect in your life, not a drain; that is why I'm letting the phone call and

email thing slide. That's all for now.  I hope you are having a modestly okay day. I voted this morning. The pain in

my arm is lesser than it has been. I'm feeling good, and in high spirits. Oh, wait, there's something else I want from

you: if you're not going to use the bright light thing in your office, I'd like it back. Please let me know. So, there are

three SB requests. There, now I'll stop writing, cuz, I mean, I really should do some work." (Emphasis supplied)

29.    In his various e-mails defendant Steven Barritz made it clear that he had control over plaintiff's employment at Isogon. In a rambling message sent Tuesday, November 23, 2005, he wrote in part: " Maybe the reason you haven't called me about this, is because you don't want to be better friends with me. That's okay, I mean, you're certainly allowed to not be friends with me. It's not as if it would be comfortable for you to come right out and say it, so, if this is the way you feel, which is fine, then, I should make it easy for you. I guess I'll just say, if you want to be friends with me, you know where to find me. I'm not mad at you, if this is the case, you must understand that. And friends or not, **I'll still make sure you are treated right by Isogon**, you don't have to worry about that. I still hope that we can have a working relationship. Though, I'm not quite sure if I can take assignments from you. I am having my job radically restructured -- this is confidential, btw. I suppose it's still possible, but we'd have to talk. A week of doing QA is not possible for me at all. Anyway, it sounds like it's Dmitri's fault, not yours, so, don't worry about it. It may be that you simply can't be friends with me at this point in your life. That's okay too. Like I said, you know where to find me. I'm kewl with it. You'll see. Steven" (emphasis supplied)

30.    This message was sent to plaintiff about the same time that defendant Steven Barritz sent plaintiff a photograph of herself that defendant had mutilated using Photoshop software.    This document was created by defendant Steven Barritz under the file name "K Face Distort 2.jpg" and is reproduced herein below:

K Face Distort 2.jpg



31.    On November 24, 2004, defendant Steven Barritz sent plaintiff an e-mail stating: "Is it healthy to have a friendship when I'm so enamored of you? My therapist says not to see you no more. She says you're like a disease without any cure. She said I'm so obsessed I'm becoming a bore, oh no. You think you're so pretty. (Well, I think you are, but you see what a little Photoshop can do.) I think my unreasoning love or attachment has caused

me to behave foolishly." Along with the November 24, 2004 e-mail message was an attached digital file which contained a another photograph of the plaintiff which had been defaced by defendant Steven Barritz using Photoshop software. At the end of the November 24, 2004 e-mail message was the following: " **PPS I think you should watch more porn.**" (Emphasis in the original)

32.    Plaintiff continued to ask defendant Steven Barritz to stop e-mailing her. In response to the message detailed in paragraph "31" above, plaintiff responded via e-mail: "please do not write things like this to me." Instead, defendant Steven Barritz increased the volume of offensive e-mails and in private conversations at Isogon's offices threatened to have her terminated from her job if she did not agree to spend more time with him. On December 1, 2004, defendant Steven Barritz refused to stop sending e-mails and instead wrote " Emailing you is fun! / It's like push-ups. How many can I do? s "

33.    Plaintiff was unable to bear the continued harassment and informed defendant Steven Barritz that she would be making a formal complaint to Isogon management. In response, on February 20, 2005 defendant Barritz sent plaintiff an e-mail with a 90 page attachment. It was the exit strategies manual for soon-to-be terminated Isogon executives: **"From:** Steve Barritz / **Sent:** Sunday, February 20, 2005 12:04 PM / **To:** Kathryn Fjeld / **Subject:** FW: the black book BP Exec Manual (for one on one).DOC " Executive Career Transition Counseling"" The threat was clear. If she complained about his advances then defendant Steven Barritz would use his access to his father to have her terminated.

34.    The sexually discriminatory acts and environment described in this complaint were otherwise known to defendant Isogon and defendant Robert Barritz, Kassan, Helberg, Vardi and Youchnow in mid-2004 through mid-2005 .

35.    The defendants treated similarly situated male employees more favorably in that they did not subject them to this discriminatory and offensive behavior.

36.    On or about February, 2005, plaintiff made a complaint to Isogon's Chief Financial Officer regarding the increasingly threatening conduct of defendant Steven Barritz..

37.    Notwithstanding plaintiff's complaints about the sexually discriminatory and demeaning acts and

environment described herein above, defendants Robert Barritz and Isogon took no appropriate remedial action.

38.    Defendants Isogon and Robert Barritz were aware of the sexual harassment and discrimination, but failed and/or refused to stop it or otherwise take appropriate remedial action, thereby subjecting plaintiff to continued, on-going and more severe harassment.

39.    Shortly thereafter, defendant Steven Barritz made an explicit verbal threat to plaintiff that he would have Isogon retaliate against plaintiff for having complained about his conduct.

40.    Upon information and belief, the primary harasser, defendant Steven Barritz, continues to be employed by defendant Isogon.

41.    In spite of plaintiff's complaints about defendant Steven Barritz's increasingly hostile and discriminatory acts, the defendants Robert Barritz and Isogon went out of their way to make plaintiff's job more difficult. Ultimately, Defendant Isogon, through defendant Robert Barritz, terminated plaintiff in retaliation for having complained about the conduct of defendant Steven Barritz.

42.    It was as a direct and proximate result of plaintiff's opposition to the sexual harassment and sexual discrimination that caused plaintiff to be terminated by defendants Robert Barritz and Isogon.

43.    All of the foregoing conduct was offensive to plaintiff and would be offensive to a reasonable person.

44.    Defendants created and perpetuated a work environment that was so offensive and severe that no reasonable person could expect to endure it.

45.    As a direct and proximate result of the foregoing conduct, plaintiff suffered embarrassment, humiliation, emotional distress and other forms of damage. These damages are of an on-going and continuous nature.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ, INDIVIDUALLY

46.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" inclusive as if more fully set forth herein.

47.     Defendant Steven Barritz treated plaintiff differently and less favorably than similarly situated male employees.

48.     That this treatment as stated herein in the "facts common to all causes of action" constitutes extreme and outrageous conduct on the part of the Defendants.

48.     Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Steven Barritz sexually harassed her and deprived plaintiff of her constitutional right to equal protection under the law.

49.     Defendant Steven Barritz intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

50.     At all relevant times, defendant Steven Barritz acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ, INDIVIDUALLY**

51.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" and "forty-seven" through "fifty" inclusive as if more fully set forth herein.

52.     Defendant Steven Barritz intentionally sent vulgar and sexually threatening e-mails to plaintiff in a deliberate effort to inflict emotional harm on plaintiff and to interfere with the course of her employment.

53.     That this treatment as stated herein in the "facts common to all causes of action" constitutes extreme and outrageous conduct on the part of the Defendants.

53.     As a result of the foregoing, defendant Steven Barritz intentionally caused and inflicted emotional distress upon plaintiff.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, INDIVIDUALLY**

54.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five"

and "forty-seven" through "fifty" and "fifty-two" through "fifty-three" inclusive as if more fully set forth herein.

54.    Defendant Robert Barritz treated plaintiff differently and less favorably than similarly situated

male employees. Defendant Robert Barritz knew or should have known that his son and employee was engaging in

inappropriate and harmful conduct towards plaintiff.  Defendant Robert Barritz knew or should have known that

this conduct was harmful to plaintiff and that similarly situated male employees of Isogon were not subject to such

conduct. That this treatment as stated herein in the "facts common to all causes of action" constitutes

extreme and outrageous conduct on the part of the Defendants.

56.    Through the actions, policies, employment practices and conduct directed at plaintiff, and by

causing plaintiff to be terminated in April 2005 in retaliation for her complaints regarding  the conduct of Steven

Barritz, defendant Robert Barritz deprived plaintiff of her constitutional right to equal protection under the law.

57.    Defendant Robert Barritz intentionally, purposefully and willfully caused the deprivation of

plaintiff's constitutional rights to equal protection under the law.

58.    At all relevant times, defendant Robert Barritz acted under the color of state law in willfully and

purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, KASAN, HELBERG, VARDI AND YOUCHNOW, INDIVIDUALLY

59.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five"

and "forty-seven" through "fifty"; "fifty-two" through "fifty-three"; and "fifty-five" through "fifty-eight" inclusive

as if more fully set forth herein.

60.    The fourth cause of action is intentionally deleted.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS IBM, ISOGON, AND

## TETRAGON

61.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five";

"forty-seven" through "fifty"; "fifty-two" through "fifty-three"; "Fifty-five" through "fifty-eight" and ""sixty"

through "sixty-one" inclusive as if more fully set forth herein.

62.    Defendant Isogon, and thereby its successors in interest IBM and Tetragon, treated plaintiff differently and less favorably than similarly situated male employees. Defendant Isogon knew or should have known that its employee was engaging in inappropriate and harmful conduct towards plaintiff. Defendant Isogon, through its shareholders, officers and employees knew or should have known that this conduct was harmful to plaintiff and that similarly situated male employees of Isogon were not subject to such conduct.

63.    Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Isogon permitted the existence of a hostile work environment by which defendant Steven Barritz was permitted to sexually harass plaintiff and deprive plaintiff of her constitutional right to equal protection under the law.

64.    Although informed of the aforementioned conduct the Defendant's allowed this behavior to continue in contravention of public policy as stated in the applicable state and federal statutes protecting the rights of employees.

65.    The Defendant allowed this hostile work environment and furthermore acknowledged and condone this behavior by allow it to continue and by discharge the Plaintiff in a retaliatory nature due to the relationship of the Defendants.

66.    Defendant Isogon intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law, to not be subjected to a hostile work environment and to be able to report illegal and tortuous acts perpetrated upon her without being discharged in retaliation.

67.    At all relevant times, defendant Isogon acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection, to not be subjected to a hostile work environment and to be able to report illegal and tortuous acts perpetrated upon her without being discharged in retaliation, under the law.

**WHEREFORE,**

On the First Cause of Action against defendant Steven Barritz, plaintiff demands judgment in the

amount of Ten Million Dollars, and

On the Second Cause of Action against defendant Steven Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Third Cause of Action against defendant Robert Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Fifth Cause of Action against defendants IBM, Isogon and Tetragon, plaintiff demands judgment in the amount of Ten Million Dollars, and together with attorneys fees, the costs and disbursements of this action and with such further relief as to the Court seems just, equitable and proper.

Dated:   Lake Success, New York
        September 24, 2007

Yours, etc.,

BUNTING, GONER & ASSOCIATES P.C.
Attorneys for the Plaintiff
1983 Marcus Avenue, Suite 117
Lake Success, NY 11042
(516) 358 - 8825

## ATTORNEY'S VERIFICATION

Robert D. Goner, an attorney duly admitted to practice before the courts of the State of New York, affirms the following pursuant to CPLR Section 2106:

That I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

The reason this verification is not made by the plaintiff is because plaintiff does not reside within New York County, where your affirmant maintains his office. That the source of your affirmant's knowledge is based upon communications with plaintiff as well as a review of the case file and documents provided by the plaintiff.

Dated:      Nassau, New York
            September 24, 2007

_____
            Robert D. Goner

EXHIBIT "H"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x    Civil Action No.
KATHRYN FJELD,

                          Plaintiff,    **NOTICE OF REMOVAL**

        -against-

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ, and
ROBERT BARRITZ,

                         Defendants.
-------------------------------------------------------x

        PLEASE TAKE NOTICE that INTERNATIONAL BUSINESS MACHINES, INC., d/b/a

IBM, and ISOGON CORPORATION are defendants in a civil action filed on October 3, 2007 in

the Supreme Court of the State of New York, New York County (Index No. 07-113309).

Pursuant to 28 United States Code, Sections 1441(b) and 1446, and with the consent of all co-

defendants still in existence,[1] Defendan ts INTERNATIONAL BUSINESS MACHINES, INC.,

d/b/a IBM, and ISOGON CORPORATION remove this action to the United States District Court

for the Southern District of New York, which is the judicial district in which the action is pending.

Dated:     New York, New York
           November 15, 2007

                            GORDON & REES, LLP

                            BY: _____
                              Diane Krebs, Esq.
                            *Attorneys for Defendants International Business*
                            *Machines, Inc., d/b/a IBM, and Isogon Corporation*
                            90 Broad Street
                            23rd Floor
                            New York, NY 10004
                            (212) 269-5500

---

[1]      Upon information and belief, defendant Tetragon, LLC no longer exists and has not been served in the underlying state court action. Prior attempts to serve papers on Tetragon, LLC at the address identified in the state court complaint have failed; they have been returned as undeliverable.

1

TO:    Robert D. Goner, Esq.
       BUNTING, GONER & ASSOCIATES P.C.
       *Attorneys for Plaintiff*
       1983 Marcus Avenue, Suite 117
       Lake Success, New York 11042
       (516) 358-8825

       Joseph J. Ortego, Esq.
       Thomas M. Mealiffe, Esq.
       NIXON PEABODY LLP
       *Attorneys for Defendants*
       *Steven Barritz and Robert Barritz*
       50 Jericho Quadrangle
       Jericho, New York 11753
       (516) 832-7500

       Tetragon, LLC
       57 Ira Place
       Syosset, NY

       Clerk Of The Court
       SUPREME COURT OF THE STATE OF NEW YORK
       NEW YORK COUNTY
       60 Centre Street, Room 161
       New York, New York 10007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x    Civil Action No.
KATHRYN FJELD,

                              Plaintiff,

                                                    **STATEMENT IN SUPPORT**
        -against-                                   **OF REMOVAL**

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a  IBM,  ISOGON  CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ, and
ROBERT BARRITZ,

                              Defendants.
-----------------------------------------------------------x

        Defendants INTERNATIONAL BUSINESS MACHINES, INC., d/b/a IBM, and ISOGON

CORPORATION ("Defendants") in this civil action, have filed a notice of removal because

this is a matter over which it appears Plaintiff is attempting to assert that the United States

District Courts have original jurisdiction, pursuant to 28 USC § 1331.  This action was

commenced by Plaintiff in the Supreme Court of the State of New York, New York County

(Index No. 07-113309) on October 3, 2007.  A copy of the Summons and Complaint in this

action is attached hereto.

        Removal appears to be proper because this is a civil action over which Plaintiff is

attempting to assert a cause of action arising under the Constitution, laws, or treaties of the

United States within the meaning of 28 U.S.C. § 1331.  In particular, Plaintiff alleges in the

Fifth Cause of Action, which is the only cause of action brought against Defendants, that

one of the individual defendants "was permitted to sexually harass plaintiff and deprive plaintiff

of her constitutional right to equal protection under the law."  Complaint ¶ 63.  She further

alleges that Defendants' conduct in allowing this to continue was "in contravention of public

policy as stated in the applicable state *and federal* statutes protecting the rights of employees."

Complaint ¶ 64 (emphasis added). Finally, Plaintiff alleges Defendant Isogon acted "under color of state law." Complaint ¶ 67. Therefore, although Plaintiff has not specified under which federal statute(s) she is bringing her claim, this case appears to satisfy the standards of 28 U.S.C. § 1331 and removal accordingly is proper pursuant to 28 U.S.C. § 1441(b). In addition, Defendants have obtained the consent of all co-defendants still in existence.[1]

This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), because Plaintiff's initial pleadings were served on or about October 26, 2007. This Notice of Removal is filed within 30 days of receipt of Plaintiff's summons and complaint. A copy of this summons and complaint is attached to, and incorporated into, this Notice of Removal. Also attached to this Notice are the Request for Judicial Intervention, notice of motion, attorney affirmation with exhibits, and memorandum of law related to the November 7, 2007 motion of co-defendants Robert Barritz and Steven Barritz to dismiss the state court complaint, which, together with the summons and complaint, are all of the process, pleadings and orders served on Defendant prior to its removal of this action.

Dated:     New York, New York
           November 15, 2007

                          GORDON & REES, LLP

                          BY: _____
                               Diane Krebs, Esq.
                          *Attorneys for Defendants International Business
                          Machines, Inc., d/b/a IBM, and Isogon Corporation*
                          90 Broad Street
                          23rd Floor
                          New York, NY 10004
                          (212) 269-5500

---

[1]     Upon information and belief, defendant Tetragon, LLC no longer exists and has not been served in the underlying state court action. Prior attempts to serve papers on Tetragon, LLC at the address identified in the state court complaint have failed; they have been returned as undeliverable.

EXHIBIT "A"

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
------------------------------------------------------------x
KATHRYN FJELD

              Plaintiff,

         - against -

INTERNATIONAL BUSINESS MACHINES, INC,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN,
PER HELBERG, DAVID VARDI
and STEVEN YOUCHNOW,

             Defendants.
------------------------------------------------------------

Index No.     /2005

**VERIFIED COMPLAINT**

FILED

JAN 04 2006

NEW YORK
COUNTY CLERK'S

06100071

Plaintiff KATHRYN FJELD, by her attorneys, THE LAW OFFICES OF

GERALD BUNTING, complaining of the defendants, respectfully alleges, upon information and

belief, as follows:

**The Parties**:

1.     That at all times herein mentioned plaintiff KATHRYN FJELD, ("Plaintiff" or

"Fjeld"), was and still is an individual domiciled in the State of New Jersey.

2.     That at all times herein mentioned, and upon information and belief, defendant

INTERNATIONAL BUSINESS MACHINES, INC. d/b/a IBM, (hereinafter "IBM"), was and

still is a corporation or other business entity organized and existing under the laws of the State

of New York with a principal place of business at 1133 Westchester Avenue, White Plains, New

York. Upon information and belief, IBM is the successor in interest to defendant ISOGON

CORPORATION.

3.     That at all times herein mentioned, and upon information and belief, defendant

ISOGON CORPORATION, (hereinafter "Isogon"), was and still is a corporation or other

business entity organized and existing under the laws of the State of New York and with a

principal place of business at 330 Seventh Avenue, New York, NY 10001.

4.    Upon information and belief, defendant Isogon, a privately-held corporation, was

acquired by defendant IBM and has ceased to have an independent corporate identity.

5.    That at all times herein mentioned, and upon information and belief, defendant

TETRAGON, L.L.C., (hereinafter "Tetragon"), was and still is a limited liability company or

other business entity organized and existing under the laws of the State of New York and with a

principal place of business at 57 Ira Place, Syosset, New York.  Upon information and belief,

Tetragon is a successor in interest to defendant Isogon.

6.    That at all times herein mentioned, and upon information and belief, defendant

ROBERT BARRITZ, was the President and majority shareholder of Isogon.  Defendant Robert

Barritz has a business address located at 330 Seventh Avenue, New York, NY 10001.

7.    That at all times herein mentioned, and upon information and belief, defendant

STEVEN BARRITZ, was the son of defendant ROBERT BARRITZ.  Defendant Steven Barritz

has a business address located at 330 Seventh Avenue, New York, NY 10001.

8.    That at all times herein mentioned, and upon information and belief, defendants

PETER KASSAN ("Kasan"), PER HELBERG ("Helberg"), DAVID VARDI, ("Vardi") and

STEVEN YOUCHNOW ("Youchnow"), together with defendant Robert Barritz were the sole

shareholders of defendant ISOGON.  Upon information and belief, defendants Kasan, Helberg,

Vardi, Youchnow and Robert Barritz remain personally liable for all or some of the obligations

and claims of Isogon which accrued prior to the sale of Isogon to defendant IBM.

## FACTS COMMON TO ALL CAUSES OF ACTION:

9.    Plaintiff Kathryn Fjeld  was employed by defendant Isogon as a Product Manager.
Plaintiff began work at Isogon in April, 1996 and was employed there continuously until April,
2005.  Plaintiff is a member of a protected class - female.

10.    Upon information and belief defendant Steven Barritz was employed by defendant
Isogon as a marketing manager from 1998 to the present.

11.    Plaintiff's responsibilities at Isogon as Product Manager required almost daily
contact with defendant Steven Barritz, a marketing manager.  As the only son of Isogon's
principal shareholder and President, defendant Steven Barritz was in a position of corporate
authority.

12.    During the course of her employment with Defendant Isogon, plaintiff was
subjected to a hostile, offensive and discriminatory work environment.  The environment
plaintiff endured involved conduct by the marketing manager Steven Barritz, which included but
was not limited to the following: unwanted sexual advances; threatening e-mails; sexually-
charged suggestions and questions; and photographs of plaintiff digitally mutilated by defendant
Steven Barritz and then e-mailed to plaintiff.

13.    Having worked with defendant Steven Barritz since 1998 plaintiff and her
husband developed a limited friendship with defendant Steven Barritz.

14.    Upon information and belief, defendant Steven Barritz suffers from numerous
behavioral and mental maladies.  These aforementioned behavioral and mental maladies were
known to defendant Isogon and defendant Robert Barritz.  Notwithstanding the foregoing,
defendants Isogon and Robert Barritz took no steps to protect plaintiff from the offensive
conduct of defendant Steven Barritz.  Moreover, acting at the specific request of Defendant

Steven Barritz, Robert Barritz routinely assigned his son to work on projects to which plaintiff

was already assigned so that defendant Steven Barritz could have more access to plaintiff.

15.    In the year 2004 defendant Steven Barritz began to make sexual advances towards

plaintiff. Defendant Steven Barritz also demanded that plaintiff enter into a sexual relationship

with him. These advances were rejected by plaintiff.

16.    Knowing that defendant Steven Barritz was the only son of the President and

majority shareholder of Isogon, plaintiff feared retaliation for rejecting these advances and

attempted to retain a limited friendship with defendant Steven Barritz.

17.    Notwithstanding plaintiff's efforts to retain a professional working relationship,

defendant Steven Barritz instead began to make obscene, sexually-loaded and suggestive

comments to plaintiff both orally and via e-mail during the course of each work-day at Isogon.

18.    On Wednesday, February 4, 2004, while at the Isogon offices, defendant Steven

Barritz sent plaintiff a crude message: "I shall not be going to any sales kickoff related

activities. Fuc- them. That's what I say. Fuc- them with a 12 inch dildo. s"

19.    The increasingly demeaning messages from defendant Steven Barritz made it

difficult for plaintiff to perform her duties as Product Manager. On Friday, March 19, 2004,

increasingly angered by plaintiff's rejections of his advances, defendant Steven Barritz sent an e-

mail using the Isogon network containing the following:

"See, this is the type of thing you, if you were in a better universe, would be doing: writing

scripts like my pal Zack over here. In that universe, in that alternate reality, you are, right now,

writing a script. I suppose there's also another alternate reality where you're a baby elephant.

*Kathryn the baby elephant.* Here, you have a sister elephant, who constantly pushes at your

trunk. Eventually, you're attacked and eaten by a pride of hungry lions, all republicans. *Kathryn the nail polish remover.* Guaranteed to remove every last speck of nail polish with a perfectionist's tendency. And a billion more Kathryns littering the landscape. They're out there somewhere. I can feel them. Their cosmic vibrations tickle my fingertips as I type these words. I'd like to collect all these Kathryns up, and put them in a traveling freakshow called *Freaky Kathryn Freakfest Extravaganza.* I'd have the Kathryns compete against each -- primarily mud wrestling. Kathryn the chewing gum wrapper vs. Kathryn the nail clippings (having been formed by *Kathryn the anxiety ridden teeth*). The clippings would tear the wrapper to pieces. At the end of the day, I'd take all the Kathryns, put them in a giant barrel, and roll them down a hill. That would be fun. The barrel crashes into a tree and explodes apart, a zillion Kathryns flying every which way. A montage of Kathryns flying through the air, with terror striken faces. What fun! All the Kathryns would live together in one giant nunnery, with a single *Kathryn Mother Superior* to lord over them. She'd smoke, but she'd never use an ashtray. The Kathryns would hold their hands out for Mother Superior to ash in. They'd all be her bitches. sb [Steven Barritz]"

20.    As Product Manager, plaintiff was required to work with defendant Steven Barritz, a situation increasingly made difficult by his sexual advances and the barrage of vulgar, sexually-suggestive e-mails.  For example, on May 18, 2004, defendant Steven Barritz sent the following e-mail using the Isogon network: " **Subject:** You didn't notice   ...but I slinked under your desk and fell asleep by your feet. The smell of your feet reminds me of the smell inside my mother's womb: moist & stinky, a bit like rotting leaves. You wiggle your toes often. Did you know that?  Or do those piggies have minds of their own? Sometimes one of them wriggles,

while the others sleep. Other times all of them are awake. I've named them. I've given them all

silly names, like Mopsy and Flopsy. I'm not that creative. I'm only a little kitty kat, after all. sb"

21.    On Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff an e-

mail which stated, inter alia, the following: "Do I need TRAINING? (Emphasis in the original).

I'm laughing as I write this. I'm just playing at being angry. Or maybe I'm being passive

aggressive. I say I'm playing angry, but, maybe I really am angry, and therefore am playing at

playing at being angry. (Maybe I'm on the rag.) Whatever happened to that little Linux penguin

that used to sit on your desk? What, wasn't he good enough to sit on your desk any longer?

You're cold blooded, that's what you are. To kick a poor little defenseless penguin out onto the

street! Into the cold!!! How can you be so cruel? Exclamation point! Well, Francis Farmer

Will Have Her Revenge on Kathryn. That's what I say. *Don't tell me I didn't warn you.* And

while we're on the subject, just why are you so damn frisky all the time? I mean, really."

(Emphasis supplied)

22.    Later on Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff

another e-mail message which stated a bizarre threat: "Deadly Nightshade. One leaf.

Approximately midnight."

23.    The next day plaintiff received from defendant Steven Barritz the following e-

mail message at work: "I ate a leaf of Deadly Nightshade last night, which is a non-lethal dose.

This is evident, since I'm still alive. In fact, I read on a science site, that no dose is lethal

(despite the claims you'll find elsewhere on the net). Eating large quantities will just make you

sick. I did all this research before eating the leaf. But, just in case I was wrong, and I died, and

people were wondering why, you'd have a clue with the e-mail I sent you last night.  Better to play it safe, that's my motto."

24.    On October 12, 2004, defendant Steven Barritz sent an e-mail message containing crude sexual innuendo:

"It took me a half an hour to get out of bed this morning. I used the lightbox this morning, while I had my morning breakfast of Special K with bananas, Dexedrine, and Zoloft.  I have decided I have to start using it every morning, that the Seasonal Affective Disorder is kicking in, which is the only reason I can think of to explain the funk I've been in as of late. I know the light bothers your eyes, but, I think you might benefit from using the one you have in your office.  Are you combing your cats, every other day, like you said you were going to? I added commas to the last sentence to please you. *Did they give you syntax pleasure? Go ahead, have yourself an after syntax cigarette.  Look at the word 'syntax'. Say it aloud. Let it roll back and forth on your tongue, as if you had a marble in your mouth.  I've decided what area of business I'd like to pursue. Tonight, I'm going to have dinner with my parents, and tell them about my desire to go into the gay porn industry. I'd like to hire Phil for my first film.  Phil would be giving a demo, and I'd be playing the client, and I'd be sitting there, watching him, and I'd start wiping the sweat off my brow, loosening my tie, etc. You can probably fill in the rest.* " (emphasis supplied)

25.    Because defendant Steven Barritz had made it clear that he could cause plaintiff to lose her job, plaintiff was compelled to endure a continuous barrage of weird, perverse and sexually-humiliating advances and e-mails at the Isogon facilities.  On Monday, September 6,

2004, defendant Steven Barritz wrote and asked if plaintiff would wear a "Pussy Wagon" t-shirt to a gynecologist's office.

26.    Plaintiff attempted to reason with defendant Steven Barritz so as to preserve a working relationship and to avoid his becoming more unstable and causing him to have her terminated.  On Wednesday September 15, 2005 defendant Steven Barritz wrote:

"Is it possible to sprain one's tush? Last night, when I was rollerblading, I think I sprained my left cheek. I thought you'd find that amusing. Because all that, my left cheek has been nagging for my attention. I wish my left cheek was lower maintenance. s [Steven Barritz]"

27.    On November 5,2004 defendant Steven Barritz wrote plaintiff an e-mail which concluded with his disturbing opinion about the Mel Gibson film "Passion of the Christ": **"PS Have you seen the Passion?  It's great fun!  You have to fast forward past the boring non-violent parts, of course.  My favorite part is this one time they tear a huge chunk of flesh off near his rib cage.  I almost came in my pants when they did that."** [Emphasis supplied]

28.    Despite all the efforts of plaintiff to resist defendant Steven Barritz's advances in a diplomatic fashion and to ignore his entreaties, he still persisted in sexual overtures.  On Tuesday, November 12, 2004, angry  that plaintiff had ignored his advances, Steven Barritz wrote:  **" Let's just say, I expect a phone call from you sometime this month.** I also ask one other thing of you.  That you let me know if you want to go to the dance thing on the **20th.  Those are the two things I expect from you right now.  I want a whole lot more, but, I'm trying to control myself,** chill out, and re-direct this energy towards other parts of my life; I think this is healthy for me, and I think you'd agree.  I know that we have a bit of a dysfunctional relationship, which is pretty much all my fault, but, I want to work to make our friendship as

healthy as it can be. I don't want you feeling guilty about not calling or emailing me. I know

you're busy and that you're a loner and that you're mentally overwhelmed; I understand you more

than you think. I want to be a positive aspect in your life, not a drain; that is why I'm letting the

phone call and email thing slide. That's all for now. I hope you are having a modestly okay

day. I voted this morning. The pain in my arm is lesser than it has been. I'm feeling good, and in

high spirits. Oh, wait, there's something else I want from you: if you're not going to use the

bright light thing in your office, I'd like it back. Please let me know. So, there are three SB

requests. There, now I'll stop writing, cuz, I mean, I really should do some work." (Emphasis

supplied)

      29.    In his various e-mails defendant Steven Barritz made it clear that he had control

over plaintiff's employment at Isogon. In a rambling message sent Tuesday, November 23,

2005, he wrote in part: " Maybe the reason you haven't called me about this, is because you don't

want to be better friends with me. That's okay, I mean, you're certainly allowed to not be friends

with me. It's not as if it would be comfortable for you to come right out and say it, so, if this is

the way you feel, which is fine, then, I should make it easy for you. I guess I'll just say, if you

want to be friends with me, you know where to find me. I'm not mad at you, if this is the case,

you must understand that. And friends or not, **I'll still make sure you are treated right by**

**Isogon**, you don't have to worry about that. I still hope that we can have a working relationship.

Though, I'm not quite sure if I can take assignments from you. I am having my job radically

restructured -- this is confidential, btw. I suppose it's still possible, but we'd have to talk. A

week of doing QA is not possible for me at all. Anyway, it sounds like it's Dmitri's fault, not

yours, so, don't worry about it. It may be that you simply can't be friends with me at this point in

your life. That's okay too. Like I said, you know where to find me. I'm kewl with it. You'll see. Steven" (emphasis supplied)

30.    This message was sent to plaintiff about the same time that defendant Steven Barritz sent plaintiff a photograph of herself that defendant had mutilated using Photoshop software.    This document was created by defendant Steven Barritz under the file name "K Face Distort 2.jpg" and is reproduced herein below:

K Face Distort 2.jpg



31.    On November 24, 2004, defendant Steven Barritz sent plaintiff an e-mail stating: "Is it healthy to have a friendship when I'm so enamored of you? My therapist says not to see you no more. She says you're like a disease without any cure. She said I'm so obsessed I'm becoming a bore, oh no. You think you're so pretty. (Well, I think you are, but you see what a little Photoshop can do.) I think my unreasoning love or attachment has caused me to behave foolishly." Along with the November 24, 2004 e-mail message was an attached digital file

which contained a another photograph of the plaintiff which had been defaced by defendant Steven Barritz using Photoshop software. At the end of the November 24, 2004 e-mail message was the following: " **PPS I think you should watch more porn.**" (Emphasis in the original)

32.    Plaintiff continued to ask defendant Steven Barritz to stop e-mailing her. In response to the message detailed in paragraph "31" above, plaintiff responded via e-mail: "please do not write things like this to me." Instead, defendant Steven Barritz increased the volume of offensive e-mails and in private conversations at Isogon's offices threatened to have her terminated from her job if she did not agree to spend more time with him. On December 1, 2004, defendant Steven Barritz refused to stop sending e-mails and instead wrote " Emailing you is fun! / It's like push-ups. How many can I do?  s "

33.    Plaintiff was unable to bear the continued harassment and informed defendant Steven Barritz that she would be making a formal complaint to Isogon management. In response, on February 20, 2005 defendant Barritz sent plaintiff an e-mail with a 90 page attachment. It was the exit strategies manual for soon-to-be terminated Isogon executives: "**From:** Steve Barritz / **Sent:** Sunday, February 20, 2005 12:04 PM / **To:** Kathryn Fjeld / **Subject:** FW: the black book BP Exec Manual (for one on one).DOC " Executive Career Transition Counseling"" The threat was clear. If she complained about his advances then defendant Steven Barritz would use his access to his father to have her terminated.

34.    The sexually discriminatory acts and environment described in this complaint were otherwise known to defendant Isogon and defendant Robert Barritz, Kassan, Helberg, Vardi and Youchnow in mid-2004 through mid-2005 .

35.    The defendants treated similarly situated male employees more favorably in that

they did not subject them to this discriminatory and offensive behavior.

36.    On or about February, 2005, plaintiff made a complaint to Isogon's Chief Financial Officer regarding the increasingly threatening conduct of defendant Steven Barritz..

37.    Notwithstanding plaintiff's complaints about the sexually discriminatory and demeaning acts and environment described herein above, defendants Robert Barritz and Isogon took no appropriate remedial action.

38.    Defendants Isogon and Robert Barritz were aware of the sexual harassment and discrimination, but failed and/or refused to stop it or otherwise take appropriate remedial action, thereby subjecting plaintiff to continued, on-going and more severe harassment.

39.    Shortly thereafter, defendant Steven Barritz made an explicit verbal threat to plaintiff that he would have Isogon retaliate against plaintiff for having complained about his conduct.

40.    Upon information and belief, the primary harasser, defendant Steven Barritz, continues to be employed by defendant Isogon.

41.    In spite of plaintiff's complaints about defendant Steven Barritz's increasingly hostile and discriminatory acts, the defendants Robert Barritz and Isogon went out of their way to make plaintiff's job more difficult.  Ultimately, Defendant Isogon, through defendant Robert Barritz, terminated plaintiff in retaliation for having complained about the conduct of defendant Steven Barritz.

42.    It was as a direct and proximate result of plaintiff's opposition to the sexual harassment and sexual discrimination that caused plaintiff to be terminated by defendants Robert

Barritz and Isogon.

43.    All of the foregoing conduct was offensive to plaintiff and would be offensive to a reasonable person.

44.    Defendants created and perpetuated a work environment that was so offensive and severe that no reasonable person could expect to endure it.

45.    As a direct and proximate result of the foregoing conduct, plaintiff suffered embarrassment, humiliation, emotional distress and other forms of damage.  These damages are of an on-going and continuous nature.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ, INDIVIDUALLY

46.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" inclusive as if more fully set forth herein.

47.    Defendant Steven Barritz treated plaintiff differently and less favorably than similarly situated male employees.

48.    Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Steven Barritz sexually harassed her and deprived plaintiff of her constitutional right to equal protection under the law.

49.    Defendant Steven Barritz intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

50.    At all relevant times, defendant Steven Barritz acted under the color of state law in willfully  and purposefully depriving plaintiff of constitutionally guaranteed rights of equal

protection under the law.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ, INDIVIDUALLY

51.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one"

through "forty-five" and "forty-seven" through "fifty" inclusive as if more fully set forth herein.

52.    Defendant Steven Barritz intentionally sent vulgar and sexually threatening e-

mails to plaintiff in a deliberate effort to inflict emotional harm on plaintiff and to interfere with

the course of her employment.

53.    As a result of the foregoing, defendant Steven Barritz intentionally caused and

inflicted emotional distress upon plaintiff.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, INDIVIDUALLY

54.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one"

through "forty-five" and "forty-seven" through "fifty" and "fifty-two" through "fifty-three"

inclusive as if more fully set forth herein.

55.    Defendant Robert Barritz treated plaintiff differently and less favorably than

similarly situated male employees.  Defendant Robert Barritz knew or should have known that

his son and employee was engaging in inappropriate and harmful conduct towards plaintiff.

Defendant Robert Barritz knew or should have known that this conduct was harmful to plaintiff

and that similarly situated male employees of Isogon were not subject to such conduct.

56.    Through the actions, policies, employment practices and conduct directed at

plaintiff, and by causing plaintiff to be terminated in April 2005 in retaliation for her complaints

regarding the conduct of Steven Barritz, defendant Robert Barritz deprived plaintiff of her constitutional right to equal protection under the law.

57.    Defendant Robert Barritz intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

58.    At all relevant times, defendant Robert Barritz acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, KASAN, HELBERG, VARDI AND YOUCHNOW, INDIVIDUALLY**

59.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" and "forty-seven" through "fifty"; "fifty-two" through "fifty-three"; and "fifty-five" through "fifty-eight" inclusive as if more fully set forth herein.

60.    Defendants Robert Barritz, Kasan, Helberg, Vardi and Youchnow, as officers and principals of defendant Isogon and Isogon, knew or should have known of the campaign of sexual harassment being waged by Steven Barritz against plaintiff. Defendant knew or should have known of the vulgar and sexually-suggestive e-mails being intentionally sent by Steven Barritz to plaintiff.

61.    As a result of the foregoing, defendants are liable for the negligent infliction of emotional distress on plaintiff.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS IBM, ISOGON, AND TETRAGON**

61.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five"; "forty-seven" through "fifty"; "fifty-two" through "fifty-three"; "Fifty-five" through "fifty-eight" and ""sixty" through "sixty-one" inclusive as if more fully set forth herein.

62.    Defendant Isogon, and thereby its successors in interest IBM and Tetragon, treated plaintiff differently and less favorably than similarly situated male employees. Defendant Isogon knew or should have known that its employee was engaging in inappropriate and harmful conduct towards plaintiff. Defendant Isogon, through its shareholders, officers and employees knew or should have known that this conduct was harmful to plaintiff and that similarly situated male employees of Isogon were not subject to such conduct.

63.    Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Isogon permitted the existence of a hostile work environment by which defendant Steven Barritz was permitted to sexually harass plaintiff and deprive plaintiff of her constitutional right to equal protection under the law.

64.    Defendant Isogon intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

65.    At all relevant times, defendant Isogon acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.

**WHEREFORE,**

On the First Cause of Action against defendant Steven Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Second Cause of Action against defendant Steven Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Third Cause of Action against defendant Robert Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Fourth Cause of Action against defendant Robert Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Fifth Cause of Action against defendants IBM, Isogon and Tetragon, plaintiff demands judgment in the amount of Ten Million Dollars, and together with attorneys fees, the costs and disbursements of this action and with such further relief as to the Court seems just, equitable and proper.

Dated: Mineola, New York
        December 12, 2005

Yours, etc.,

_____

LAW OFFICES OF GERALD A. BUNTING
Attorneys for the Plaintiff
114 Old Country Road, Suite 616
Mineola, New York 11501
(516) 741-0687

ATTORNEY'S VERIFICATION

GERALD A. BUNTING, an attorney duly admitted to practice before the courts of the State of New York, affirms the following pursuant to CPLR Section 2106:

That I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

The reason this verification is not made by the plaintiff is because plaintiff does not reside within Nassau County, where your affirmant maintains his office. That the source of your affirmant's knowledge is based upon communications with plaintiff as well as a review of the case file, electronic data and e-mail, and documents provided by the plaintiff.

Dated:      Mineola, New York
            December 3, 2005

_____
Gerald A. Bunting

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
---------------------------------------------------------------x
KATHRYN FJELD

                           Plaintiff,

                  - against -

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., ROBERT BARRITZ
and STEVEN BARRITZ,
                           Defendants.
---------------------------------------------------------------x

Index No.        /2006

**SUMMONS AND**
**VERIFIED COMPLAINT**

# The Law Offices of Gerald A. Bunting
Attorneys for the Plaintiff
114 Old Country Road
Suite 616
Mineola, New York
(516) 248-2366



# EXHIBIT "B"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
KATHRYN FJELD,

                          Plaintiff,                    Index No.: 100071/2006

                                                        **AMENDED**
                                                        **NOTICE OF MOTION**

                  - against –

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

                          Defendants.
-------------------------------------------------------------------X

    **PLEASE TAKE NOTICE**, that upon the annexed affirmation of Mercedes Colwin,

dated February 7, 2006, the accompanying memorandum of law, and upon all prior pleadings

and proceedings heretofore had herein, the undersigned will move before the Motion Submission

Part, Room 130 at the Supreme Court located at 60 Centre Street, New York, NY 10007, on the

28th day of February 2006, at 9:30 o'clock in the forenoon or as soon thereafter as counsel can be

heard for an order pursuant to CPLR § 3211 dismissing the plaintiff's claims for negligent

infliction of emotional distress (the Fourth Cause of Action) as against defendants Per Hellberg

and Steven Youchnow, and the Fifth unspecified Cause of Action as against defendants IBM and

Isogon Corporation on the grounds that they fail to state a cause of action, and for such other and

further relief as this Honorable Court may deem just, proper, and equitable.



RECEIVED

FEB 10 2006

NEW YORK
COUNTY CLERK

**PLEASE TAKE FURTHER NOTICE**, that answering papers and reply papers, if any, must be served at least seven (7) days and one (1) day, respectively, prior to the return date of this motion, pursuant to Rule 2214(b) of the CPLR.

Dated: New York, New York
　　　 February 9, 2006

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　GORDON & REES LLP

　　　　　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　　　Diane Krebs, Esq.
　　　　　　　　　　　　　　　　　　　　Attorneys for Defendants
　　　　　　　　　　　　　　　　　　　　IBM, Isogon Corporation, Per Hellberg and
　　　　　　　　　　　　　　　　　　　　Steven Youchnow
　　　　　　　　　　　　　　　　　　　　One Liberty Plaza
　　　　　　　　　　　　　　　　　　　　23d Floor
　　　　　　　　　　　　　　　　　　　　New York, NY  10006
　　　　　　　　　　　　　　　　　　　　(212) 201-6777

TO:　　Gerald A. Bunting, Esq.
　　　　Law Offices of Gerald A. Bunting
　　　　Attorneys for Plaintiff
　　　　114 Old Country Road
　　　　Suite 616
　　　　Mineola, NY  14623
　　　　(516) 248-2366

　　　　Joseph Ortego, Esq.
　　　　Nixon Peabody LLP
　　　　Attorneys for Defendants Robert Barritz and Steven Barritz
　　　　990 Stewart Avenue
　　　　Garden City, NY 11530

　　　　Tetragon, LLC
　　　　57 Ira Place
　　　　Syosset, NY

　　　　Mr. Peter Kassan
　　　　330 Seventh Avenue
　　　　New York, NY  10001

2

Mr. David Vardi
330 Seventh Avenue
New York, NY 10001

HUBB\1035877\951336.1

# EXHIBIT "C"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

KATHRYN FJELD,

                              Plaintiff,                              Index No.: 100071/2006

                                                                     **AFFIRMATION**

              - against –

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

                              Defendants.

-------------------------------------------------------------------X

MERCEDES COLWIN, an attorney duly admitted to practice law before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

1.       I am a partner with the law firm of Gordon & Rees, LLP, attorneys for Defendants IBM, Isogon Corporation ("Isogon"), Per Hellberg ("Hellberg") and Steven Youchnow ("Youchnow") (collectively referred to herein as "Defendants"). As such, I am fully familiar with all of the facts and proceedings set forth herein.

2.       This affirmation is submitted in support of Defendants' motion, pursuant to CPLR § 3211, to dismiss plaintiff's claims in her Complaint for negligent infliction of emotional distress (the Fourth Cause of Action) as against defendants Per Hellberg and Steven Youchnow, and the unspecified Fifth Cause of Action as against defendants IBM and Isogon Corporation.

3.       Plaintiff contends in her Fourth Cause of Action that, because they were officers and principals of Isogon, defendants Hellberg and Youchnow knew or should have known of the sexual harassment purportedly being directed at Plaintiff by Isogon employee Steven Barritz. Plaintiff further alleges that because they knew or should have known of the alleged harassment, defendants Hellberg and Youchnow are liable for negligent infliction of emotional distress.

1

4.     It is unclear what Plaintiff is attempting to claim in the Fifth Cause of Action. Plaintiff states some conclusions that are apparently designed to support a sexual harassment claim, but there is no indication as to their statutory basis.

## RELEVANT BACKGROUND[1]

5.     While employed as a Product Manager at Isogon, Plaintiff was allegedly subjected to sexual harassment by the conduct of Steven Barritz, who was also an Isogon employee and the son of one of the shareholders, defendant Robert Barritz. The alleged conduct consisted solely of e-mail messages and there is no allegation of any actual or attempted physical contact.

6.     Defendants Hellberg and Youchnow were shareholders of defendant Isogon.

7.     Defendant Isogon was acquired by defendant IBM, and no longer has a separate corporate identity.

## SUMMARY OF ARGUMENT

8.     Plaintiff's Fourth Cause of Action alleges defendants Hellberg and Youchnow are liable for negligent infliction of emotional distress. However, this claim suffers from an at least two insurmountable, fatal defects. First, the case law makes clear that the New York Workers' Compensation Law provides the sole and exclusive remedy for negligence claims, including claims for negligent infliction of emotional distress, against an employer. Additionally, the workers' compensation exclusivity provision applies to both employers and their agents. Therefore, Plaintiff's claim should be dismissed as barred by the Workers' Compensation Law.

9.     Second, Plaintiff does not allege facts sufficient to support a claim for negligent infliction of emotional distress. There are at least two areas in which the facts are deficient: (1) Plaintiff alleges no special duty by Hellberg and Youchnow owed to her other than the duty to obey the law; and (2) Plaintiff does not allege any manner of physical touching, or that she was

---

[1]     On a motion to dismiss, all facts listed in the Complaint are presumed true for purposes of the motion, and Defendants do so here solely for that purpose. The facts are therefore taken from the Complaint.

2

placed in fear of physical impact or injury. As case law clearly demonstrates, Plaintiff's negligence claim should properly be dismissed in such circumstances.

10.     It is not entirely clear what the basis is of Plaintiff's Fifth Cause of Action against Defendants IBM and Isogon. Based on some conclusory statements within the Complaint, it appears Plaintiff is attempting to state some manner of sexual harassment claim, but the Cause of Action is not sufficiently particular such that the Defendants can determine the relief Plaintiff seeks or the applicable standards, as required by law. This has deprived the IBM and Isogon of adequate notice and the ability to prepare a response and/or defense. Indeed, the claim is wholly devoid of any statutory or other basis for relief. Accordingly, the Fifth Cause of Action is defective on its face and should be dismissed.

Dated: New York, New York
       February 7, 2006

                                        Respectfully submitted,

                                        GORDON & REES LLP

                                        By: _____
                                              Mercedes Colwin, Esq.
                                        Attorneys for Defendants
                                        IBM, Isogon Corporation, Per Hellberg and
                                        Steven Youchnow
                                        One Liberty Plaza
                                        23d Floor
                                        New York, NY 10006
                                        (212) 201-6777

TO:     Gerald A. Bunting, Esq.
        Law Offices of Gerald A. Bunting
        Attorneys for Plaintiff
        114 Old Country Road
        Suite 616
        Mineola, NY 14623
        (516) 248-2366

        Joseph Ortego, Esq.
        Nixon Peabody LLP
        Attorneys for Defendants Robert Barritz and Steven Barritz
        990 Stewart Avenue
        Garden City, NY 11530

3

Tetragon, LLC
57 Ira Place
Syosset, NY

Mr. Peter Kassan
330 Seventh Avenue
New York, NY  10001

Mr. David Vardi
330 Seventh Avenue
New York, NY  10001

{UBB\1035877\951336.1

EXHIBIT "D"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
KATHRYN FJELD,

                      Plaintiff,                        Index No.: 100071/2006

             - against –

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

                      Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT
## OF THE MOTION OF DEFENDANTS
## IBM, ISOGON CORPORATION, PER HELLBERG AND STEVEN YOUCHNOW
## TO DISMISS THE COMPLAINT

On The Brief:
Mercedes Colwin, Esq.
Diane Krebs, Esq.

### GORDON & REES, LLP
ATTORNEYS FOR DEFENDANTS
**IBM, ISOGON CORPORATION, PER HELLBERG and STEVEN YOUCHNOW**
ONE LIBERTY PLAZA, 23RD FLOOR
NEW YORK, NEW YORK 10006
PHONE: (212) 201.6777
FAX:   (212) 201.6778

## TABLE OF CONTENTS

PRELIMINARY STATEMENT...........................................................................................1

STATEMENT OF FACTS..............................................................................................2

ARGUMENT................................................................................................................2

I.    **Plaintiff's Fourth Cause of Action for Negligent Infliction
      Of Emotional Distress Fails to State a Claim Against
      Per Hellberg and Steven Youchnow**.........................................................2

      A.  Plaintiff's Negligence Claim Is Barred By the Workers'
          Compensation Law...........................................................................2

      B.  Plaintiff Does Not Allege Facts Sufficient to Support a Claim of
          Negligent Infliction of Emotional Distress.............................4

          1.    *No Special Duty Was Owed to Plaintiff by Hellberg and
                Youchnow*.........................................................................4

          2.    *Plaintiff Was Not Subjected To a Threat of Physical Impact or
                Injury*................................................................................5

II.   **Plaintiff's Unspecified Fifth Cause of Action Fails to State a Claim
      Against IBM and Isogon Corporation**...................................................6

**CONCLUSION**...........................................................................................................6

## PRELIMINARY STATEMENT

During the course of Plaintiff's employment with Isogon Corporation ("Isogon"), she allegedly suffered sexual harassment perpetrated by an Isogon employee. As a result, Plaintiff sued, among others, Isogon, two of Isogon's former shareholders, Per Hellberg ("Hellberg") and Steven Youchnow ("Youchnow"), and its current parent company, International Business Machines ("IBM"), which acquired Isogon after the conduct in Plaintiff's complaint allegedly occurred (collectively, "Defendants"). In an apparent ignorance of the New York Worker's Compensation Law, Plaintiff alleged negligence claims against the Isogon shareholders individually for infliction of emotional distress (Fourth Cause of Action). Plaintiff also alleges claims against IBM and Isogon, although it is unclear exactly what the claims are, as set forth in Plaintiff's Fifth Cause of Action.

Neither of these causes of action can be sustained. First, the negligent infliction of emotional distress claim suffers from at least two fatal defects. Most glaringly, Plaintiff's negligence claims against her employer are barred by the Worker's Compensation Law. Additionally, beyond that insurmountable obstacle, Plaintiff fails to allege facts sufficient to support a claim of negligent infliction of emotional distress. Therefore, the Fourth Cause of Action should be dismissed.

Plaintiff's claims in her Fifth Cause of Action are similarly deficient. Other than proffering some conclusory statements regarding sexual harassment, Plaintiff fails to identify the basis for which she believes she is entitled to relief. Indeed, defendants IBM and Isogon have no idea upon which statute or other ground Plaintiff is making her claims. As the claim currently stands, the Defendants have not been provided adequate notice of any potential liabilities and cannot determine the relief Plaintiff seeks or the appropriate applicable standards for Plaintiff's claim, as required by law. As such, the defendants cannot prepare a response and/or defense. Accordingly, the Fifth Cause of Action is defective on its face and should be dismissed.

## STATEMENT OF FACTS[1]

Plaintiff, a female, was employed as a Product Manager by defendant Isogon from April 1996 to April 2005. (Complaint ¶ 9). During the course of her employment, Plaintiff was allegedly subjected to sexual harassment perpetrated by defendant Steven Barritz, who was also employed at Isogon as a marketing manager and is the son of Robert Barritz, one of Isogon's shareholders. (Comp. ¶¶ 10-12). The nature of the harassment consisted solely of e-mail communications between Steven Barritz and Plaintiff. Plaintiff alleges no actual or attempted physical touching. (Comp. ¶¶ 18-33).

IBM acquired Isogon, which has ceased to have an independent corporate identity. (Comp. ¶ 4). Defendants Hellberg and Youchnow were shareholders of Isogon during the course of Plaintiff's employment. (Comp. ¶ 8). Plaintiff does not allege Hellberg or Youchnow participated in any harassing conduct towards her, but does believe they knew of the harassment by Steven Barritz. (Comp. ¶ 34).

## ARGUMENT

**I.      Plaintiff's Fourth Cause of Action for Negligent Infliction Of Emotional Distress Fails to State a Claim Against Per Hellberg and Steven Youchnow**

Plaintiff's Fourth Cause of Action alleges Hellberg and Youchnow are liable for negligent infliction of emotional distress. However, this claim is fatally deficient because any negligence claim against an employer and its agents is barred by the New York Workers' Compensation Law. Moreover, even beyond the Workers' Compensation prohibition, Plaintiff fails to allege facts sufficient to support a claim for negligent infliction of emotional distress.

**A.      The Workers' Compensation Law Provides the Sole and Exclusive Remedy to Employees Injured By the Negligence of An Employer**

The Worker's Compensation Law is abundantly clear that "[t]he right to compensation or benefits under this chapter, ***shall be the exclusive remedy*** to an employee…when such employee is injured or killed by the ***negligence*** or wrong of another in the same employ." N.Y. Workers'

---

[1]      On a motion to dismiss, all facts listed in the Complaint are presumed true for purposes of the motion, and Defendants do so here solely for that purpose. The facts are therefore taken from the Complaint. Defendants reserve their right to challenge the allegations in the future.

Comp. L. § 29(6) (McKinney 2005) (emphasis added). *See, e.g., Miller v. Huntington Hospital*, 15 A.D.3d 548, 550 (2nd Dept. 2005) (holding employer's negligent exposure of an employee to a substantial risk of injury insufficient to circumvent the exclusivity of the Workers' Compensation Law); *Gerson v. Giorgio Sant'Angelo Collectibles, Inc.*, 176 Misc. 2d 388, 392 (N.Y. Sup. Ct. N.Y. Cty. 1998) (holding Workers' Compensation Law bars negligent infliction of emotional distress claim in sexual harassment action); *Souffrant et al., v. Quality Wholesale Veal Center, Inc.*, 135 A.D.2d 398 521 N.Y.S.2d 696, 697 (1st Dept. 1987) (recognizing plaintiff's negligence claims against employer were barred by Workers' Compensation Law); *Hayles v. Advanced Travel Management Corporation*, No. 01 Civ.10017 (BSJ) (DFE), 2004 WL 26548, at *14 (S.D.N.Y. Jan. 5, 2004) (holding "New York Workers' Compensation Law provides the exclusive remedy for injuries resulting from negligence in the workplace"); *Yaba v. Cadwalader, Wickersham & Taft*, 931 F. Supp. 271, 275 (S.D.N.Y. 1996) (holding "Workers' Compensation is the exclusive remedy of an employee who is injured by the negligence or wrong of another in the same employ").

Furthermore, courts have consistently held that claims for negligent infliction of emotional distress are among those negligence claims that are barred by the exclusivity provision. *See Gerson,* 176 Misc. 2d at 392; *Hayles,* 2004 WL 26548 at *14; *Arroyo v. Westlb Administration, Inc.*, 54 F. Supp. 2d 224, 232 (S.D.N.Y. 1999).

Moreover, "the workers' compensation exclusivity provision applies to those employers, **and their agents**, that exercise supervision and control over an employee." *Greene-Wotton v. Fiduciary Trust Company International,* 324 F. Supp. 2d 385, 392 (S.D.N.Y. 2003) (emphasis added). *See also Druiett v. Brenner*, 193 A.D.2d 644, 645 (2nd Dept. 1993) (holding plaintiff barred by Workers' Compensation Law from suing owner of premises for personal injury because owner was officer of company that employed plaintiff); *Hayles,* 2004 WL 26548, at *14 (holding claims would also be barred as against individual defendants because they were acting as agents of the employer).

In light of the above considerable precedent, Plaintiff's claim is barred. Plaintiff makes clear she is alleging a claim for negligent infliction of emotional distress arising out of sexual harassment that occurred at her workplace. Moreover, Plaintiff makes this claim against

Hellberg and Youchnow, whom she admits were officers and shareholders of her employer, Isogon. This is the exact situation the exclusivity provision of the Workers' Compensation Law was designed to address, and there could be no better or clearer example in which to invoke it. Therefore, Plaintiff's cause of action for negligent infliction of emotional distress should be dismissed outright as barred by the Workers' Compensation Law.

    B.    <u>Plaintiff Does Not Allege Facts Sufficient to Support a Claim of Negligent Infliction of Emotional Distress.</u>

Independently of the fatal defect of being barred by the Workers' Compensation Law, Plaintiff's Fourth Cause of Action also fails because Plaintiff has not alleged any special duty owed by Hellberg and Youchnow, and Plaintiff was not subjected to a threat of physical impact or injury.

    1.    *No Special Duty Was Owed to Plaintiff by Hellberg and Youchnow.*

Plaintiff's claim for negligent infliction of emotional distress fails because she did not allege a special duty owed to her by Hellberg and Youchnow. In New York, "recovery for negligent infliction of emotional distress is circumscribed to unique facts where a special duty is owed." *Kojak v. Jenkins*, No. 98 CIV. 4412 (RPP), 1999 WL 244098, at *9 (S.D.N.Y. April 26, 1999) (in a sexual harassment action, law firm employee failed to allege special duty owed by superior). "Absent such a special duty, a claim for negligent infliction of emotional distress can not stand." *Abdullajeva v. Club Quarters, Inc.*, No. 96 Civ. 0383, 1996 WL 497029, at *9 (S.D.N.Y. Sept. 3, 1996) (dismissing claims for negligent infliction of emotional distress in sexual harassment action).

Here, Plaintiff has alleged nothing to suggest any special duty owed by Hellberg and Youchnow to her. Instead, Plaintiff merely alleges Hellberg and Youchnow are shareholders of Isogon and knew or should have known of the alleged harassment. Clearly, like the employee in *Kojak* who brought a negligent infliction of emotional distress claim against her superior, Plaintiff "has not alleged any special duty owed to her by [Hellberg and Youchnow] other than the duty to obey the law." *Kojak*, 1999 WL 244098, at *9. Therefore, because she has failed entirely to allege a special duty, the cause of action should be dismissed.

2.    *Plaintiff Was Not Subjected To a Threat of Physical Impact or Injury.*

Yet another fatal defect in Plaintiff's claim is that she fails to allege she was subjected to a threat of physical impact or injury. In *Gerson*, 176 Misc. 2d 388, this honorable Court had an occasion to examine a claim for negligent infliction of emotional distress in the context of a sexual harassment action. In addition to holding the claim to be barred by the Workers' Compensation Law (*see* Section I.A., *supra*), Judge Miller held that the claim should also be dismissed because the plaintiff failed to allege any fear of physical injury. *Id.* at 391-92. The Judge noted:

> [T]he circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety.

*Id.* at 391.

Indeed, negligent infliction of emotional distress "is not well suited to deal with sexual harassment not involving physical contact or threat thereof." *Id.* The Court went on to state, "[T]he case history of this state has shown that short of sexual assault or battery, or threat thereof, there will be no cause of action for negligent infliction of emotional distress." *Id.* at 392.

Here, as in *Gerson*, Plaintiff alleges absolutely nothing in her Complaint to indicate any sort of physical contact occurred. Instead, her allegations of harassment consist solely of rambling e-mail messages from defendant Steven Barritz, which involved no touching whatsoever. Moreover, Plaintiff does not allege Hellberg and Youchnow participated in, encouraged, or even knew of any physical touching against her, or put her in fear of physical injury. To the contrary, Plaintiff simply alleges Hellberg and Youchnow knew of the alleged harassment and failed to remedy it. These facts, even if true, fall woefully short of the standard described in *Gerson*. Accordingly, as in *Gerson*, Plaintiff fails to adequately state a cause of action for negligent infliction of emotional distress.

**II.    Plaintiff's Unspecified Fifth Cause of Action Fails to State a Claim Against IBM and Isogon Corporation**

Plaintiff fails to identify in her Fifth Cause of Action a statutory or other basis for which she seeks relief from the Court.  Therefore, Defendants IBM and Isogon cannot determine the relief she seeks or the standards applicable to the cause of action, and the claim is insufficient as a matter of law.  CPLR § 3013 provides:

> Statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense.

N.Y. C.P.L.R. 3013 (McKinney 2005).

In pleading a cause of action, it is "essential...that the pleading enable the defendant to determine the nature of the plaintiff's grievances and the relief [she] seeks in consequence of the alleged wrongs." *Shapolsky v. Shapolsky*, 22 A.D.2d 91 (1st Dept. 1964).  *See also, Barocas v. Schweikart & Co.*, 63 Misc. 2d 131, 134, 311 N.Y.S.2d 445, 448 (N.Y. City Civ. Ct. 1970).

Here, Plaintiff gives no indication as to her statutory or other basis for relief.  Instead, her cause of action contains several conclusory statements regarding equal protection and what appears to be a hostile environment harassment claim.  Yet, Plaintiff inexplicably does not set forth any allegations that would allow the defendants to determine the law or laws upon which she seeks relief.  Considering local and federal laws may contain different applicable standards, defendants are unable to prepare a response or defense unless Plaintiff gives them notice of her basis for relief.  Her pleading fails to do so on its face and consequently, the defendants cannot determine the relief she seeks.  The stark brevity of Plaintiff's claim is a direct indication of its lack of substance.  Accordingly, the Fifth Cause of Action should be dismissed as a matter of law.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request judgment in favor of Defendants and dismissal with prejudice of the Fourth Cause of Action, as against Hellberg and

Youchnow, and the Fifth Cause of Action, as against IBM and Isogon, and any other relief the Court deems just and proper.

Dated: New York, New York
       February 7, 2006

                                        Respectfully submitted,

                                        GORDON & REES LLP

                                        By: _____
                                              Diane Krebs, Esq.
                                        Attorneys for Defendants
                                        IBM, Isogon Corporation, Per Hellberg and
                                        Steven Youchnow
                                        One Liberty Plaza
                                        23rd Floor
                                        New York, NY  10006
                                        (212) 201.6777

TO:    Gerald A. Bunting, Esq.
       Law Offices of Gerald A. Bunting
       Attorneys for Plaintiff
       114 Old Country Road
       Suite 616
       Mineola, NY  14623
       (516) 248.2366

       Joseph Ortego, Esq.
       Nixon Peabody LLP
       Attorneys for Defendants Robert Barritz and Steven Barritz
       990 Stewart Avenue
       Garden City, NY 11530

       Tetragon, LLC
       57 Ira Place
       Syosset, NY

       Mr. Peter Kassan
       330 Seventh Avenue
       New York, NY  10001

       Mr. David Vardi
       330 Seventh Avenue
       New York, NY  10001

# EXHIBIT "E"

03/28/2006   18:18   516-741-0912                                                    PAGE   03/03

- 2 -

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
--------------------------------------------------------x       Index No. 100071/2006
KATHRYN FJELD

                    Plaintiff,

        - against -                                              **STIPULATION**

INTERNATIONAL BUSINESS MACHINES, INC,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN,
PER HELBERG, DAVID VARDI
~~and STEVEN YOUCHNOW,~~

                    Defendants.
--------------------------------------------------------x

        IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned
parties, that the motion by defendants INTERNATIONAL BUSINESS MACHINES, INC,
d/b/a IBM, ISOGON CORPORATION, PER HELBERG and STEVEN YOUCHNOW
originally returnable on February 28, 2006, is hereby adjourned to May 31, 2006 and

        IT IS FURTHER STIPULATED AND AGREED that Plaintiffs Fourth Cause of
Action for negligent infliction of emotional distress is hereby withdrawn, with prejudice, as
against all defendants and

        IT IS FURTHER STIPULATED AND AGREED that Plaintiffs shall, by April
20, 2006, serve an amended complaint amending the Fifth Cause of Action to correct the
deficiencies noted in Defendants' motion to dismiss, originally returnable on February 28,
2006.

For Plaintiff Kathryn Fjeld
The Law Offices of Gerald Bunting
114 Old Country Road, Suite 616
Mineola, NY 11501

~~For Defendants~~ IBM, ISOGON CORP.
PER HELBERG and STEVEN YOUCHNOW
Gordon & Rees, LLP
One Liberty Plaza
23rd Floor
New York, NY 10006

G290925.1

**EXHIBIT "F"**

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:   JANE S. SOLOMON                              PART 55
_____
                        *Justice*

_Field, K_                              INDEX NO.        100071/06

                                        MOTION DATE      _____

        -v-                             MOTION SEQ. NO.  002

_International_                          MOTION CAL. NO.  _____
_____

The following papers numbered 1 to _____ were read on this motion to/for _____

                                                    **PAPERS NUMBERED**

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...    _____

Answering Affidavits — Exhibits _____

Replying Affidavits _____

**FILED**
MAY 11 2006
NEW YORK
COUNTY CLERK'S OFFICE

**Cross-Motion:**  ☐ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion made on consent with motion sequence 001 to which a copy of the complaint is attached, is also submitted on default, is granted and to the extent the fourth cause of action seeks relief at against Per Killing and Steven Gaudino, it is dismissed.

Moreover, the motion is granted on default also as to defendants [B?] Corporation & the complaint is dismissed as against them. With cost & disbursements. Plaintiff the clerk is directed to enter judgment accordingly leaving as claim against any priced deft →

Dated: _____                                    J.S.C.

**Check one:**  ☒ FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION

Only remaining deft is to which
relief is sought is Tetragon. Co Clerk file
on computer shows no prod of service.
If this in an error plaintiff can
perd reargument within 60 days of
entry hereof.

5/3/06

JANE S. SOLOMON

FILED

MAY 11 2006

NEW YORK
COUNTY CLERK'S OFFICE

**EXHIBIT "G"**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------x

KATHRYN FJELD,

                                    Plaintiff,

              -against-

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ, and
ROBERT BARRITZ,

                                    Defendants.
-------------------------------------------------------------x

To the above named Defendants:

Index No.,
Date filed:

07113309

Plaintiff designates New York
County as the place of trial.

**SUMMONS**

The basis of the venue is the principal
place of business of Defendants, 330
Seventh Ave., New York, NY.

        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's Attorneys within 20 days after the service of this summons, exclusive
of the day of service (or within 30 days after the service is complete if this summons is not
personally delivered to you within the State of New York); and in case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:        Lake Success, New York
              September 24, 2007

                            Yours' etc.,

                            BUNTING, GONER & ASSOCIATES P.C.
                            Attorneys for Plaintiff
                            1983 Marcus Avenue, Suite 117
                            Lake Success, New York 11042
                            (516) 358-8825

Defendants' Address:
IBM, 1133 Westchester Avenue, White Plains, New York
Isogon, 330 Seventh Avenue, New York County, New York
Tetragon, LLC, 57 Ira Place, Syosset, New York
Robert Barritz, 4 Skyview Court, Syosset, New York
Steven Barritz, 4 Skyview Court, Syosset, New York

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x
KATHRYN FJELD

       Plaintiff,

    - against -

INTERNATIONAL BUSINESS MACHINES, INC,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON L.L.C., STEVEN BARRITZ and,
ROBERT BARRITZ,

       Defendants.
-----------------------------------------------------------------x

Index No.


**VERIFIED COMPLAINT**

   Plaintiff KATHRYN FJELD, by her attorneys, BUNTING, GONER & ASSOCIATES P.C.,

complaining of the defendants, respectfully alleges, upon information and belief, as follows:

   **The Parties**:

   1.  That at all times herein mentioned plaintiff KATHRYN FJELD, ("Plaintiff" or "Fjeld"), was and

still is an individual domiciled in the State of New Jersey.

   2.  That at all times herein mentioned, and upon information and belief, defendant

INTERNATIONAL BUSINESS MACHINES, INC. d/b/a IBM, (hereinafter "IBM"), was and still is a corporation

or other business entity organized and existing under the laws of the State of New York with a principal place of

business at 1133 Westchester Avenue, White Plains, New York.  Upon information and belief, IBM is the successor

in interest to defendant ISOGON CORPORATION.

   3.  That at all times herein mentioned, and upon information and belief, defendant ISOGON

CORPORATION, (hereinafter "Isogon"), was and still is a corporation or other business entity organized and

existing under the laws of the State of New York and with a principal place of business at 330 Seventh Avenue,

New York, NY 10001.

   4.  Upon information and belief, defendant Isogon, a privately-held corporation, was acquired by

defendant IBM and has ceased to have an independent corporate identity.

   5.  That at all times herein mentioned, and upon information and belief, defendant TETRAGON,

L.L.C., (hereinafter "Tetragon"), was and still is a limited liability company or other business entity organized and

existing under the laws of the State of New York and with a principal place of business at 57 Ira Place, Syosset, New York. Upon information and belief, Tetragon is a successor in interest to defendant Isogon.

6.      That at all times herein mentioned, and upon information and belief, defendant ROBERT BARRITZ, was the President and majority shareholder of Isogon. Defendant Robert Barritz has a business address located at 330 Seventh Avenue, New York, NY 10001.

7.      That at all times herein mentioned, and upon information and belief, defendant STEVEN BARRITZ, was the son of defendant ROBERT BARRITZ. Defendant Steven Barritz has a business address located at 330 Seventh Avenue, New York, NY 10001.

8.      That at all times herein mentioned, and upon information and belief, defendants PETER KASSAN ("Kasan"), PER HELBERG ("Helberg"), DAVID VARDI, ("Vardi") and STEVEN YOUCHNOW ("Youchnow"), together with defendant Robert Barritz were the sole shareholders of defendant ISOGON. Upon information and belief, defendants Kasan, Helberg, Vardi, Youchnow and Robert Barritz remain personally liable for all or some of the obligations and claims of Isogon which accrued prior to the sale of Isogon to defendant IBM.


**FACTS COMMON TO ALL CAUSES OF ACTION:**

9.      Plaintiff Kathryn Fjeld was employed by defendant Isogon as a Product Manager. Plaintiff began work at Isogon in April, 1996 and was employed there continuously until April, 2005. Plaintiff is a member of a protected class - female.

10.      Upon information and belief defendant Steven Barritz was employed by defendant Isogon as a marketing manager from 1998 to the present.

11.      Plaintiff's responsibilities at Isogon as Product Manager required almost daily contact with defendant Steven Barritz, a marketing manager. As the only son of Isogon's principal shareholder and President, defendant Steven Barritz was in a position of corporate authority.

12.      During the course of her employment with Defendant Isogon, plaintiff was subjected to a hostile, offensive and discriminatory work environment. The environment plaintiff endured involved conduct by the marketing manager Steven Barritz, which included but was not limited to the following: unwanted sexual advances; threatening e-mails; sexually-charged suggestions and questions; and photographs of plaintiff digitally mutilated by

defendant Steven Barritz and then e-mailed to plaintiff.

13.    Having worked with defendant Steven Barritz since 1998 plaintiff and her husband developed a limited friendship with defendant Steven Barritz.

14.    Upon information and belief, defendant Steven Barritz suffers from numerous behavioral and mental maladies. These aforementioned behavioral and mental maladies were known to defendant Isogon and defendant Robert Barritz. Notwithstanding the foregoing, defendants Isogon and Robert Barritz took no steps to protect plaintiff from the offensive conduct of defendant Steven Barritz. Moreover, acting at the specific request of Defendant Steven Barritz, Robert Barritz routinely assigned his son to work on projects to which plaintiff was already assigned so that defendant Steven Barritz could have more access to plaintiff.

15.    In the year 2004 defendant Steven Barritz began to make sexual advances towards plaintiff. Defendant Steven Barritz also demanded that plaintiff enter into a sexual relationship with him. These advances were rejected by plaintiff.

16.    Knowing that defendant Steven Barritz was the only son of the President and majority shareholder of Isogon, plaintiff feared retaliation for rejecting these advances and attempted to retain a limited friendship with defendant Steven Barritz.

17.    Notwithstanding plaintiff's efforts to retain a professional working relationship, defendant Steven Barritz instead began to make obscene, sexually-loaded and suggestive comments to plaintiff both orally and via e-mail during the course of each work-day at Isogon.

18.    On Wednesday, February 4, 2004, while at the Isogon offices, defendant Steven Barritz sent plaintiff a crude message: "I shall not be going to any sales kickoff related activities. Fuc- them. That's what I say. Fuc- them with a 12 inch dildo. s"

19.    The increasingly demeaning messages from defendant Steven Barritz made it difficult for plaintiff to perform her duties as Product Manager. On Friday, March 19, 2004, increasingly angered by plaintiff's rejections of his advances, defendant Steven Barritz sent an e-mail using the Isogon network containing the following:"See, this is the type of thing you, if you were in a better universe, would be doing: writing scripts like my pal Zack over here. In that universe, in that alternate reality, you are, right now, writing a script. I suppose there's also another alternate reality where you're a baby elephant. *Kathryn the baby elephant.* Here, you have a sister

elephant, who constantly pushes at your trunk. Eventually, you're attacked and eaten by a pride of hungry lions, all republicans. *Kathryn the nail polish remover.* Guaranteed to remove every last speck of nail polish with a perfectionist's tendency. And a billion more Kathryns littering the landscape. They're out there somewhere. I can feel them. Their cosmic vibrations tickle my fingertips as I type these words. I'd like to collect all these Kathryns up, and put them in a traveling freakshow called *Freaky Kathryn Freakfest Extravaganza.* I'd have the Kathryns compete against each -- primarily mud wrestling. Kathryn the chewing gum wrapper vs. Kathryn the nail clippings (having been formed by *Kathryn the anxiety ridden teeth*). The clippings would tear the wrapper to pieces. At the end of the day, I'd take all the Kathryns, put them in a giant barrel, and roll them down a hill. That would be fun. The barrel crashes into a tree and explodes apart, a zillion Kathryns flying every which way. A montage of Kathryns flying through the air, with terror striken faces. What fun! All the Kathryns would live together in one giant nunnery, with a single *Kathryn Mother Superior* to lord over them. She'd smoke, but she'd never use an ashtray. The Kathryns would hold their hands out for Mother Superior to ash in. They'd all be her bitches. sb [Steven Barritz]"

20.     As Product Manager, plaintiff was required to work with defendant Steven Barritz, a situation increasingly made difficult by his sexual advances and the barrage of vulgar, sexually-suggestive e-mails. For example, on May 18, 2004, defendant Steven Barritz sent the following e-mail using the Isogon network: " **Subject:** You didn't notice   ...but I slinked under your desk and fell asleep by your feet. The smell of your feet reminds me of the smell inside my mother's womb: moist & stinky, a bit like rotting leaves. You wiggle your toes often. Did you know that? Or do those piggies have minds of their own? Sometimes one of them wriggles, while the others sleep. Other times all of them are awake. I've named them. I've given them all silly names, like Mopsy and Flopsy. I'm not that creative. I'm only a little kitty kat, after all. sb"

21.     On Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff an e-mail which stated, inter alia, the following: "Do I need TRAINING? (Emphasis in the original). I'm laughing as I write this. I'm just playing at being angry. Or maybe I'm being passive aggressive. I say I'm playing angry, but, maybe I really am angry, and therefore am playing at playing at being angry. (Maybe I'm on the rag.) Whatever happened to that little Linux penguin that used to sit on your desk? What, wasn't he good enough to sit on your desk any longer? You're cold blooded, that's what you are. To kick a poor little defenseless penguin out onto the street! Into the cold!!!

How can you be so cruel?  Exclamation point!  Well, Francis Farmer Will Have Her Revenge on Kathryn.  That's

what I say.  ***Don't tell me I didn't warn you***.  And while we're on the subject, just why are you so damn frisky all

the time?  I mean, really."  (Emphasis supplied)

22.     Later on Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff another e-mail

message which stated a bizarre threat: "Deadly Nightshade.  One leaf.  Approximately midnight."

23.     The next day plaintiff received from defendant Steven Barritz the following  e-mail message at

work: "I ate a leaf of Deadly Nightshade last night, which is a non-lethal dose.  This is evident, since I'm still alive.

In fact, I read on a science site, that no dose is lethal (despite the claims you'll find elsewhere on the net).  Eating

large quantities will just make you sick.  I did all this research before eating the leaf.  But, just in case I was wrong,

and I died, and people were wondering why, you'd have a clue with the e-mail I sent you last night.  Better to play it

safe, that's my motto."

24.     On October 12, 2004, defendant Steven Barritz sent an e-mail message containing crude sexual

innuendo:  "It took me a half an hour to get out of bed this morning.  I used the lightbox this morning, while I had

my morning breakfast of Special K with bananas, Dexedrine, and Zoloft.  I have decided I have to start using it

every morning, that the Seasonal Affective Disorder is kicking in, which is the only reason I can think of to explain

the funk I've been in as of late.  I know the light bothers your eyes, but, I think you might benefit from using the one

you have in your office.  Are you combing your cats, every other day, like you said you were going to?  I added

commas to the last sentence to please you.  ***Did they give you syntax pleasure?  Go ahead, have yourself an after***

***syntax cigarette.  Look at the word 'syntax'.  Say it aloud.  Let it roll back and forth on your tongue, as if you had a***

***marble in your mouth.  I've decided what area of business I'd like to pursue.  Tonight, I'm going to have dinner***

***with my parents, and tell them about my desire to go into the gay porn industry.  I'd like to hire Phil for my first***

***film.  Phil would be giving a demo, and I'd be playing the client, and I'd be sitting there, watching him, and I'd***

***start wiping the sweat off my brow, loosening my tie, etc.  You can probably fill in the rest.*** "  (emphasis supplied)

25.     Because defendant Steven Barritz had made it clear that he could cause plaintiff to lose her job,

plaintiff was compelled to endure a continuous barrage of weird, perverse and sexually-humiliating advances and e-

mails at the Isogon facilities.  On Monday, September 6, 2004, defendant Steven Barritz wrote and asked if plaintiff

would wear a "Pussy Wagon" t-shirt to a gynecologist's office.

26.    Plaintiff attempted to reason with defendant Steven Barritz so as to preserve a working relationship and to avoid his becoming more unstable and causing him to have her terminated.  On Wednesday September 15, 2005 defendant Steven Barritz wrote:

"Is it possible to sprain one's tush? Last night, when I was rollerblading, I think I sprained my left cheek. I thought you'd find that amusing. Because all that, my left cheek has been nagging for my attention. I wish my left cheek was lower maintenance. s [Steven Barritz]"

27.    On November 5,2004 defendant Steven Barritz wrote plaintiff an e-mail which concluded with his disturbing opinion about the Mel Gibson film "Passion of the Christ": **"PS Have you seen the Passion?  It's great fun!  You have to fast forward past the boring non-violent parts, of course.  My favorite part is this one time they tear a huge chunk of flesh off near his rib cage.  I almost came in my pants when they did that."** [Emphasis supplied]

28.    Despite all the efforts of plaintiff to resist defendant Steven Barritz's advances in a diplomatic fashion and to ignore his entreaties, he still persisted in sexual overtures. On Tuesday, November 12, 2004, angry that plaintiff had ignored his advances, Steven Barritz wrote:  **" Let's just say, I expect a phone call from you sometime this month.** I also ask one other thing of you.  That you let me know if you want to go to the dance thing on the 20th.  **Those are the two things I expect from you right now.  I want a whole lot more, but, I'm trying to control myself,** chill out, and re-direct this energy towards other parts of my life; I think this is healthy for me, and I think you'd agree. I know that we have a bit of a dysfunctional relationship, which is pretty much all my fault, but, I want to work to make our friendship as healthy as it can be. I don't want you feeling guilty about not calling or emailing me. I know you're busy and that you're a loner and that you're mentally overwhelmed; I understand you more than you think. I want to be a positive aspect in your life, not a drain; that is why I'm letting the phone call and email thing slide. That's all for now.  I hope you are having a modestly okay day. I voted this morning. The pain in my arm is lesser than it has been. I'm feeling good, and in high spirits. Oh, wait, there's something else I want from you: if you're not going to use the bright light thing in your office, I'd like it back. Please let me know. So, there are three SB requests. There, now I'll stop writing, cuz, I mean, I really should do some work." (Emphasis supplied)

29.    In his various e-mails defendant Steven Barritz made it clear that he had control over plaintiff's employment at Isogon. In a rambling message sent Tuesday, November 23, 2005, he wrote in part: " Maybe the reason you haven't called me about this, is because you don't want to be better friends with me. That's okay, I mean, you're certainly allowed to not be friends with me. It's not as if it would be comfortable for you to come right out and say it, so, if this is the way you feel, which is fine, then, I should make it easy for you. I guess I'll just say, if you want to be friends with me, you know where to find me. I'm not mad at you, if this is the case, you must understand that. And friends or not, **I'll still make sure you are treated right by Isogon**, you don't have to worry about that. I still hope that we can have a working relationship. Though, I'm not quite sure if I can take assignments from you. I am having my job radically restructured -- this is confidential, btw. I suppose it's still possible, but we'd have to talk. A week of doing QA is not possible for me at all. Anyway, it sounds like it's Dmitri's fault, not yours, so, don't worry about it. It may be that you simply can't be friends with me at this point in your life. That's okay too. Like I said, you know where to find me. I'm kewl with it. You'll see. Steven" (emphasis supplied)

30.    This message was sent to plaintiff about the same time that defendant Steven Barritz sent plaintiff a photograph of herself that defendant had mutilated using Photoshop software.   This document was created by defendant Steven Barritz under the file name "K Face Distort 2.jpg" and is reproduced herein below:

K Face Distort 2.jpg



31.    On November 24, 2004, defendant Steven Barritz sent plaintiff an e-mail stating: "Is it healthy to have a friendship when I'm so enamored of you? My therapist says not to see you no more. She says you're like a disease without any cure. She said I'm so obsessed I'm becoming a bore, oh no. You think you're so pretty. (Well, I think you are, but you see what a little Photoshop can do.) I think my unreasoning love or attachment has caused

me to behave foolishly." Along with the November 24, 2004 e-mail message was an attached digital file which

contained a another photograph of the plaintiff which had been defaced by defendant Steven Barritz using

Photoshop software. At the end of the November 24, 2004 e-mail message was the following: " **PPS I think you**

**should watch more porn.**" (Emphasis in the original)

32.    Plaintiff continued to ask defendant Steven Barritz to stop e-mailing her. In response to the

message detailed in paragraph "31" above, plaintiff responded via e-mail: "please do not write things like this to

me." Instead, defendant Steven Barritz increased the volume of offensive e-mails and in private conversations at

Isogon's offices threatened to have her terminated from her job if she did not agree to spend more time with him.

On December 1, 2004, defendant Steven Barritz refused to stop sending e-mails and instead wrote " Emailing you is

fun! / It's like push-ups. How many can I do?  s "

33.    Plaintiff was unable to bear the continued harassment and informed defendant Steven Barritz that

she would be making a formal complaint to Isogon management. In response, on February 20, 2005 defendant

Barritz sent plaintiff an e-mail with a 90 page attachment. It was the exit strategies manual for soon-to-be

terminated Isogon executives: **"From:** Steve Barritz / **Sent:** Sunday, February 20, 2005 12:04 PM / **To:** Kathryn

Fjeld / **Subject:** FW: the black book BP Exec Manual (for one on one).DOC " Executive Career Transition

Counseling"" The threat was clear. If she complained about his advances then defendant Steven Barritz would use

his access to his father to have her terminated.

34.    The sexually discriminatory acts and environment described in this complaint were otherwise

known to defendant Isogon and defendant Robert Barritz, Kassan, Helberg, Vardi and Youchnow in mid-2004

through mid-2005 .

35.    The defendants treated similarly situated male employees more favorably in that they did not

subject them to this discriminatory and offensive behavior.

36.    On or about February, 2005, plaintiff made a complaint to Isogon's Chief Financial Officer

regarding the increasingly threatening conduct of defendant Steven Barritz..

37.    Notwithstanding plaintiff's complaints about the sexually discriminatory and demeaning acts and

environment described herein above, defendants Robert Barritz and Isogon took no appropriate remedial action.

38.     Defendants Isogon and Robert Barritz were aware of the sexual harassment and discrimination, but failed and/or refused to stop it or otherwise take appropriate remedial action, thereby subjecting plaintiff to continued, on-going and more severe harassment.

39.     Shortly thereafter, defendant Steven Barritz made an explicit verbal threat to plaintiff that he would have Isogon retaliate against plaintiff for having complained about his conduct.

40.     Upon information and belief, the primary harasser, defendant Steven Barritz, continues to be employed by defendant Isogon.

41.     In spite of plaintiff's complaints about defendant Steven Barritz's increasingly hostile and discriminatory acts, the defendants Robert Barritz and Isogon went out of their way to make plaintiff's job more difficult. Ultimately, Defendant Isogon, through defendant Robert Barritz, terminated plaintiff in retaliation for having complained about the conduct of defendant Steven Barritz.

42.     It was as a direct and proximate result of plaintiff's opposition to the sexual harassment and sexual discrimination that caused plaintiff to be terminated by defendants Robert Barritz and Isogon.

43.     All of the foregoing conduct was offensive to plaintiff and would be offensive to a reasonable person.

44.     Defendants created and perpetuated a work environment that was so offensive and severe that no reasonable person could expect to endure it.

45.     As a direct and proximate result of the foregoing conduct, plaintiff suffered embarrassment, humiliation, emotional distress and other forms of damage. These damages are of an on-going and continuous nature.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ, INDIVIDUALLY

46.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" inclusive as if more fully set forth herein.

47.     Defendant Steven Barritz treated plaintiff differently and less favorably than similarly situated male employees.

48.     That this treatment as stated herein in the "facts common to all causes of action" constitutes extreme and outrageous conduct on the part of the Defendants.

48.     Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Steven Barritz sexually harassed her and deprived plaintiff of her constitutional right to equal protection under the law.

49.     Defendant Steven Barritz intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

50.     At all relevant times, defendant Steven Barritz acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ, INDIVIDUALLY**

51.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" and "forty-seven" through "fifty" inclusive as if more fully set forth herein.

52.     Defendant Steven Barritz intentionally sent vulgar and sexually threatening e-mails to plaintiff in a deliberate effort to inflict emotional harm on plaintiff and to interfere with the course of her employment.

53.     That this treatment as stated herein in the "facts common to all causes of action" constitutes extreme and outrageous conduct on the part of the Defendants.

53.     As a result of the foregoing, defendant Steven Barritz intentionally caused and inflicted emotional distress upon plaintiff.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, INDIVIDUALLY**

54.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five"

and "forty-seven" through "fifty" and "fifty-two" through "fifty-three" inclusive as if more fully set forth herein.

54.    Defendant Robert Barritz treated plaintiff differently and less favorably than similarly situated male employees. Defendant Robert Barritz knew or should have known that his son and employee was engaging in inappropriate and harmful conduct towards plaintiff. Defendant Robert Barritz knew or should have known that this conduct was harmful to plaintiff and that similarly situated male employees of Isogon were not subject to such conduct. That this treatment as stated herein in the "facts common to all causes of action" constitutes extreme and outrageous conduct on the part of the Defendants.

56.    Through the actions, policies, employment practices and conduct directed at plaintiff, and by causing plaintiff to be terminated in April 2005 in retaliation for her complaints regarding the conduct of Steven Barritz, defendant Robert Barritz deprived plaintiff of her constitutional right to equal protection under the law.

57.    Defendant Robert Barritz intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

58.    At all relevant times, defendant Robert Barritz acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, KASAN, HELBERG, VARDI AND YOUCHNOW, INDIVIDUALLY

59.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" and "forty-seven" through "fifty"; "fifty-two" through "fifty-three"; and "fifty-five" through "fifty-eight" inclusive as if more fully set forth herein.

60.    The fourth cause of action is intentionally deleted.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS IBM, ISOGON, AND TETRAGON

61.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five"; "forty-seven" through "fifty"; "fifty-two" through "fifty-three"; "Fifty-five" through "fifty-eight" and ""sixty"

through "sixty-one" inclusive as if more fully set forth herein.

62.    Defendant Isogon, and thereby its successors in interest IBM and Tetragon, treated plaintiff differently and less favorably than similarly situated male employees. Defendant Isogon knew or should have known that its employee was engaging in inappropriate and harmful conduct towards plaintiff. Defendant Isogon, through its shareholders, officers and employees knew or should have known that this conduct was harmful to plaintiff and that similarly situated male employees of Isogon were not subject to such conduct.

63.    Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Isogon permitted the existence of a hostile work environment by which defendant Steven Barritz was permitted to sexually harass plaintiff and deprive plaintiff of her constitutional right to equal protection under the law.

64.    Although informed of the aforementioned conduct the Defendant's allowed this behavior to continue in contravention of public policy as stated in the applicable state and federal statutes protecting the rights of employees.

65.    The Defendant allowed this hostile work environment and furthermore acknowledged and condone this behavior by allow it to continue and by discharge the Plaintiff in a retaliatory nature due to the relationship of the Defendants.

66.    Defendant Isogon intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law, to not be subjected to a hostile work environment and to be able to report illegal and tortuous acts perpetrated upon her without being discharged in retaliation.

67.    At all relevant times, defendant Isogon acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection, to not be subjected to a hostile work environment and to be able to report illegal and tortuous acts perpetrated upon her without being discharged in retaliation, under the law.

**WHEREFORE,**

On the First Cause of Action against defendant Steven Barritz, plaintiff demands judgment in the

amount of Ten Million Dollars, and

On the Second Cause of Action against defendant Steven Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Third Cause of Action against defendant Robert Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Fifth Cause of Action against defendants IBM, Isogon and Tetragon, plaintiff demands judgment in the amount of Ten Million Dollars, and together with attorneys fees, the costs and disbursements of this action and with such further relief as to the Court seems just, equitable and proper.

Dated:   Lake Success, New York
         September 24, 2007

Yours, etc.,

_____

BUNTING, GONER & ASSOCIATES P.C.
Attorneys for the Plaintiff
1983 Marcus Avenue, Suite 117
Lake Success, NY 11042
(516) 358 - 8825

## ATTORNEY'S VERIFICATION

Robert D. Goner, an attorney duly admitted to practice before the courts of the State of New York, affirms the following pursuant to CPLR Section 2106:

That I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

The reason this verification is not made by the plaintiff is because plaintiff does not reside within New York County, where your affirmant maintains his office. That the source of your affirmant's knowledge is based upon communications with plaintiff as well as a review of the case file and documents provided by the plaintiff.

Dated:      Nassau, New York
            September 24, 2007

                                        _____
                                            Robert D. Goner

EXHIBIT "H"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x     Civil Action No.
KATHRYN FJELD,

                           Plaintiff,          **NOTICE OF REMOVAL**

        -against-

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ, and
ROBERT BARRITZ,

                           Defendants.
-------------------------------------------------------x

        PLEASE TAKE NOTICE that INTERNATIONAL BUSINESS MACHINES, INC., d/b/a

IBM, and ISOGON CORPORATION are defendants in a civil action filed on October 3, 2007 in

the Supreme Court of the State of New York, New York County  (Index No. 07-113309).

Pursuant to 28 United States Code, Sections 1441(b) and 1446, and with the consent of all co-

defendants still in existence,[1] Defendants INTERNATIONAL BUSINESS MACHINES, INC.,

d/b/a IBM, and ISOGON CORPORATION remove this action to the United States District Court

for the Southern District of New York, which is the judicial district in which the action is pending.

Dated:     New York, New York
           November 15, 2007

                              GORDON & REES, LLP

                              BY: _____
                                  Diane Krebs, Esq.
                                  *Attorneys for Defendants International Business*
                                  *Machines, Inc., d/b/a IBM, and Isogon Corporation*
                                  90 Broad Street
                                  23rd Floor
                                  New York, NY 10004
                                  (212) 269-5500

---

[1]      Upon information and belief, defendant Tetragon, LLC no longer exists and has not been served
in the underlying state court action.  Prior attempts to serve papers on Tetragon, LLC at the address
identified in the state court complaint have failed; they have been returned as undeliverable.

1

TO:    Robert D. Goner, Esq.
BUNTING, GONER & ASSOCIATES P.C.
*Attorneys for Plaintiff*
1983 Marcus Avenue, Suite 117
Lake Success, New York 11042
(516) 358-8825

Joseph J. Ortego, Esq.
Thomas M. Mealiffe, Esq.
NIXON PEABODY LLP
*Attorneys for Defendants*
*Steven Barritz and Robert Barritz*
50 Jericho Quadrangle
Jericho, New York 11753
(516) 832-7500

Tetragon, LLC
57 Ira Place
Syosset, NY

Clerk Of The Court
SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
60 Centre Street, Room 161
New York, New York 10007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x    Civil Action No.
KATHRYN FJELD,

                     Plaintiff,

    -against-

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a  IBM,  ISOGON  CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ, and
ROBERT BARRITZ,

                     Defendants.
-------------------------------------------------------------x

**STATEMENT IN SUPPORT
OF REMOVAL**

      Defendants INTERNATIONAL BUSINESS MACHINES, INC., d/b/a IBM, and ISOGON CORPORATION ("Defendants") in this civil action, have filed a notice of removal because this is a matter over which it appears Plaintiff is attempting to assert that the United States District Courts have original jurisdiction, pursuant to 28 USC § 1331.  This action was commenced by Plaintiff in the Supreme Court of the State of New York, New York County (Index No. 07-113309) on October 3, 2007.  A copy of the Summons and Complaint in this action is attached hereto.

      Removal appears to be proper because this is a civil action over which Plaintiff is attempting to assert a cause of action arising under the Constitution, laws, or treaties of the United States within the meaning of 28 U.S.C. § 1331.  In particular, Plaintiff alleges in the Fifth Cause of Action, which is the only cause of action brought against Defendants, that one of the individual defendants "was permitted to sexually harass plaintiff and deprive plaintiff of her constitutional right to equal protection under the law."  Complaint ¶ 63.  She further alleges that Defendants' conduct in allowing this to continue was "in contravention of public policy as stated in the applicable state *and federal* statutes protecting the rights of employees."

Complaint ¶ 64 (emphasis added). Finally, Plaintiff alleges Defendant Isogon acted "under color of state law." Complaint ¶ 67. Therefore, although Plaintiff has not specified under which federal statute(s) she is bringing her claim, this case appears to satisfy the standards of 28 U.S.C. § 1331 and removal accordingly is proper pursuant to 28 U.S.C. § 1441(b). In addition, Defendants have obtained the consent of all co-defendants still in existence.[1]

This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), because Plaintiff's initial pleadings were served on or about October 26, 2007. This Notice of Removal is filed within 30 days of receipt of Plaintiff's summons and complaint. A copy of this summons and complaint is attached to, and incorporated into, this Notice of Removal. Also attached to this Notice are the Request for Judicial Intervention, notice of motion, attorney affirmation with exhibits, and memorandum of law related to the November 7, 2007 motion of co-defendants Robert Barritz and Steven Barritz to dismiss the state court complaint, which, together with the summons and complaint, are all of the process, pleadings and orders served on Defendant prior to its removal of this action.

Dated:     New York, New York
           November 15, 2007

GORDON & REES, LLP

BY: _____
    Diane Krebs, Esq.
    *Attorneys for Defendants International Business*
    *Machines, Inc., d/b/a IBM, and Isogon Corporation*
    90 Broad Street
    23rd Floor
    New York, NY 10004
    (212) 269-5500

---

[1]      Upon information and belief, defendant Tetragon, LLC no longer exists and has not been served in the underlying state court action. Prior attempts to serve papers on Tetragon, LLC at the address identified in the state court complaint have failed; they have been returned as undeliverable.