UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN FJELD,

Plaintiff,

- against -

07 Civ. 10355 (CM/HBP)

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ,

**NOTICE OF AMENDED
MOTION TO DISMISS OR,
IN THE ALTERNATIVE,
FOR A MORE DEFINITE
STATEMENT**

Defendants.

**PLEASE TAKE NOTICE**, that upon the annexed Declaration of Thomas M. Mealiffe, dated November 29, 2007, the accompanying Memorandum of Law, and the exhibits annexed thereto, and upon all prior pleadings and proceedings herein, the undersigned will move this court, before the Honorable Colleen McMahon, at the courthouse located at 500 Pearl Street, New York, New York 10007 at a time to be determined by the Court for an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(e) and New York Civil Procedure Law and Rules §§ 205 and 215, granting the motion of Defendants Robert Barritz and Steven Barritz (1) dismissing plaintiff's Second Cause of Action with prejudice; (2) dismissing plaintiff's First and Third Causes of Action without leave to amend, or (3) in the alternative, directing plaintiff to provide a more definite statement with regard to the First and Third Causes of Action.

Dated: Jericho, New York
      November 29, 2007

NIXON PEABODY LLP


By: _____
Joseph J. Ortego (JO 3859)
Thomas M. Mealiffe (TM 7369)
*Attorneys for Defendants*
*Steven Barritz and Robert Barritz*
50 Jericho Quadrangle
Jericho, New York 11753
(516) 832-7500

TO:    Gerald A. Bunting, Esq.
       Bunting, Goner & Associates PC
       1983 Marcus Avenue, Suite 117
       Lake Success, NY 11042
       (516) 358-8825

       Diane Krebs, Esq.
       Gordon & Rees LLP
       Attorneys for Defendants
       IBM, Isogon Corporation
       90 Broad Street, 23rd Floor
       New York, NY 10004
       (212) 239-5500

       Tetragon, LLC
       57 Ira Place
       Syosset, New York 11791

10819845.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN FJELD,

                                                    Plaintiff,        07 Civ. 10355 (CM/HBP)

                        - against -

                                                                     **DECLARATION OF
                                                                     THOMAS M. MEALIFFE
                                                                     IN SUPPORT OF
INTERNATIONAL BUSINESS MACHINES, INC.,                               AMENDED MOTION TO
d/b/a IBM, ISOGON CORPORATION,                                       DISMISS, OR, IN THE
TETRAGON, L.L.C., STEVEN BARRITZ,                                    ALTERNATIVE, A MORE
ROBERT BARRITZ,                                                      DEFINITE STATEMENT**

                                                    Defendants.

Thomas M. Mealiffe, an attorney duly admitted to practice before the Courts of the State

of New York, hereby declares the following under penalty of perjury:

1.      I am an associate with the law firm of Nixon Peabody LLP, attorneys for defendants

Steven Barritz and Robert Barritz (collectively referred to herein as "Defendants").

2.      This declaration is respectfully submitted in support of Defendants' Amended

Motion to Dismiss the First, Second, and Third Causes of Action as alleged against Defendants in

plaintiff's Verified Complaint.

3.      Annexed hereto as Exhibit "A" is true and correct copy of plaintiff's Verified

Complaint filed on or about September 24, 2007.

4.      Annexed hereto as Exhibit "B" is a true and correct copy the prior complaint filed by

plaintiff naming Defendants, dated January 4, 2006.

5.    Annexed hereto as Exhibit "C" is a true and correct copy of Defendants' Motion to Dismiss filed in the Supreme Court of the State of New York, New York County, on or about February 7, 2006.

6.    Annexed hereto as Exhibit "D" is a true and correct copy of co-defendants IBM and Isogon's Motion to Dismiss filed in the Supreme Court of the State of New York, New York County, on or about February 9, 2006.

7.    Annexed hereto as Exhibit "E" is a true and correct copy of a Stipulation entered into by plaintiff and Defendants on or about March 23, 2006.

8.    Annexed hereto as Exhibit "F" is a true and correct copy of the May 11, 2006 Order dismissing plaintiff's January 2006 Complaint.

9.    Annexed hereto as Exhibit "G" is a true and correct copy of Defendants' Motion to Dismiss plaintiff's September 2007 Complaint filed in the Supreme Court of the State of New York, New York County on or about November 7, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 29, 2007

_____
Thomas M. Mealiffe

TO:   Gerald A. Bunting, Esq.
Bunting, Goner & Associates PC
1983 Marcus Avenue, Suite 117
Lake Success, NY 11042
(516) 358-8825

Diane Krebs, Esq.
Gordon & Rees LLP
Attorneys for Defendants
IBM, Isogon Corporation
90 Broad Street, 23rd Floor
New York, NY 10004
(212) 239-5500

Tetragon, LLC
57 Ira Place
Syosset, New York 11791

Kathryn Fjeld

v.

**INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ,**

**07 Civ. 10355 (CM/HBP)**

**Exhibit "A"**

**Verified Complaint**


SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x        Index No.
KATHRYN FIELD

Plaintiff,

- against -                                    **VERIFIED COMPLAINT**

INTERNATIONAL BUSINESS MACHINES, INC,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON L.L.C., STEVEN BARRITZ and,
ROBERT BARRITZ,

Defendants
------------------------------------------------------------x

Plaintiff KATHRYN FIELD, by her attorneys, HUNTING, GONER & ASSOCIATES P.C.,

complaining of the defendants, respectfully alleges, upon information and belief, as follows:

**The Parties:**

1.      That at all times herein mentioned plaintiff KATHRYN FIELD, ("Plaintiff" or "Fjeld"), was and

still is an individual domiciled in the State of New Jersey.

2.      That at all times herein mentioned, and upon information and belief, defendant

INTERNATIONAL BUSINESS MACHINES, INC d/b/a IBM, (hereinafter "IBM"), was and still is a corporation

or other business entity organized and existing under the laws of the State of New York with a principal place of

business at 1133 Westchester Avenue, White Plains, New York. Upon information and belief, IBM is the successor

in interest to defendant ISOGON CORPORATION.

3.      That at all times herein mentioned, and upon information and belief, defendant ISOGON

CORPORATION, (hereinafter "Isogon"), was and still is a corporation or other business entity organized and

existing under the laws of the State of New York and with a principal place of business at 330 Seventh Avenue,

New York, NY 10001.

4       Upon information and belief, defendant Isogen, a privately-held corporation, was acquired by

defendant IBM and has ceased to have an independent corporate identity.

5.      That at all times herein mentioned, and upon information and belief, defendant TETRAGON,

L.L.C., (hereinafter "Tetragon"), was and still is a limited liability company or other business entity organized and

existing under the laws of the State of New York and with a principal place of business at 57 Ira Place, Syosset, New York.  Upon information and belief, Tetragon is a successor in interest to defendant Isogon.

6.      That at all times herein mentioned, and upon information and belief, defendant ROBERT BARRITZ, was the President and majority shareholder of Isogon.  Defendant Robert Barritz has a business address located at 330 Seventh Avenue, New York, NY 10001.

7      That at all times herein mentioned, and upon information and belief, defendant STEVEN BARRITZ, was the son of defendant ROBERT BARRITZ.  Defendant Steven Barritz has a business address located at 330 Seventh Avenue, New York, NY 10001.

8.      That at all times herein mentioned, and upon information and belief, defendants PETER KASSAN ("Kassan"), PER HELBERG ("Helberg"), DAVID VARDI, ("Vardi") and STEVEN YOUCHNOW ("Youchnow"), together with defendant Robert Barritz were the sole shareholders of defendant ISOGON.  Upon information and belief, defendants Kassan, Helberg, Vardi, Youchnow and Robert Barritz remain personally liable for all or some of the obligations and claims of Isogon which accrued prior to the sale of Isogon to defendant IBM.


**FACTS COMMON TO ALL CAUSES OF ACTION:**

9.      Plaintiff Kathryn Fjeld  was employed by defendant Isogon as a Product Manager.  Plaintiff began work at Isogon in April, 1996 and was employed there continuously until April, 2005.  Plaintiff is a member of a protected class - female.

10.     Upon information and belief defendant Steven Barritz was employed by defendant Isogon as a marketing manager from 1998 to the present.

11.     Plaintiff's responsibilities at Isogon as Product Manager required almost daily contact with defendant Steven Barritz, a marketing manager.  As the only son of Isogon's principal shareholder and President, defendant Steven Barritz was in a position of corporate authority.

12.     During the course of her employment with Defendant Isogon, plaintiff was subjected to a hostile, offensive and discriminatory work environment.  The environment plaintiff endured involved conduct by the marketing manager Steven Barritz, which included but was not limited to the following: unwanted sexual advances; threatening e-mails; sexually-charged suggestions and questions; and photographs of plaintiff digitally mutilated by

defendant Steven Barritz and then e-mailed to plaintiff.

13.     Having worked with defendant Steven Barritz since 1998 plaintiff and her husband developed a limited friendship with defendant Steven Barritz.

14.     Upon information and belief, defendant Steven Barritz suffers from numerous behavioral and mental maladies. These aforementioned behavioral and mental maladies were known to defendant Isogon and defendant Robert Barritz. Notwithstanding the foregoing, defendants Isogon and Robert Barritz took no steps to protect plaintiff from the offensive conduct of defendant Steven Barritz. Moreover, acting at the specific request of Defendant Steven Barritz, Robert Barritz routinely assigned his son to work on projects to which plaintiff was already assigned so that defendant Steven Barritz could have more access to plaintiff.

15     In the year 2004 defendant Steven Barritz began to make sexual advances towards plaintiff. Defendant Steven Barritz also demanded that plaintiff enter into a sexual relationship with him. These advances were rejected by plaintiff.

16.     Knowing that defendant Steven Barritz was the only son of the President and majority shareholder of Isogon, plaintiff feared retaliation for rejecting these advances and attempted to retain a limited friendship with defendant Steven Barritz.

17.     Notwithstanding plaintiff's efforts to retain a professional working relationship, defendant Steven Barritz instead began to make obscene, sexually-loaded and suggestive comments to plaintiff both orally and via e-mail during the course of each work-day at Isogon

18.     On Wednesday, February 4, 2004, while at the Isogon offices, defendant Steven Barritz sent plaintiff a crude message: "I shall not be going to any sales kickoff related activities. Fuc- them. That's what I say. Fuc- them with a 12 inch dildo. s"

19.     The increasingly demeaning messages from defendant Steven Barritz made it difficult for plaintiff to perform her duties as Product Manager. On Friday, March 19, 2004, increasingly angered by plaintiff's rejections of his advances, defendant Steven Barritz sent an e-mail using the Isogon network containing the following:"See, this is the type of thing you, if you were in a better universe, would be doing: writing scripts like my pal Zack over here. In that universe, in that alternate reality, you are, right now, writing a script. I suppose there's also another alternate reality where you're a baby elephant. *Kathryn the baby elephant*. Here, you have a sister

elephant, who constantly pushes at your trunk. Eventually, you're attacked and eaten by a pride of hungry lions, all republicans. *Kathryn the nail polish remover.* Guaranteed to remove every last speck of nail polish with a perfectionist's tendency. And a billion more Kathryns littering the landscape. They're out there somewhere. I can feel them. Their cosmic vibrations tickle my fingertips as I type these words. I'd like to collect all these Kathryns up, and put them in a traveling freakshow called *Freaky Kathryn Freakfest Extravaganza.* I'd have the Kathryns compete against each -- primarily mud wrestling. Kathryn the chewing gum wrapper vs. Kathryn the nail clippings (having been formed by *Kathryn the anxiety ridden teeth*). The clippings would tear the wrapper to pieces. At the end of the day, I'd take all the Kathryns, put them in a giant barrel, and roll them down a hill. That would be fun. The barrel crashes into a tree and explodes apart, a zillion Kathryns flying every which way. A montage of Kathryns flying through the air, with terror stricken faces. What fun! All the Kathryns would live together in one giant nunnery, with a single *Kathryn Mother Superior* to lord over them. She'd smoke, but she'd never use an ashtray. The Kathryns would hold their hands out for Mother Superior to ash in. They'd all be her bitches. sb [Steven Barritz]"

20.     As Product Manager, plaintiff was required to work with defendant Steven Barritz, a situation increasingly made difficult by his sexual advances and the barrage of vulgar, sexually-suggestive e-mails. For example, on May 18, 2004, defendant Steven Barritz sent the following e-mail using the Isogon network: " Subject: You didn't notice  ...but I slinked under your desk and fell asleep by your feet. The smell of your feet reminds me of the smell inside my mother's womb: moist & stinky, a bit like rotting leaves. You wiggle your toes often. Did you know that? Or do those piggies have minds of their own? Sometimes one of them wriggles, while the others sleep. Other times all of them are awake. I've named them. I've given them all silly names, like Mopsy and Flopsy. I'm not that creative. I'm only a little kitty kat, after all  sb"

21.     On Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff an e-mail which stated, inter alia, the following: "Do I need TRAINING? (Emphasis in the original). I'm laughing as I write this. I'm just playing at being angry. Or maybe I'm being passive aggressive. I say I'm playing angry, but, maybe I really am angry, and therefore am playing at playing at being angry. (Maybe I'm on the rag.) Whatever happened to that little Linux penguin that used to sit on your desk? What, wasn't he good enough to sit on your desk any longer? You're cold blooded, that's what you are. To kick a poor little defenseless penguin out onto the street! Into the cold!!!

How can you be so cruel? Exclamation point! Well, Francis Farmer Will Have Her Revenge on Kathryn. That's what I say. *Don't tell me I didn't warn you.* And while we're on the subject, just why are you so damn frisky all the time? I mean, really." (Emphasis supplied)

22.     Later on Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff another e-mail message which stated a bizarre threat: "Deadly Nightshade  One leaf.  Approximately midnight."

23.     The next day plaintiff received from defendant Steven Barritz the following  e-mail message at work: "I ate a leaf of Deadly Nightshade last night, which is a non-lethal dose  This is evident, since I'm still alive. In fact, I read on a science site, that no dose is lethal (despite the claims you'll find elsewhere on the net). Eating large quantities will just make you sick.  I did all this research before eating the leaf.  But, just in case I was wrong, and I died, and people were wondering why, you'd have a clue with the e-mail I sent you last night.  Better to play it safe, that's my motto "

24.     On October 12, 2004, defendant Steven Barritz sent an e-mail message containing crude sexual innuendo.  "It took me a half an hour to get out of bed this morning. I used the lightbox this morning, while I had my morning breakfast of Special K with bananas, Dexedrine, and Zoloft.  I have decided I have to start using it every morning, that the Seasonal Affective Disorder is kicking in, which is the only reason I can think of to explain the funk I've been in as of late. I know the light bothers your eyes, but, I think you might benefit from using the one you have in your office  Are you combing your cats, every other day, like you said you were going to? I added commas to the last sentence to please you. *Did they give you syntax pleasure? Go ahead, have yourself an after syntax cigarette.  Look at the word 'syntax'. Say it aloud. Let it roll back and forth on your tongue, as if you had a marble in your mouth.  I've decided what area of business I'd like to pursue. Tonight, I'm going to have dinner with my parents, and tell them about my desire to go into the gay porn industry. I'd like to hire Phil for my first film.  Phil would be giving a demo, and I'd be playing the client, and I'd be sitting there, watching him, and I'd start wiping the sweat off my brow, loosening my tie, etc. You can probably fill in the rest.* " (emphasis supplied)

25.     Because defendant Steven Barritz had made it clear that he could cause plaintiff to lose her job, plaintiff was compelled to endure a continuous barrage of weird, perverse and sexually-humiliating advances and e-mails at the Isogon facilities. On Monday, September 6, 2004, defendant Steven Barritz wrote and asked if plaintiff

would wear a "Pussy Wagon" t-shirt to a gynecologist's office.

26.    Plaintiff attempted to reason with defendant Steven Barritz so as to preserve a working relationship and to avoid his becoming more unstable and causing him to have her terminated.   On Wednesday September 15, 2005 defendant Steven Barritz wrote:

"Is it possible to sprain one's tush? Last night, when I was rollerblading, I think I sprained my left check. I thought you'd find that amusing. Because all that, my left cheek has been nagging for my attention. I wish my left cheek was lower maintenance. s [Steven Barritz]"

27.    On November 5, 2004 defendant Steven Barritz wrote plaintiff an e-mail which concluded with his disturbing opinion about the Mel Gibson film "Passion of the Christ": "PS Have you seen the Passion?  It's great fun!  You have to fast forward past the boring non-violent parts, of course.  My favorite part is this one time they tear a huge chunk of flesh off near his rib cage.  I almost came in my pants when they did that."
[Emphasis supplied]

28.    Despite all the efforts of plaintiff to resist defendant Steven Barritz's advances in a diplomatic fashion and to ignore his entreaties, he still persisted in sexual overtures.  On Tuesday, November 12, 2004, angry that plaintiff had ignored his advances, Steven Barritz wrote:  " Let's just say, I expect a phone call from you sometime this month. I also ask one other thing of you.  That you let me know if you want to go to the dance thing on the 20th. Those are the two things I expect from you right now.  I want a whole lot more, but, I'm trying to control myself, chill out, and re-direct this energy towards other parts of my life; I think this is healthy for me, and I think you'd agree.  I know that we have a bit of a dysfunctional relationship, which is pretty much all my fault, but, I want to work to make our friendship as healthy as it can be.  I don't want you feeling guilty about not calling or emailing me. I know you're busy and that you're a loner and that you're mentally overwhelmed; I understand you more than you think. I want to be a positive aspect in your life, not a drain; that is why I'm letting the phone call and email thing slide. That's all for now.  I hope you are having a modestly okay day. I voted this morning. The pain in my arm *is* lesser than it has been. I'm feeling good, and in high spirits. Oh, wait, there's something else I want from you. If you're not going to use the bright light thing in your office, I'd like it back. Please let me know. So, there are three SB requests. There, now I'll stop writing, cuz, I mean, I really should do some work " (Emphasis supplied)



29.     In his various e-mails defendant Steven Barritz made it clear that he had control over plaintiff's

employment at Isogon.  In a rambling message sent Tuesday, November 23, 2005, he wrote in part: " Maybe the

reason you haven't called me about this, is because you don't want to be better friends with me.  That's okay, I mean,

you're certainly allowed to not be friends with me.  It's not as if it would be comfortable for you to come right out

and say it, so, if this is the way you feel, which is fine, then, I should make it easy for you.  I guess I'll just say, if

you want to be friends with me, you know where to find me.  I'm not mad at you, if this is the case, you must

understand that.  And friends or not, <u>I'll still make sure you are treated right by Isogon</u>, you don't have to worry

about that.  I still hope that we can have a working relationship.  Though, I'm not quite sure if I can take assignments

from you.  I am having my job radically restructured -- this is confidential, btw.  I suppose it's still possible, but we'd

have to talk.  A week of doing QA is not possible for me at all.  Anyway, it sounds like it's Dmitri's fault, not yours,

so, don't worry about it.  It may be that you simply can't be friends with me at this point in your life.  That's okay

too.  Like I said, you know where to find me.  I'm kewl with it.  You'll see. Steven" (emphasis supplied)

30.     This message was sent to plaintiff about the same time that defendant Steven Barritz sent plaintiff

a photograph of herself that defendant had mutilated using Photoshop software.   This document was created by

defendant Steven Barritz under the file name "K Face Distort 2.jpg" and is reproduced herein below:

K Face Distort 2.jpg



31.     On November 24, 2004, defendant Stever Barritz sent plaintiff an e-mail stating: "Is it healthy to

have a friendship when I'm so enamored of you?  My therapist says not to see you no more.  She says you're like a

disease without any cure.  She said I'm so obsessed I'm becoming a bore, oh no.  You think you're so pretty.  (Well,

I think you are, but you see what a little Photoshop can do.)  I think my unreasoning love or attachment has caused

me to behave foolishly." Along with the November 24, 2004 e-mail message was an attached digital file which contained a another photograph of the plaintiff which had been defaced by defendant Steven Barritz using Photoshop software. At the end of the November 24, 2004 e-mail message was the following: " **PPS I think you should watch more porn.**" (Emphasis in the original)

32.    Plaintiff continued to ask defendant Steven Barritz to stop e-mailing her. In response to the message detailed in paragraph "31" above, plaintiff responded via e-mail: "please do not write things like this to me." Instead, defendant Steven Barritz increased the volume of offensive e-mails and in private conversations at Isogon's offices threatened to have her terminated from her job if she did not agree to spend more time with him. On December 1, 2004, defendant Steven Barritz refused to stop sending e-mails and instead wrote " Emailing you is fun! / It's like push-ups. How many can I do? s "

33.    Plaintiff was unable to bear the continued harassment and informed defendant Steven Barritz that she would be making a formal complaint to Isogon management. In response, on February 20, 2005 defendant Barritz sent plaintiff an e-mail with a 90 page attachment. It was the exit strategies manual for soon-to-be terminated Isogon executives. "From: Steve Barritz / Sent: Sunday, February 20, 2005 12.04 PM / To: Kathryn Field / Subject: FW: the black book BP Exec Manual (for one on one) DOC " Executive Career Transition Counseling"" The threat was clear. If she complained about his advances then defendant Steven Barritz would use his access to his father to have her terminated.

34.    The sexually discriminatory acts and environment described in this complaint were otherwise known to defendant Isogon and defendant Robert Barritz, Kassan, Helberg, Vardi and Youchnow in mid-2004 through mid-2005.

35.    The defendants treated similarly situated male employees more favorably in that they did not subject them to this discriminatory and offensive behavior.

36.    On or about February, 2005, plaintiff made a complaint to Isogon's Chief Financial Officer regarding the increasingly threatening conduct of defendant Steven Barritz.

37.    Notwithstanding plaintiff's complaints about the sexually discriminatory and demeaning acts and



environment described herein above, defendants Robert Barritz and Isogon took no appropriate remedial action.

38    Defendants Isogon and Robert Barritz were aware of the sexual harassment and discrimination, but failed and/or refused to stop it or otherwise take appropriate remedial action, thereby subjecting plaintiff to continued, on-going and more severe harassment

39.    Shortly thereafter, defendant Steven Barritz made an explicit verbal threat to plaintiff that he would have Isogon retaliate against plaintiff for having complained about his conduct.

40.    Upon information and belief, the primary harasser, defendant Steven Barritz, continues to be employed by defendant Isogon

41.    In spite of plaintiff's complaints about defendant Steven Barritz's increasingly hostile and discriminatory acts, the defendants Robert Barritz and Isogon went out of their way to make plaintiff's job more difficult. Ultimately, Defendant Isogon, through defendant Robert Barritz, terminated plaintiff in retaliation for having complained about the conduct of defendant Steven Barritz.

42.    It was as a direct and proximate result of plaintiff's opposition to the sexual harassment and sexual discrimination that caused plaintiff to be terminated by defendants Robert Barritz and Isogon.

43.    All of the foregoing conduct was offensive to plaintiff and would be offensive to a reasonable person

44    Defendants created and perpetuated a work environment that was so offensive and severe that no reasonable person could expect to endure it

45.    As a direct and proximate result of the foregoing conduct, plaintiff suffered embarrassment, humiliation, emotional distress and other forms of damage. These damages are of an on-going and continuous nature

<u>AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ,
INDIVIDUALLY</u>

46.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" inclusive as if more fully set forth herein

47      Defendant Steven Barritz treated plaintiff differently and less favorably than similarly situated male employees

48.      That this treatment as stated herein in the "facts common to all causes of action" constitutes extreme and outrageous conduct on the part of the Defendants.

48.      Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Steven Barritz sexually harassed her and deprived plaintiff of her constitutional right to equal protection under the law.

49.      Defendant Steven Barritz intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

50.      At all relevant times, defendant Steven Barritz acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ, INDIVIDUALLY**

51.      Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" and "forty-seven" through "fifty" inclusive as if more fully set forth herein

52      Defendant Steven Barritz intentionally sent vulgar and sexually threatening e-mails to plaintiff in a deliberate effort to inflict emotional harm on plaintiff and to interfere with the course of her employment

53      That this treatment as stated herein in the "facts common to all causes of action" constitutes extreme and outrageous conduct on the part of the Defendants.

53.      As a result of the foregoing, defendant Steven Barritz intentionally caused and inflicted emotional distress upon plaintiff.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, INDIVIDUALLY**

54      Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five"

and "forty-seven" through "fifty" and "fifty-two" through "fifty-three" inclusive as if more fully set forth herein.

54.   Defendant Robert Barritz treated plaintiff differently and less favorably than similarly situated male employees. Defendant Robert Barritz knew or should have known that his son and employee was engaging in inappropriate and harmful conduct towards plaintiff.  Defendant Robert Barritz knew or should have known that this conduct was harmful to plaintiff and that similarly situated male employees of Isogon were not subject to such conduct. That this treatment as stated herein in the "facts common to all causes of action" constitutes extreme and outrageous conduct on the part of the Defendants.

56.   Through the actions, policies, employment practices and conduct directed at plaintiff and causing plaintiff to be terminated in April 2005 in retaliation for her complaints regarding the conduct of Steve Barritz, defendant Robert Barritz deprived plaintiff of her constitutional right to equal protection under the law.

57.   Defendant Robert Barritz intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

58.   At all relevant times, defendant Robert Barritz acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, KASAN, HELBERG, VARDI AND YOUCHNOW, INDIVIDUALLY

59.   Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" and "forty-seven" through "fifty"; "fifty-two" through "fifty-three"; and "fifty-five" through "fifty-eight" inclusive as if more fully set forth herein.

60.   The fourth cause of action is intentionally deleted.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS IBM, ISOGON, AND TETRAGON

61.   Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" "forty-seven" through "fifty"; "fifty-two" through "fifty-three"; "Fifty-five" through "fifty-eight" and ""sixty".

through "sixty-one" inclusive as if more fully set forth herein

62.    Defendant Isogon, and thereby its successors in interest IBM and Tetragon, treated plaintiff differently and less favorably than similarly situated male employees. Defendant Isogon knew or should have known that its employee was engaging in inappropriate and harmful conduct towards plaintiff. Defendant Isogon, through its shareholders, officers and employees knew or should have known that this conduct was harmful to plaintiff and that similarly situated male employees of Isogon were not subject to such conduct.

63.    Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Isogon permitted the existence of a hostile work environment by which defendant Steven Barritz was permitted to sexually harass plaintiff and deprive plaintiff of her constitutional right to equal protection under the law.

64.    Although informed of the aforementioned conduct the Defendant's allowed this behavior to continue in contravention of public policy as stated in the applicable state and federal statutes protecting the rights of employees.

65.    The Defendant allowed this hostile work environment and furthermore acknowledged and condone this behavior by allow it to continue and by discharge the Plaintiff in a retaliatory nature due to the relationship of the Defendants.

66.    Defendant Isogon intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law, to not be subjected to a hostile work environment and to be able to report illegal and tortuous acts perpetrated upon her without being discharged in retaliation.

67.    At all relevant times, defendant Isogon acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection, to not be subjected to a hostile work environment and to be able to report illegal an tortuous acts perpetrated upon her without being discharged in retaliation, under the law.

WHEREFORE,

On the First Cause of Action against defendant Steven Barritz, plaintiff demands judgment in the

mount of Ten Million Dollars, and

On the Second Cause of Action against defendant Steven Barritz, plaintiff demands judgment in

amount of Ten Million Dollars, and

On the Third Cause of Action against defendant Robert Barritz, plaintiff demands judgment in the

amount of Ten Million Dollars, and

On the Fifth Cause of Action against defendants IBM, Isogon and Tetragon, plaintiff dem

judgment in the amount of Ten Million Dollars, and together with attorneys fees, the costs and disbursement

action and with such further relief as to the Court seems jus , equitable and proper.

Dated:  Lake Success, New York
        September 24, 2007

Yours, etc ,

BUNTING, GONER & ASSOCIATES P C
Attorneys for the Plaintiff
1983 Marcus Avenue, Suite 117
Lake Success, NY11042
(516) 358 - 8825

## ATTORNEY'S VERIFICATION

Robert D. Goner, an attorney duly admitted to practice before the courts of the

State of New York, affirms the following pursuant to CPLR Section 2106:

That I have read the foregoing Verified Complaint and know the contents thereof;

that the same is true to my own knowledge, except as to the matters stated to be alleged upon

information and belief, and as to those matters I believe them to be true.

The reason this verification is not made by the plaintiff is because plaintiff does

not reside within New York County, where your affirmant maintains his office. That the source

of your affirmant's knowledge is based upon communications with plaintiff as well as a review

of the case file and documents provided by the plaintiff.

Dated:       Nassau, New York
             September 24, 2007

                                          _____
                                          Robert D. Goner

STATE OF NEW YORK

KATHRYN FIELD,

Plaintiffs,

-against-

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION, TETRAGON,
L.L.C., STEVEN BARRITZ, and ROBERT
BARRITZ,

Defendants.

SUMMONS AND COMPLAINT

BUNTING, GONER & ASSOCIATES PC
Attorneys for Plaintiff
Office and Post Office Address
1983 Marcus Avenue
Suite 117
Lake Success, New York 11042
(516)  358-8825

To:
Attorney(s) for

Signature (Rule 130-1.1-a)

BUNTING, GONER & ASSOCIATES PC

Service of a copy of the within
is hereby
Dated,
Attorney(s) for

---

Notice of Entry

Sir:--Please take notice that the
within is a true copy of a
duly entered in the office of the
clerk of the within named Court on
, 200

Dated,
Yours, etc.
BUNTING, GONER & ASSOCIATES PC
Attorneys for
Office and Post Office Address
1983 Marcus Avenue
Suite 117
Lake Success, New York 11042

To:

Attorney(s) for

Notice of Settlement

Sir:--Please take notice that an order
of which the within is a true copy
will be presented for settlement to
the Hon.

one of the judges of the within named
Court, at

on
at
20
Dated,
Yours, etc.
BUNTING, GONER & ASSOCIATES PC
Attorneys for
Office and Post Office Address
1983 Marcus Avenue
Suite 117
Lake Success, New York 11042

To:

FILED

OCT 03 2007

NEW YORK
COUNTY CLERK'S OFFICE

Kathryn Fjeld

v.

**INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ,**

**07 Civ. 10355 (CM/HBP)**

**Exhibit "B"**

**Complaint**

SUPREME COURT OF THE CITY OF NEW YORK
NEW YORK COUNTY

----------------------------------------------------------------x

KATHRYN FJELD,

                       Plaintiff,

             - against -

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

                    Defendants.

----------------------------------------------------------------x

Index No. 100071/2006
Date Filed: 1/4/2006

**SUMMONS**

Plaintiff designates
New York County as the
place of trial

The basis of venue is the
principal place of business of
Defendants, 330 Seventh Av.
New York, NY

To the above named Defendants:

        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' Attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated, Mineola, New York
        December 28, 2005

                    The Law Offices of Gerald A. Bunting
                    Attorneys for the Plaintiff
                    114 Old Country Road, Suite 616
                    Mineola, New York
                    (516) 248-2366

Defendants Addresses:
 IBM, 1133 Westchester Avenue, White Plains, New York
 Isogon, 330 Seventh Avenue, New York County, NY
 Tetragon, LLC, 57 Ira Place, Syosset, New York
 Robert Barritz, 4 Skyview Court, Syosset, NY 11791
 Steven Barritz, 4 Skyview Court, Syosset, NY 11791
 Peter Kassan, 330 Seventh Avenue, New York, NY 10001
 Per Helberg, 330 Seventh Avenue, New York, NY 10001
 David Vardi, 330 Seventh Avenue, New York, NY 10001
 Steven Youchnow, 330 Seventh Avenue, New York, NY 10001

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

---------------------------------------------------------------x

KATHRYN FJELD

       Plaintiff,

     - against -

INTERNATIONAL BUSINESS MACHINES, INC,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN,
PER HELBERG, DAVID VARDI
and STEVEN YOUCHNOW,

       Defendants.

---------------------------------------------------------------x

Index No. 100071/2006

**VERIFIED COMPLAINT**

    Plaintiff KATHRYN FJELD, by her attorneys, THE LAW OFFICES OF

GERALD BUNTING, complaining of the defendants, respectfully alleges, upon information and

belief, as follows:

**The Parties**:

   1.  That at all times herein mentioned plaintiff KATHRYN FJELD, ("Plaintiff" or

"Fjeld"), was and still is an individual domiciled in the State of New Jersey.

   2.  That at all times herein mentioned, and upon information and belief, defendant

INTERNATIONAL BUSINESS MACHINES, INC. d/b/a IBM, (hereinafter "IBM"), was and

still is a corporation or other business entity organized and existing under the laws of the State

of New York with a principal place of business at 1133 Westchester Avenue, White Plains, New

York. Upon information and belief, IBM is the successor in interest to defendant ISOGON

CORPORATION.

   3.  That at all times herein mentioned, and upon information and belief, defendant

ISOGON CORPORATION, (hereinafter "Isogon"), was and still is a corporation or other business entity organized and existing under the laws of the State of New York and with a principal place of business at 330 Seventh Avenue, New York, NY 10001.

4.     Upon information and belief, defendant Isogon, a privately-held corporation, was acquired by defendant IBM and has ceased to have an independent corporate identity.

5.     That at all times herein mentioned, and upon information and belief, defendant TETRAGON, L.L.C., (hereinafter "Tetragon"), was and still is a limited liability company or other business entity organized and existing under the laws of the State of New York and with a principal place of business at 57 Ira Place, Syosset, New York. Upon information and belief, Tetragon is a successor in interest to defendant Isogon.

6.     That at all times herein mentioned, and upon information and belief, defendant ROBERT BARRITZ, was the President and majority shareholder of Isogon. Defendant Robert Barritz has a business address located at 330 Seventh Avenue, New York, NY 10001.

7.     That at all times herein mentioned, and upon information and belief, defendant STEVEN BARRITZ, was the son of defendant ROBERT BARRITZ. Defendant Steven Barritz has a business address located at 330 Seventh Avenue, New York, NY 10001.

8.     That at all times herein mentioned, and upon information and belief, defendants PETER KASSAN ("Kasan"), PER HELBERG ("Helberg"), DAVID VARDI, ("Vardi") and STEVEN YOUCHNOW ("Youchnow"), together with defendant Robert Barritz were the sole shareholders of defendant ISOGON. Upon information and belief, defendants Kasan, Helberg, Vardi, Youchnow and Robert Barritz remain personally liable for all or some of the obligations and claims of Isogon which accrued prior to the sale of Isogon to defendant IBM.

# FACTS COMMON TO ALL CAUSES OF ACTION:

9.    Plaintiff Kathryn Fjeld was employed by defendant Isogon as a Product Manager. Plaintiff began work at Isogon in April, 1996 and was employed there continuously until April, 2005. Plaintiff is a member of a protected class - female.

10.    Upon information and belief defendant Steven Barritz was employed by defendant Isogon as a marketing manager from 1998 to the present.

11.    Plaintiff's responsibilities at Isogon as Product Manager required almost daily contact with defendant Steven Barritz, a marketing manager. As the only son of Isogon's principal shareholder and President, defendant Steven Barritz was in a position of corporate authority.

12.    During the course of her employment with Defendant Isogon, plaintiff was subjected to a hostile, offensive and discriminatory work environment. The environment plaintiff endured involved conduct by the marketing manager Steven Barritz, which included but was not limited to the following: unwanted sexual advances; threatening e-mails; sexually-charged suggestions and questions; and photographs of plaintiff digitally mutilated by defendant Steven Barritz and then e-mailed to plaintiff.

13.    Having worked with defendant Steven Barritz since 1998 plaintiff and her husband developed a limited friendship with defendant Steven Barritz.

14.    Upon information and belief, defendant Steven Barritz suffers from numerous behavioral and mental maladies. These aforementioned behavioral and mental maladies were known to defendant Isogon and defendant Robert Barritz. Notwithstanding the foregoing, defendants Isogon and Robert Barritz took no steps to protect plaintiff from the offensive conduct of defendant Steven Barritz. Moreover, acting at the specific request of Defendant

Steven Barritz, Robert Barritz routinely assigned his son to work on projects to which plaintiff was already assigned so that defendant Steven Barritz could have more access to plaintiff.

15.    In the year 2004 defendant Steven Barritz began to make sexual advances towards plaintiff. Defendant Steven Barritz also demanded that plaintiff enter into a sexual relationship with him. These advances were rejected by plaintiff.

16.    Knowing that defendant Steven Barritz was the only son of the President and majority shareholder of Isogon, plaintiff feared retaliation for rejecting these advances and attempted to retain a limited friendship with defendant Steven Barritz.

17.    Notwithstanding plaintiff's efforts to retain a professional working relationship, defendant Steven Barritz instead began to make obscene, sexually-loaded and suggestive comments to plaintiff both orally and via e-mail during the course of each work-day at Isogon.

18.    On Wednesday, February 4, 2004, while at the Isogon offices, defendant Steven Barritz sent plaintiff a crude message: "I shall not be going to any sales kickoff related activities. Fuc- them. That's what I say. Fuc- them with a 12 inch dildo. s"

19.    The increasingly demeaning messages from defendant Steven Barritz made it difficult for plaintiff to perform her duties as Product Manager. On Friday, March 19, 2004, increasingly angered by plaintiff's rejections of his advances, defendant Steven Barritz sent an e-mail using the Isogon network containing the following:

"See, this is the type of thing you, if you were in a better universe, would be doing: writing scripts like my pal Zack over here. In that universe, in that alternate reality, you are, right now, writing a script. I suppose there's also another alternate reality where you're a baby elephant. *Kathryn the baby elephant.* Here, you have a sister elephant, who constantly pushes at your

trunk. Eventually, you're attacked and eaten by a pride of hungry lions, all republicans. *Kathryn the nail polish remover*. Guaranteed to remove every last speck of nail polish with a perfectionist's tendency. And a billion more Kathryns littering the landscape. They're out there somewhere. I can feel them. Their cosmic vibrations tickle my fingertips as I type these words. I'd like to collect all these Kathryns up, and put them in a traveling freakshow called *Freaky Kathryn Freakfest Extravaganza*. I'd have the Kathryns compete against each -- primarily mud wrestling. Kathryn the chewing gum wrapper vs. Kathryn the nail clippings (having been formed by *Kathryn the anxiety ridden teeth*). The clippings would tear the wrapper to pieces. At the end of the day, I'd take all the Kathryns, put them in a giant barrel, and roll them down a hill. That would be fun. The barrel crashes into a tree and explodes apart, a zillion Kathryns flying every which way. A montage of Kathryns flying through the air, with terror striken faces. What fun! All the Kathryns would live together in one giant nunnery, with a single *Kathryn Mother Superior* to lord over them. She'd smoke, but she'd never use an ashtray. The Kathryns would hold their hands out for Mother Superior to ash in. They'd all be her bitches. sb [Steven Barritz]"

20.    As Product Manager, plaintiff was required to work with defendant Steven Barritz, a situation increasingly made difficult by his sexual advances and the barrage of vulgar, sexually-suggestive e-mails. For example, on May 18, 2004, defendant Steven Barritz sent the following e-mail using the Isogon network: " **Subject:** You didn't notice   ...but I slinked under your desk and fell asleep by your feet. The smell of your feet reminds me of the smell inside my mother's womb: moist & stinky, a bit like rotting leaves. You wiggle your toes often. Did you know that? Or do those piggies have minds of their own? Sometimes one of them wriggles,

while the others sleep. Other times all of them are awake. I've named them. I've given them all silly names, like Mopsy and Flopsy. I'm not that creative. I'm only a little kitty kat, after all. sb"

21.    On Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff an e-mail which stated, inter alia, the following: "Do I need TRAINING? (Emphasis in the original). I'm laughing as I write this. I'm just playing at being angry. Or maybe I'm being passive aggressive. I say I'm playing angry, but, maybe I really am angry, and therefore am playing at playing at being angry. (Maybe I'm on the rag.) Whatever happened to that little Linux penguin that used to sit on your desk? What, wasn't he good enough to sit on your desk any longer? You're cold blooded, that's what you are. To kick a poor little defenseless penguin out onto the street! Into the cold!!! How can you be so cruel? Exclamation point! Well, Francis Farmer Will Have Her Revenge on Kathryn. That's what I say. *Don't tell me I didn't warn you.* And while we're on the subject, just why are you so damn frisky all the time? I mean, really." (Emphasis supplied)

22.    Later on Wednesday, September 8, 2004 defendant Steven Barritz sent plaintiff another e-mail message which stated a bizarre threat: "Deadly Nightshade. One leaf. Approximately midnight."

23.    The next day plaintiff received from defendant Steven Barritz the following e-mail message at work: "I ate a leaf of Deadly Nightshade last night, which is a non-lethal dose. This is evident, since I'm still alive. In fact, I read on a science site, that no dose is lethal (despite the claims you'll find elsewhere on the net). Eating large quantities will just make you sick. I did all this research before eating the leaf. But, just in case I was wrong, and I died, and

people were wondering why, you'd have a clue with the e-mail I sent you last night. Better to play it safe, that's my motto."

24. On October 12, 2004, defendant Steven Barritz sent an e-mail message containing crude sexual innuendo:

"It took me a half an hour to get out of bed this morning. I used the lightbox this morning, while I had my morning breakfast of Special K with bananas, Dexedrine, and Zoloft. I have decided I have to start using it every morning, that the Seasonal Affective Disorder is kicking in, which is the only reason I can think of to explain the funk I've been in as of late. I know the light bothers your eyes, but, I think you might benefit from using the one you have in your office. Are you combing your cats, every other day, like you said you were going to? I added commas to the last sentence to please you. *Did they give you syntax pleasure? Go ahead, have yourself an after syntax cigarette. Look at the word 'syntax'. Say it aloud. Let it roll back and forth on your tongue, as if you had a marble in your mouth. I've decided what area of business I'd like to pursue. Tonight, I'm going to have dinner with my parents, and tell them about my desire to go into the gay porn industry. I'd like to hire Phil for my first film. Phil would be giving a demo, and I'd be playing the client, and I'd be sitting there, watching him, and I'd start wiping the sweat off my brow, loosening my tie, etc. You can probably fill in the rest.* " (emphasis supplied)

25. Because defendant Steven Barritz had made it clear that he could cause plaintiff to lose her job, plaintiff was compelled to endure a continuous barrage of weird, perverse and sexually-humiliating advances and e-mails at the Isogon facilities. On Monday, September 6,

2004, defendant Steven Barritz wrote and asked if plaintiff would wear a "Pussy Wagon" t-shirt to a gynecologist's office.

26.    Plaintiff attempted to reason with defendant Steven Barritz so as to preserve a working relationship and to avoid his becoming more unstable and causing him to have her terminated.  On Wednesday September 15, 2005 defendant Steven Barritz wrote:

"Is it possible to sprain one's tush? Last night, when I was rollerblading, I think I sprained my left cheek. I thought you'd find that amusing. Because all that, my left cheek has been nagging for my attention. I wish my left cheek was lower maintenance. s [Steven Barritz]"

27.    On November 5, 2004 defendant Steven Barritz wrote plaintiff an e-mail which concluded with his disturbing opinion about the Mel Gibson film "Passion of the Christ": "**PS Have you seen the Passion? It's great fun! You have to fast forward past the boring non-violent parts, of course. My favorite part is this one time they tear a huge chunk of flesh off near his rib cage. I almost came in my pants when they did that.**" [Emphasis supplied]

28.    Despite all the efforts of plaintiff to resist defendant Steven Barritz's advances in a diplomatic fashion and to ignore his entreaties, he still persisted in sexual overtures. On Tuesday, November 12, 2004, angry  that plaintiff had ignored his advances, Steven Barritz wrote:  "** Let's just say, I expect a phone call from you sometime this month. I also ask one** other thing of you.  That you let me know if you want to go to the dance thing on the **20th.  Those are the two things I expect from you right now.  I want a whole lot more, but, I'm trying to control myself,** chill out, and re-direct this energy towards other parts of my life; I think this is healthy for me, and I think you'd agree.  I know that we have a bit of a dysfunctional relationship, which is pretty much all my fault, but, I want to work to make our friendship as

healthy as it can be. I don't want you feeling guilty about not calling or emailing me. I know you're busy and that you're a loner and that you're mentally overwhelmed; I understand you more than you think. I want to be a positive aspect in your life, not a drain; that is why I'm letting the phone call and email thing slide. That's all for now. I hope you are having a modestly okay day. I voted this morning. The pain in my arm is lesser than it has been. I'm feeling good, and in high spirits. Oh, wait, there's something else I want from you: if you're not going to use the bright light thing in your office, I'd like it back. Please let me know. So, there are three SB requests. There, now I'll stop writing, cuz, I mean, I really should do some work." (Emphasis supplied)

29.    In his various e-mails defendant Steven Barritz made it clear that he had control over plaintiff's employment at Isogon. In a rambling message sent Tuesday, November 23, 2005, he wrote in part: " Maybe the reason you haven't called me about this, is because you don't want to be better friends with me. That's okay, I mean, you're certainly allowed to not be friends with me. It's not as if it would be comfortable for you to come right out and say it, so, if this is the way you feel, which is fine, then, I should make it easy for you. I guess I'll just say, if you want to be friends with me, you know where to find me. I'm not mad at you, if this is the case, you must understand that. And friends or not, **I'll still make sure you are treated right by Isogon**, you don't have to worry about that. I still hope that we can have a working relationship. Though, I'm not quite sure if I can take assignments from you. I am having my job radically restructured – this is confidential, btw. I suppose it's still possible, but we'd have to talk. A week of doing QA is not possible for me at all. Anyway, it sounds like it's Dmitri's fault, not yours, so, don't worry about it. It may be that you simply can't be friends with me at this point in

your life. That's okay too. Like I said, you know where to find me. I'm kewl with it. You'll see.
Steven" (emphasis supplied)

30.    This message was sent to plaintiff about the same time that defendant Steven

Barritz sent plaintiff a photograph of herself that defendant had mutilated using Photoshop

software.   This document was created by defendant Steven Barritz under the file name "K Face

Distort 2.jpg" and is reproduced herein below:

K Face Distort 2.jpg



31.    On November 24, 2004, defendant Steven Barritz sent plaintiff an e-mail stating:

"*Is it healthy to have a friendship when I'm so enamored of you? My therapist says not to see

you no more. She says you're like a disease without any cure. She said I'm so obsessed I'm

becoming a bore, oh no. You think you're so pretty. (Well, I think you are, but you see what a

little Photoshop can do.) I think my unreasoning love or attachment has caused me to behave

foolishly.*" Along with the November 24, 2004 e-mail message was an attached digital file

which contained a another photograph of the plaintiff which had been defaced by defendant Steven Barritz using Photoshop software. At the end of the November 24, 2004 e-mail message was the following: " **PPS I think you should watch more porn.**" (Emphasis in the original)

32.    Plaintiff continued to ask defendant Steven Barritz to stop e-mailing her. In response to the message detailed in paragraph "31" above, plaintiff responded via e-mail: "please do not write things like this to me." Instead, defendant Steven Barritz increased the volume of offensive e-mails and in private conversations at Isogon's offices threatened to have her terminated from her job if she did not agree to spend more time with him. On December 1, 2004, defendant Steven Barritz refused to stop sending e-mails and instead wrote " Emailing you is fun! / It's like push-ups. How many can I do?  s "

33.    Plaintiff was unable to bear the continued harassment and informed defendant Steven Barritz that she would be making a formal complaint to Isogon management.  In response, on February 20, 2005 defendant Barritz sent plaintiff an e-mail with a 90 page attachment. It was the exit strategies manual for soon-to-be terminated Isogon executives: "**From:** Steve Barritz / **Sent:** Sunday, February 20, 2005 12:04 PM / **To:** Kathryn Fjeld / **Subject:** FW: the black book BP Exec Manual (for one on one).DOC " Executive Career Transition Counseling"" The threat was clear.  If she complained about his advances then defendant Steven Barritz would use his access to his father to have her terminated.

34.    The sexually discriminatory acts and environment described in this complaint were otherwise known to defendant Isogon and defendant Robert Barritz, Kassan, Helberg, Vardi and Youchnow in mid-2004 through mid-2005 .

35.    The defendants treated similarly situated male employees more favorably in that

they did not subject them to this discriminatory and offensive behavior.

36.     On or about February, 2005, plaintiff made a complaint to Isogon's Chief Financial Officer regarding the increasingly threatening conduct of defendant Steven Barritz..

37.     Notwithstanding plaintiff's complaints about the sexually discriminatory and demeaning acts and environment described herein above, defendants Robert Barritz and Isogon took no appropriate remedial action.

38.     Defendants Isogon and Robert Barritz were aware of the sexual harassment and discrimination, but failed and/or refused to stop it or otherwise take appropriate remedial action, thereby subjecting plaintiff to continued, on-going and more severe harassment.

39.     Shortly thereafter, defendant Steven Barritz made an explicit verbal threat to plaintiff that he would have Isogon retaliate against plaintiff for having complained about his conduct.

40.     Upon information and belief, the primary harasser, defendant Steven Barritz, continues to be employed by defendant Isogon.

41.     In spite of plaintiff's complaints about defendant Steven Barritz's increasingly hostile and discriminatory acts, the defendants Robert Barritz and Isogon went out of their way to make plaintiff's job more difficult. Ultimately, Defendant Isogon, through defendant Robert Barritz, terminated plaintiff in retaliation for having complained about the conduct of defendant Steven Barritz.

42.     It was as a direct and proximate result of plaintiff's opposition to the sexual harassment and sexual discrimination that caused plaintiff to be terminated by defendants Robert

Barritz and Isogon.

43.     All of the foregoing conduct was offensive to plaintiff and would be offensive to a reasonable person.

44.     Defendants created and perpetuated a work environment that was so offensive and severe that no reasonable person could expect to endure it.

45.     As a direct and proximate result of the foregoing conduct, plaintiff suffered embarrassment, humiliation, emotional distress and other forms of damage. These damages are of an on-going and continuous nature.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ, INDIVIDUALLY

46.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" inclusive as if more fully set forth herein.

47.     Defendant Steven Barritz treated plaintiff differently and less favorably than similarly situated male employees.

48.     Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Steven Barritz sexually harassed her and deprived plaintiff of her constitutional right to equal protection under the law.

49.     Defendant Steven Barritz intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

50.     At all relevant times, defendant Steven Barritz acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal

protection under the law.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT STEVEN BARRITZ, INDIVIDUALLY

51.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" and "forty-seven" through "fifty" inclusive as if more fully set forth herein.

52.     Defendant Steven Barritz intentionally sent vulgar and sexually threatening e-mails to plaintiff in a deliberate effort to inflict emotional harm on plaintiff and to interfere with the course of her employment.

53.     As a result of the foregoing, defendant Steven Barritz intentionally caused and inflicted emotional distress upon plaintiff.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, INDIVIDUALLY

54.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" and "forty-seven" through "fifty" and "fifty-two" through "fifty-three" inclusive as if more fully set forth herein.

55.     Defendant Robert Barritz treated plaintiff differently and less favorably than similarly situated male employees. Defendant Robert Barritz knew or should have known that his son and employee was engaging in inappropriate and harmful conduct towards plaintiff. Defendant Robert Barritz knew or should have known that this conduct was harmful to plaintiff and that similarly situated male employees of Isogon were not subject to such conduct.

56.     Through the actions, policies, employment practices and conduct directed at plaintiff, and by causing plaintiff to be terminated in April 2005 in retaliation for her complaints

regarding the conduct of Steven Barritz, defendant Robert Barritz deprived plaintiff of her constitutional right to equal protection under the law.

57. Defendant Robert Barritz intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

58. At all relevant times, defendant Robert Barritz acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT ROBERT BARRITZ, KASAN, HELBERG, VARDI AND YOUCHNOW, INDIVIDUALLY

59. Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five" and "forty-seven" through "fifty"; "fifty-two" through "fifty-three"; and "fifty-five" through "fifty-eight" inclusive as if more fully set forth herein.

60. Defendants Robert Barritz, Kasan, Helberg, Vardi and Youchnow, as officers and principals of defendant Isogon and Isogon, knew or should have known of the campaign of sexual harassment being waged by Steven Barritz against plaintiff. Defendant knew or should have known of the vulgar and sexually-suggestive e-mails being intentionally sent by Steven Barritz to plaintiff.

61. As a result of the foregoing, defendants are liable for the negligent infliction of emotional distress on plaintiff.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS IBM, ISOGON, AND TETRAGON

61.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "one" through "forty-five"; "forty-seven" through "fifty"; "fifty-two" through "fifty-three"; "Fifty-five" through "fifty-eight" and ""sixty" through "sixty-one" inclusive as if more fully set forth herein.

62.    Defendant Isogon, and thereby its successors in interest IBM and Tetragon, treated plaintiff differently and less favorably than similarly situated male employees. Defendant Isogon knew or should have known that its employee was engaging in inappropriate and harmful conduct towards plaintiff. Defendant Isogon, through its shareholders, officers and employees knew or should have known that this conduct was harmful to plaintiff and that similarly situated male employees of Isogon were not subject to such conduct.

63.    Through the actions, policies, employment practices and conduct directed at plaintiff, defendant Isogon permitted the existence of a hostile work environment by which defendant Steven Barritz was permitted to sexually harass plaintiff and deprive plaintiff of her constitutional right to equal protection under the law.

64.    Defendant Isogon intentionally, purposefully and willfully caused the deprivation of plaintiff's constitutional rights to equal protection under the law.

65.    At all relevant times, defendant Isogon acted under the color of state law in willfully and purposefully depriving plaintiff of constitutionally guaranteed rights of equal protection under the law.

**WHEREFORE,**

On the First Cause of Action against defendant Steven Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Second Cause of Action against defendant Steven Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Third Cause of Action against defendant Robert Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Fourth Cause of Action against defendant Robert Barritz, plaintiff demands judgment in the amount of Ten Million Dollars, and

On the Fifth Cause of Action against defendants IBM, Isogon and Tetragon, plaintiff demands judgment in the amount of Ten Million Dollars, and together with attorneys fees, the costs and disbursements of this action and with such further relief as to the Court seems just, equitable and proper.

Dated: Mineola, New York
　　　December 12, 2005

Yours, etc.,

LAW OFFICES OF GERALD A. BUNTING
Attorneys for the Plaintiff
114 Old Country Road, Suite 616
Mineola, New York 11501
(516) 741-0687

# ATTORNEY'S VERIFICATION

GERALD A. BUNTING, an attorney duly admitted to practice before the courts of the State of New York, affirms the following pursuant to CPLR Section 2106:

That I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

The reason this verification is not made by the plaintiff is because plaintiff does not reside within Nassau County, where your affirmant maintains his office. That the source of your affirmant's knowledge is based upon communications with plaintiff as well as a review of the case file, electronic data and e-mail, and documents provided by the plaintiff.

Dated:      Mineola, New York
            December 3, 2005

Gerald A. Bunting

Plaintiff,

against

SUMMONS AND
VERIFIED COMPLAINT

INTERNATIONAL BUSINESS MACHINES INC.
d/b/a IBM, ISOGON CORPORATION,
LES PARAGON L.L.C. ROBERT BARRITZ
and STEVEN BARRITZ

Defendants.

-----------------------------------X

The Law Offices of Gerald A. Bunting
Attorneys for the Plaintiff
114 Old Country Road
Suite 616
Mineola, New York
(516) 248-2366

Kathryn Fjeld

v.

**INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ,**

**07 Civ. 10355 (CM/HBP)**


**Exhibit "C"**

**Defendants' Motion to Dismiss**

REQUEST FOR JUDICIAL INTERVENTION

Supreme Court, New York County    INDEX #: ~~10067/06~~
100071/06                      DATE PURCHASED:

P# 119-OK

| | For Clerk Only |
|---|---|
| KATHRYN FJELD, | |
| Plaintiff, | IAS ENTRY DATE |
| - against - | |
| INTERNATIONAL BUSINESS MACHINES, INC., d/b/a IBM, ISOGON CORPORATION, TETRAGON, L.L.C., STEVEN BARRITZ, ROBERT BARRITZ, PETER KASSAN, PER HELBERG, DAVID VARDI and STEVEN YOUCHNOW, | JUDGE ASSIGNED |
| 3-6-06    Defendants. | RJI DATE |

Date issue joined: _____    Bill of particulars served: [ ]Yes [X]No

.................................................................................................................

**NATURE OF JUDICIAL INTERVENTION** (check ONE box only and enter information)

[ ] Request for preliminary conference
[ ] Note of issue and/or certificate of readiness
[X] Notice of motion (return date  March 6, 2006 @ 9:30AM)
     Relief sought  Motion to Dismiss
[ ] Order to show cause (clerk enter return date._____)
     Relief sought _
[ ] Other ex parte application (specify _____)
[ ] Notice of petition (return date _____)
     Relief sought _____
[ ] Notice of medical or dental malpractice action (specify _____)
[ ] Statement of net worth
[ ] Writ of habeas corpus
[ ] Other (specify _____)

FEB  7 2006

**NATURE OF ACTION OR PROCEEDING** (check ONE box only) **MATRIMONIAL**

|  |  |
|---|---|
| [ ] Contested | - CM |
| [ ] Uncontested | - UM |

**COMMERCIAL**

|  |  |
|---|---|
| [ ] Contract | - CONT |
| [ ] Corporate | - CORP |
| [ ] Insurance (where insurer is a party, except arbitration | - INS |
| [ ] UCC (including sales, negotiable instruments) | -UCC |
| [ ] *Other Commercial | - OC |

**TORTS**

|  |  |
|---|---|
| Malpractice | |
| [ ] Medical/Podiatric | - MM |
| [ ] Dental | - DM |
| [ ] *Other Professional | - OPM |
| [ ] Motor Vehicle | - MV |
| [ ] *Products Liability _____ | - PL |
| [ ] Environmental | - EN |
| [ ] Asbestos | - ASB |
| [ ] Breast Implant | - BI |
| [ ] *Other Negligence | - OTN |
| [X] *Other Tort(incl intentional) Negligence | - OT |

**45 DAY RULE DATE-**
**4-20-06**

G286549.1

099998/099500

# REQUEST FOR JUDICIAL INTERVENTION

Supreme Court, New York County    INDEX #: 10067/06    DATE PURCHASED:

| | For Clerk Only |
|---|---|
| KATHRYN FJELD,<br><br><br>                            Plaintiff,<br><br>    - against -<br><br><br>INTERNATIONAL BUSINESS MACHINES, INC.,<br>d/b/a IBM, ISOGON CORPORATION,<br>TETRAGON, L.L.C., STEVEN BARRITZ,<br>ROBERT BARRITZ, PETER KASSAN, PER HELBERG,<br>DAVID VARDI and STEVEN YOUCHNOW,<br><br><br>                     Defendants. | <br>_____<br>**IAS ENTRY DATE**<br><br><br>_____<br>**JUDGE ASSIGNED**<br><br><br>_____<br>**RJI DATE** |

Date issue joined: _____    Bill of particulars served: [ ]Yes [X]No

...................................................................................................................

NATURE OF JUDICIAL INTERVENTION (check ONE box only and enter information)

    [ ] Request for preliminary conference
    [ ] Note of issue and/or certificate of readiness
    [X] Notice of motion (return date _March 6, 2006@ 9:30AM_)
         Relief sought _Motion to Dismiss)_
    [ ] Order to show cause (clerk enter return date._____)
         Relief sought
    [ ] Other ex parte application (specify _____)
    [ ] Notice of petition (return date _____)
         Relief sought _____
    [ ] Notice of medical or dental malpractice action (specify _____)
    [ ] Statement of net worth
    [ ] Writ of habeas corpus
    [ ] Other (specify _____)

NATURE OF ACTION OR PROCEEDING (check ONE box only)MATRIMONIAL

    [ ] Contested              - CM
    [ ] Uncontested          - UM

COMMERCIAL

    [ ] Contract              - CONT
    [ ] Corporate           - CORP
    [ ] Insurance (where insurer is a party, except
         arbitration            - INS
    [ ] UCC (including sales,     -UCC
         negotiable instruments)
    [ ] *Other Commercial     - OC

    _____

TORTS

Malpractice
    [ ] Medical/Podiatric     - MM
    [ ] Dental            - DM
    [ ] *Other Professional   - OPM

    _____

[ ] Motor Vehicle         - MV
[ ] *Products Liability _____ - PL

[ ] Environmental       - EN

[ ] Asbestos          - ASB
[ ] Breast Implant      - BI
[ ] *Other Negligence   - OTN

[X] *Other Tort(incl intentional)   - OT
    _____Negligence

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF YORK

---

KATHRYN FJELD,

Plaintiff,

- against -

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

Defendants.

---

**NOTICE OF MOTION
TO DISMISS**

Index No. 100071/2006

---

**PLEASE TAKE NOTICE** that upon the annexed Affirmation of Laurie B. Cascino (the "Cascino Affirmation"), the exhibits annexed thereto, and all prior pleadings and proceedings had herein, defendants Steven Barritz and Robert Barritz, will move before the Supreme Court of the State of New York, New York County, *SUBMISSION PART, Room 130,* located at 60 Centre Street, New York, New York, on the 6th day of March, 2006, at 9:30 a.m., or as soon thereafter as counsel may be heard, for an Order pursuant to section 3211(a)(7) of the New York Civil Practice Law and Rules ("CPLR"): (a) granting defendants Steven Barritz and Robert Barritz's motion to dismiss the First, Second, Third and Fourth Causes of Action, as alleged against them, in plaintiff's Verified Complaint filed on January 4, 2006; and (b) for such other and further relief as may be just, proper and equitable.

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR 2214(b), your answering papers, if any, must be served not less than (7) days prior to the return date of this motion.

G288577.1

Dated:  Garden City, New York
       February 7, 2006

NIXON PEABODY LLP


By: _Laurie Cas_____
    Joseph J. Ortego
    Laurie B. Cascino
*Attorneys for Defendants*
*Steven Barritz and Robert Barritz*
990 Stewart Avenue
Garden City, New York 11530-4838
(516) 832-7500

TO:    Gerald A. Bunting, Esq.
      Law Offices of Gerald A. Bunting
      Attorneys for Plaintiff
      114 Old Country Road
      Suite 616
      Mineola, NY  14623
      (516) 248.2366

      Diane Krebs, Esq.
      Gordon & Rees LLP
      Attorneys for Defendants
      IBM, Isogon Corporation, Per Helberg and
      Steven Youchnow
      One Liberty Plaza, 23d Floor
      New York, NY  10006
      (212) 201-6777


      Tetragon, LLC
      57 Ira Place
      Syosset, New York 11791

      Peter Kassan
      330 Seventh Avenue
      New York, New York 10001

      David Vardi
      330 Seventh Avenue
      New York, New York 10001

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF YORK

KATHRYN FJELD,

                                        Plaintiff,

            - against -                                    **AFFIRMATION**

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,                 Index No. 100071/2006
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

                                        Defendants.

        LAURIE B. CASCINO, an attorney duly admitted to practice before the Courts of the

State of New York, affirms the truth of the following under penalty of perjury:

        1.      I am associated with the law firm of Nixon Peabody LLP, attorneys for defendants

Steven Barritz and Robert Barritz.  As such, I am fully familiar with the facts and circumstances

of this case based upon a review of the file maintained by my office.

        2.      This affirmation is respectfully submitted in support of defendants motion for an

Order, pursuant to New York Civil Practice Law and Rules 3211(a)(7), granting defendants

Steven Barritz and Robert Barritz's motion to dismiss the First, Second, Third and Fourth Causes

of Action as alleged against them in plaintiff's Complaint dated December 28, 2005.

        3.      A true and correct copy of plaintiff's Summons and Verified Complaint filed

January 4, 2006 is annexed hereto as Exhibit "A".

WHEREFORE, it is respectfully requested that defendants Steven Barritz and Robert Barritz's motion to dismiss be granted in its entirety, together with such other and further relief as this Court deems just and proper.

Dated:  February 7, 2006
        Garden City, New York

                                    _____
                                         Laurie B. Cascino

TO:     Gerald A. Bunting, Esq.
        Law Offices of Gerald A. Bunting
        Attorneys for Plaintiff
        114 Old Country Road
        Suite 616
        Mineola, NY  14623
        (516) 248.2366

        Diane Krebs, Esq.
        Gordon & Rees LLP
        Attorneys for Defendants
        IBM, Isogon Corporation, Per Helberg and
        Steven Youchnow
        One Liberty Plaza, 23d Floor
        New York, NY  10006
        (212) 201-6777

        Tetragon, LLC
        57 Ira Place
        Syosset, New York 11791

        Peter Kassan
        330 Seventh Avenue
        New York, New York 10001

        David Vardi
        330 Seventh Avenue
        New York, New York 10001

- 2 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

KATHRYN FJELD,

Plaintiff,

- against -

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

Defendants.

Index No. 100071/2006

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS STEVEN BARRITZ AND
## ROBERT BARRITZ'S MOTION TO DISMISS THE COMPLAINT

Nixon Peabody LLP
990 Stewart Avenue
Garden City, New York 11530
(516) 832-7500

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

I. Plaintiff's Second Cause of Action for Intentional Infliction
  of Emotional Distress Fails as a Matter of Law.................................................... 1

   A.   Plaintiff Fails to Allege "Extreme and Outrageous Conduct". ..................... 1

   B.   The Statute of Limitations Bars Plaintiff's Claim
      for Intentional Infliction of Emotional Distress................................................ 4

CONCLUSION............................................................................................................. 5

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Boyce v. New York City Mission Society*, 963 F. Supp. 290 (S.D.N.Y. 1997) ....................3

*Mariani v. Consolidated Edison Co.,* 982 F. Supp. 267 (S.D.N.Y. 1997) ..........................4

*Ponticelli v. Zurich Am. Ins. Group,* 16 F. Supp. 2d 414 (S.D.N.Y. 1998) ........................2

## STATE CASES

*Foley v. Mobile Chemical Co.,* 214 A.D.2d 1003 (4th Dep't 1995) ....................................2

*Harville v. Lowville Central School District,* 245 A.D.2d 1106 (4th Dep't 1997) ..............2

*Howell v. New York Post Co.,* 81 N.Y.2d 115 (1993) ....................................................1, 2

*McIntyre v. Manhattan Ford,* 256 A.D.2d 269 (1st Dep't 1998) ........................................1

*Misek-Falkoff v. Keller,* 153 A.D.2d 841 (2d Dep't 1989) ............................................3, 4

*Murphy v. American Home Products Corp.*, 58 N.Y.2d 293 (1983) ....................................2

*Weisman v. Weisman,* 108 A.D.2d 853 (2d Dep't. 1985). ..................................................4

*Wilson v. DiCaprio,* 278 A.D.2d 25 (1st Dep't 2000) ........................................................2

## PRELIMINARY STATEMENT

Defendants, Steven Barritz and Robert Barritz reference and specifically incorporate herein the arguments asserted in the Memorandum of Law and Affirmation of Diane Krebs submitted by Gordon & Rees, LLP, counsel for co-defendants IBM, Isogon Corporation, Per Helberg and Steven Youchnow, in support of defendants' motion to dismiss. As such, defendants Steven Barritz and Robert Barritz move to dismiss, as alleged against them, the First, Third and Fourth Causes of Action of plaintiff's Complaint. In addition, defendant Steven Barritz moves to dismiss the Second Cause of Action of plaintiff's Complaint for intentional infliction of emotional distress on the grounds set forth below.

**I.    Plaintiff's Second Cause of Action for Intentional**
**Infliction of Emotional Distress Fails as a Matter of Law.**

**A.    Plaintiff Fails to Allege "Extreme and Outrageous Conduct".**

The requirements for stating a claim for intentional infliction of emotional distress in New York are "rigorous[] and difficult to satisfy." Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993). Indeed, "intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort." McIntyre v. Manhattan Ford, 256 A.D.2d 269, 270 (1st Dep't 1998). In fact, the Court of Appeals has noted that "of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous." Howell, 81 N.Y.2d at 122. To establish a claim for intentional infliction of emotional distress, four elements must be present: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress. Id. at 121. The first of these elements – extreme and outrageous conduct –

is, in the first instance, an issue for the court to decide as a matter of law. <u>Harville v. Lowville Central School Dist.</u>, 245 A.D.2d 1106, 1107 (4th Dep't 1997).

To satisfy this element, the conduct alleged must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Murphy v. American Home Prods. Corp.</u>, 58 N.Y.2d 293, 303 (1983) (quoting Restatement [Second] Torts, §46, comment d). Stated another way, the conduct "must consist of more than insults, indignities and annoyances." <u>Harville</u>, 245 A.D.2d at 1107.

In particular, there can be no emotional distress recovery for mere profanity or abuse, such as that alleged by plaintiff herein. Prosser, Torts §12 at 54 [4th Ed.]. Here, plaintiff's Complaint merely alleges that Steven Barritz sent plaintiff harassing emails. She makes no claims of physical or other abuse by defendant. Thus, plaintiff's allegations do not, as a matter of law, amount to the type of "reprehensible behavior" that is "utterly intolerable in a civilized society" and for which the "emotional distress" cause of action was formulated to redress. <u>Howell</u>, 81 N.Y.2d at 122. Indeed, far more unseemly conduct has been found insufficient to meet the rigorous requirements of this cause of action. <u>See</u> <u>e.g.</u>, <u>Ponticelli v. Zurich Am. Ins. Group</u>, 16 F. Supp. 2d 414 (S.D.N.Y. 1998) (finding defendant's yelling at plaintiff, calling her "stupid" and "foolish", and "fucking bitch" and pushing her into a filing cabinet did not constitute extreme or outrageous conduct); <u>Wilson v. DiCaprio</u>, 278 A.D.2d 25, 25-26 (1st Dep't 2000) (intentional infliction claim based on defendant's intentional incitement and participation in group assault and battery properly dismissed because it was not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"); <u>Foley v. Mobile Chemical Co.</u>, 214 A.D.2d 1003, 1004-05 (4th

Dep't 1995) (allegations of battery and sexual harassment "not so outrageous in character" to constitute intentional infliction of distress); Misek-Falkoff v. Keller, 153 A.D.2d 841, 842 (2d Dep't 1989) (telling plaintiff's supervisors and co-employees that plaintiff had criminally assaulted defendant, and stating that she needed psychiatric treatment, likening her to an emotionally disturbed child, did not rise to level of intentional infliction of emotional distress).

Boyce v. New York City Mission Society, 963 F. Supp. 290, 297 (S.D.N.Y. 1997), is instructive here. In Boyce, the plaintiff brought an intentional infliction of emotional distress claim against the defendants. The plaintiff claimed that the defendants engaged in acts against her which included "yelling, cursing, belittling her doctoral degree, assigning secretarial duties to her, indicating that she was not liked, pounding on her office door when it was closed, . . . indicating that [one of them] would put his foot up her ass[,] . . . termination of her employment[,] and confining her to the office so that she could not leave." Id. at 292, 297.

In dismissing plaintiff's intentional infliction of emotional distress claim, the court stated that "New York courts have imposed a rigorous standard with respect to [intentional infliction of emotional distress claims]." Id. at 297. The court found that while the conduct complained of by the plaintiff was "certainly not to be condoned nor considered acceptable, it does not qualify as being so outrageous and extreme in character that it goes beyond all bounds of decency." Id.

So to, here, although Mr. Barritz's conduct may have been inappropriate, it certainly did not "go[] beyond all bounds of decency." Simply stated, the alleged conduct was not extreme and outrageous under New York law, and therefore plaintiff's intentional infliction of emotional distress claim should be dismissed.

**B.    The Statute of Limitations Bars Plaintiff's Claim
for Intentional Infliction of Emotional Distress.**

Finally, it is clear that a cause of action for intentional infliction of emotional distress is limited to conduct that occurred within the one-year period immediately preceding the commencement of the action. CPLR 215(3); Mariani v. Consolidated Edison Co., 982 F. Supp. 267, 273 (S.D.N.Y. 1997) ("when applying the one year statue of limitations to claims of intentional infliction of emotional distress, all acts occurring before the limitations period are excluded from consideration"); see also Misek-Falkoff, 153 A.D.2d 841; Weisman v. Weisman, 108 A.D.2d 853 (2d Dep't. 1985).

This is a critical constraint in this case for two reasons. First, defendant Steven Barritz is entitled, at a minimum, to an order limiting plaintiff's emotional distress claim to conduct occurring between January 4, 2005 and April 2005[1]; one year before the January 4, 2006 filing date of this action. See Complaint, annexed as Exh. A to the Affirmation of Laurie B. Cascino ("Cascino Aff."). Second, the truncated limitations period applicable to this type of claim makes plaintiff's cause of action that much less viable because it cannot be premised upon purported "repeated" conduct "throughout" the 7 years she worked with defendant Steven Barritz (Complaint ¶13); it can only be premised upon more limited conduct within a four month period of time. Thus, the "outrageousness" of plaintiff's allegations is severely diluted because of the shortened period during which predicate conduct could have occurred as demonstrated by the sparse reference to allegedly harassing emails sent to plaintiff after 2004. See Complaint ¶33.

Simply stated, plaintiff has failed to state a claim for the intentional infliction of emotional distress because the conduct about which she complains not only fails to meet the

---

[1]    Plaintiff was no longer employed by Isogon after April 2005. Complaint ¶9. Defendant Steven Barritz maintains that the emotional distress claim should be dismissed in its entirety, and thus, seeks this limiting order only as alternative relief.

"extreme and outrageous" standard, but occurred outside the one year statute of limitations under

New York law.

## CONCLUSION

For all the foregoing reasons, defendants respectfully request dismissal of plaintiff's

First, Second, Third and Fourth causes of action, as against Steven Barritz and Robert Barritz.

Dated: Garden City, New York
        February 7, 2006

                     NIXON PEABODY LLP


By: _____
              Joseph J. Ortego
              Laurie Cascino
              Nixon Peabody LLP
              990 Stewart Avenue
              Garden City, New York 11530
              (516) 832-7500

TO:    Gerald A. Bunting, Esq.
       Law Offices of Gerald A. Bunting
       Attorneys for Plaintiff
       114 Old Country Road
       Suite 616
       Mineola, NY 14623
       (516) 248.2366

       Diane Krebs, Esq.
       Gordon & Rees LLP
       Attorneys for Defendants
       IBM, Isogon Corporation, Per Helberg and
       Steven Youchnow
       One Liberty Plaza, 23rd Floor
       New York, NY 10006
       (212) 201-6777

       Tetragon, LLC
       57 Ira Place
       Syosset, New York 11791

Peter Kassan
330 Seventh Avenue
New York, New York 10001

David Vardi
330 Seventh Avenue
New York, New York 10001

Kathryn Fjeld

v.

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ,

07 Civ. 10355 (CM/HBP)


Exhibit "D"

IBM and Isogon's Motion to Dismiss

UCS-840(REV 1/2000)

## REQUEST FOR JUDICIAL INTERVENTION

| | | For Clerk Only |
|---|---|---|
| **SUPREME** COURT, | **NEW YORK**, COUNTY | |
| INDEX NO. **100071/2006** | DATE PURCHASED: | |
| Plaintiff(s)<br>KATHRYN FJELD | | IAS entry date |
| -against- | | Judge Assigned |
| Defendant(s)<br>INTERNATIONAL BUSINESS MACHINES, INC.,<br>d/b/a IBM, ISOGON CORPORATION,<br>TETRAGON, L.L.C., STEVEN BARRITZ,<br>ROBERT BARRITZ, PETER KASSAN, PER HELBERG,<br>DAVID VARDI and STEVEN YOUCHNOW, | | RJI Date |

Date issue joined: _____ Bill of particulars served (Y/N): [ ]Yes    [X]No
..............................................................................................

**NATURE OF JUDICIAL INTERVENTION** (check **ONE** box only **AND** enter information)

[ ] Request for preliminary conference

[ ] Note of issue and/or certificate of
    readiness

[X] Notice of motion (return date: (02-28-06)
    Relief sought MOTION TO DISMISS

[ ] Order to show cause
    (clerk enter return date:_____)
    Relief sought _____
[ ] Other ex parte application (specify:
    _____

[ ] Notice of petition (return date: ____)
    Relief sought:

[ ] Notice of medical or dental malpractice
    action (specify:_____)

[ ] Statement of net worth

[ ] Writ of habeas corpus

[ ] Other (specify: _____

_____ )

**NATURE OF ACTION OR PROCEEDING** (Check **ONE** box only)

**MATRIMONIAL**
[ ] Contested                          -CM
[ ] Uncontested                        -UM

**COMMERCIAL**
[ ] Contract                           -CONT
[ ] Corporate                          -CORP
[ ] Insurance (where insurer is a
    party, except arbitration)         -INS
[ ] UCC (including sales, negotiable
    instruments)                       -UCC
[ ] *Other Commercial                  -OC
    breach of implied warranty of performance

**REAL PROPERTY**
[ ] Tax Certiorari                     -TAX
[ ] Foreclosure                        -FOR
[ ] Condemnation                       -COND
[ ] Landlord/Tenant                    -LT
[ ] *Other Real Property               -ORP

**OTHER MATTERS**
[X] *EMPLOYMENT                        -OTH

If asterisk used, please specify.

**TORTS**
Malpractice
[ ] Medical/Podiatric                  -MM
[ ] Dental                             -DM
[ ] *Other Professional                -OPM

[ ] Motor Vehicle                      -MV
[ ] *Products Liability                -PL

[ ] Environmental                      -EN
[ ] Asbestos                           -ASB
[ ] Breast Implant                     -BI
[ ] *Other Negligence                  -OTN

[ ] *Other Tort (including
    intentional)                       -OT

**SPECIAL PROCEEDINGS**
[ ] Art. 75 (Arbitration)              -ART75
[ ] Art. 77 (Trusts)                   -ART77
[ ] Art. 78                            -ART78
[ ] Election Law                       -ELEC
[ ] Guardianship (MHL Art. 81)         -GUARD81
[ ] *Other Mental Hygiene              -MHYG

[ ] *Other Special Proceeding          -OSP

## RIDER

## DEFENDANTS THAT HAVE NOT APPEARED

Tetragon, LLC
57 Ira Place
Syosset, NY

Mr. Peter Kassan
330 Seventh Avenue
New York, NY 10001

Mr. David Vardi
330 Seventh Avenue
New York, NY 10001

CBCO\1035823\913276.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
KATHRYN FJELD,

                          Plaintiff,                          Index No.: 100071/2006

            - against –                                      **NOTICE OF MOTION**

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

                          Defendants.
-------------------------------------------------------------------X

     **PLEASE TAKE NOTICE,** that upon the annexed affirmation of Mercedes Colwin,

dated February 7, 2006, the accompanying memorandum of law, and upon all prior pleadings

and proceedings heretofore had herein, the undersigned will move this Court at the courthouse

located at 60 Centre Street, New York, NY 10007, on the 28th day of February, 2006, at 9:30

o'clock in the forenoon or as soon thereafter as counsel can be heard for an order pursuant to

CPLR § 3211 dismissing the plaintiff's claims for negligent infliction of emotional distress (the

Fourth Cause of Action) as against defendants Per Hellberg and Steven Youchnow, and the Fifth

unspecified Cause of Action as against defendants IBM and Isogon Corporation on the grounds

that they fail to state a cause of action, and for such other and further relief as this Honorable

Court may deem just, proper, and equitable.


     **PLEASE TAKE FURTHER NOTICE,** that answering papers and reply papers, if any,

must be served at least seven (7) days and one (1) day, respectively, prior to the return date of

this motion, pursuant to Rule 2214(b) of the CPLR.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
KATHRYN FJELD,

                              Plaintiff,                          Index No.: 100071/2006

                                                                 **AFFIRMATION**

              - against –

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

                              Defendants.
-------------------------------------------------------------------X

        MERCEDES COLWIN, an attorney duly admitted to practice law before the Courts of
the State of New York, affirms the following to be true under the penalties of perjury:

        1.      I am a partner with the law firm of Gordon & Rees, LLP, attorneys for
Defendants IBM, Isogon Corporation ("Isogon"), Per Hellberg ("Hellberg") and Steven
Youchnow ("Youchnow") (collectively referred to herein as "Defendants").  As such, I am fully
familiar with all of the facts and proceedings set forth herein.

        2.      This affirmation is submitted in support of Defendants' motion, pursuant to CPLR
§ 3211, to dismiss plaintiff's claims in her Complaint for negligent infliction of emotional
distress (the Fourth Cause of Action) as against defendants Per Hellberg and Steven Youchnow,
and the unspecified Fifth Cause of Action as against defendants IBM and Isogon Corporation.

        3.      Plaintiff contends in her Fourth Cause of Action that, because they were officers
and principals of Isogon, defendants Hellberg and Youchnow knew or should have known of the
sexual harassment purportedly being directed at Plaintiff by Isogon employee Steven Barritz.
Plaintiff further alleges that because they knew or should have known of the alleged harassment,
defendants Hellberg and Youchnow are liable for negligent infliction of emotional distress.

1

4.    It is unclear what Plaintiff is attempting to claim in the Fifth Cause of Action. Plaintiff states some conclusions that are apparently designed to support a sexual harassment claim, but there is no indication as to their statutory basis.

## RELEVANT BACKGROUND[1]

5.    While employed as a Product Manager at Isogon, Plaintiff was allegedly subjected to sexual harassment by the conduct of Steven Barritz, who was also an Isogon employee and the son of one of the shareholders, defendant Robert Barritz. The alleged conduct consisted solely of e-mail messages and there is no allegation of any actual or attempted physical contact.

6.    Defendants Hellberg and Youchnow were shareholders of defendant Isogon.

7.    Defendant Isogon was acquired by defendant IBM, and no longer has a separate corporate identity.

## SUMMARY OF ARGUMENT

8.    Plaintiff's Fourth Cause of Action alleges defendants Hellberg and Youchnow are liable for negligent infliction of emotional distress. However, this claim suffers from an at least two insurmountable, fatal defects. First, the case law makes clear that the New York Workers' Compensation Law provides the sole and exclusive remedy for negligence claims, including claims for negligent infliction of emotional distress, against an employer. Additionally, the workers' compensation exclusivity provision applies to both employers and their agents. Therefore, Plaintiff's claim should be dismissed as barred by the Workers' Compensation Law.

9.    Second, Plaintiff does not allege facts sufficient to support a claim for negligent infliction of emotional distress. There are at least two areas in which the facts are deficient: (1) Plaintiff alleges no special duty by Hellberg and Youchnow owed to her other than the duty to obey the law; and (2) Plaintiff does not allege any manner of physical touching, or that she was

---

[1]    On a motion to dismiss, all facts listed in the Complaint are presumed true for purposes of the motion, and Defendants do so here solely for that purpose.  The facts are therefore taken from the Complaint.

2

placed in fear of physical impact or injury.  As case law clearly demonstrates, Plaintiff's negligence claim should properly be dismissed in such circumstances.

10.    It is not entirely clear what the basis is of Plaintiff's Fifth Cause of Action against Defendants IBM and Isogon.  Based on some conclusory statements within the Complaint, it appears Plaintiff is attempting to state some manner of sexual harassment claim, but the Cause of Action is not sufficiently particular such that the Defendants can determine the relief Plaintiff seeks or the applicable standards, as required by law.  This has deprived the IBM and Isogon of adequate notice and the ability to prepare a response and/or defense.  Indeed, the claim is wholly devoid of any statutory or other basis for relief.  Accordingly, the Fifth Cause of Action is defective on its face and should be dismissed.

Dated: New York, New York
        February 7, 2006

                                        Respectfully submitted,

                                        GORDON & REES LLP

                                        By:
                                            Mercedes Colwin, Esq.
                                        Attorneys for Defendants
                                        IBM, Isogon Corporation, Per Hellberg and
                                        Steven Youchnow
                                        One Liberty Plaza
                                        23d Floor
                                        New York, NY  10006
                                        (212) 201-6777

TO:    Gerald A. Bunting, Esq.
       Law Offices of Gerald A. Bunting
       Attorneys for Plaintiff
       114 Old Country Road
       Suite 616
       Mineola, NY  14623
       (516) 248-2366

       Joseph Ortego, Esq.
       Nixon Peabody LLP
       Attorneys for Defendants Robert Barritz and Steven Barritz
       990 Stewart Avenue
       Garden City, NY 11530

Tetragon, LLC
57 Ira Place
Syosset, NY

Mr. Peter Kassan
330 Seventh Avenue
New York, NY  10001

Mr. David Vardi
330 Seventh Avenue
New York, NY  10001

:HUBB\1035877\951336.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
KATHRYN FJELD,

                Plaintiff,                        Index No.: 100071/2006

                - against –

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN, PER HELBERG,
DAVID VARDI and STEVEN YOUCHNOW,

                Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT
## OF THE MOTION OF DEFENDANTS
## IBM, ISOGON CORPORATION, PER HELLBERG AND STEVEN YOUCHNOW
## TO DISMISS THE COMPLAINT

On The Brief:
Mercedes Colwin, Esq.
Diane Krebs, Esq.

### GORDON & REES, LLP
ATTORNEYS FOR DEFENDANTS
**IBM, ISOGON CORPORATION, PER HELLBERG and STEVEN YOUCHNOW**
ONE LIBERTY PLAZA, 23RD FLOOR
NEW YORK, NEW YORK 10006
PHONE: (212) 201.6777
FAX:  (212) 201.6778

# TABLE OF CONTENTS

PRELIMINARY STATEMENT................................................................1

STATEMENT OF FACTS.................................................................2

ARGUMENT..............................................................................2

    **I.**    **Plaintiff's Fourth Cause of Action for Negligent Infliction Of Emotional Distress Fails to State a Claim Against Per Hellberg and Steven Youchnow**......................................2

        A. Plaintiff's Negligence Claim Is Barred By the Workers' Compensation Law...................................................2

        B. Plaintiff Does Not Allege Facts Sufficient to Support a Claim of Negligent Infliction of Emotional Distress...............................4

            1.    *No Special Duty Was Owed to Plaintiff by Hellberg and Youchnow*......................................................4

            2.    *Plaintiff Was Not Subjected To a Threat of Physical Impact or Injury*..............................................................5

    **II.**    **Plaintiff's Unspecified Fifth Cause of Action Fails to State a Claim Against IBM and Isogon Corporation**...................................6

**CONCLUSION**............................................................................6

## PRELIMINARY STATEMENT

During the course of Plaintiff's employment with Isogon Corporation ("Isogon"), she allegedly suffered sexual harassment perpetrated by an Isogon employee. As a result, Plaintiff sued, among others, Isogon, two of Isogon's former shareholders, Per Hellberg ("Hellberg") and Steven Youchnow ("Youchnow"), and its current parent company, International Business Machines ("IBM"), which acquired Isogon after the conduct in Plaintiff's complaint allegedly occurred (collectively, "Defendants"). In an apparent ignorance of the New York Worker's Compensation Law, Plaintiff alleged negligence claims against the Isogon shareholders individually for infliction of emotional distress (Fourth Cause of Action). Plaintiff also alleges claims against IBM and Isogon, although it is unclear exactly what the claims are, as set forth in Plaintiff's Fifth Cause of Action.

Neither of these causes of action can be sustained. First, the negligent infliction of emotional distress claim suffers from at least two fatal defects. Most glaringly, Plaintiff's negligence claims against her employer are barred by the Worker's Compensation Law. Additionally, beyond that insurmountable obstacle, Plaintiff fails to allege facts sufficient to support a claim of negligent infliction of emotional distress. Therefore, the Fourth Cause of Action should be dismissed.

Plaintiff's claims in her Fifth Cause of Action are similarly deficient. Other than proffering some conclusory statements regarding sexual harassment, Plaintiff fails to identify the basis for which she believes she is entitled to relief. Indeed, defendants IBM and Isogon have no idea upon which statute or other ground Plaintiff is making her claims. As the claim currently stands, the Defendants have not been provided adequate notice of any potential liabilities and cannot determine the relief Plaintiff seeks or the appropriate applicable standards for Plaintiff's claim, as required by law. As such, the defendants cannot prepare a response and/or defense. Accordingly, the Fifth Cause of Action is defective on its face and should be dismissed.

## STATEMENT OF FACTS[1]

Plaintiff, a female, was employed as a Product Manager by defendant Isogon from April 1996 to April 2005. (Complaint ¶ 9). During the course of her employment, Plaintiff was allegedly subjected to sexual harassment perpetrated by defendant Steven Barritz, who was also employed at Isogon as a marketing manager and is the son of Robert Barritz, one of Isogon's shareholders. (Comp. ¶¶ 10-12). The nature of the harassment consisted solely of e-mail communications between Steven Barritz and Plaintiff. Plaintiff alleges no actual or attempted physical touching. (Comp. ¶¶ 18-33).

IBM acquired Isogon, which has ceased to have an independent corporate identity. (Comp. ¶ 4). Defendants Hellberg and Youchnow were shareholders of Isogon during the course of Plaintiff's employment. (Comp. ¶ 8). Plaintiff does not allege Hellberg or Youchnow participated in any harassing conduct towards her, but does believe they knew of the harassment by Steven Barritz. (Comp. ¶ 34).

## ARGUMENT

### I.   Plaintiff's Fourth Cause of Action for Negligent Infliction Of Emotional Distress Fails to State a Claim Against Per Hellberg and Steven Youchnow

Plaintiff's Fourth Cause of Action alleges Hellberg and Youchnow are liable for negligent infliction of emotional distress. However, this claim is fatally deficient because any negligence claim against an employer and its agents is barred by the New York Workers' Compensation Law. Moreover, even beyond the Workers' Compensation prohibition, Plaintiff fails to allege facts sufficient to support a claim for negligent infliction of emotional distress.

#### A.   The Workers' Compensation Law Provides the Sole and Exclusive Remedy to Employees Injured By the Negligence of An Employer

The Worker's Compensation Law is abundantly clear that "[t]he right to compensation or benefits under this chapter, *shall be the exclusive remedy* to an employee...when such employee is injured or killed by the *negligence* or wrong of another in the same employ." N.Y. Workers'

---

[1]      On a motion to dismiss, all facts listed in the Complaint are presumed true for purposes of the motion, and Defendants do so here solely for that purpose. The facts are therefore taken from the Complaint. Defendants reserve their right to challenge the allegations in the future.

Comp. L. § 29(6) (McKinney 2005) (emphasis added). *See, e.g., Miller v. Huntington Hospital,* 15 A.D.3d 548, 550 (2nd Dept. 2005) (holding employer's negligent exposure of an employee to a substantial risk of injury insufficient to circumvent the exclusivity of the Workers' Compensation Law); *Gerson v. Giorgio Sant'Angelo Collectibles, Inc.,* 176 Misc. 2d 388, 392 (N.Y. Sup. Ct. N.Y. Cty. 1998) (holding Workers' Compensation Law bars negligent infliction of emotional distress claim in sexual harassment action); *Souffrant et al., v. Quality Wholesale Veal Center, Inc.,* 135 A.D.2d 398 521 N.Y.S.2d 696, 697 (1st Dept. 1987) (recognizing plaintiff's negligence claims against employer were barred by Workers' Compensation Law); *Hayles v. Advanced Travel Management Corporation,* No. 01 Civ.10017 (BSJ) (DFE), 2004 WL 26548, at *14 (S.D.N.Y. Jan. 5, 2004) (holding "New York Workers' Compensation Law provides the exclusive remedy for injuries resulting from negligence in the workplace"); *Yaba v. Cadwalader, Wickersham & Taft,* 931 F. Supp. 271, 275 (S.D.N.Y. 1996) (holding "Workers' Compensation is the exclusive remedy of an employee who is injured by the negligence or wrong of another in the same employ").

Furthermore, courts have consistently held that claims for negligent infliction of emotional distress are among those negligence claims that are barred by the exclusivity provision. *See Gerson,* 176 Misc. 2d at 392; *Hayles,* 2004 WL 26548 at *14; *Arroyo v. Westlb Administration, Inc.,* 54 F. Supp. 2d 224, 232 (S.D.N.Y. 1999).

Moreover, "the workers' compensation exclusivity provision applies to those employers, ***and their agents***, that exercise supervision and control over an employee." *Greene-Wotton v. Fiduciary Trust Company International,* 324 F. Supp. 2d 385, 392 (S.D.N.Y. 2003) (emphasis added). *See also Druiett v. Brenner,* 193 A.D.2d 644, 645 (2nd Dept. 1993) (holding plaintiff barred by Workers' Compensation Law from suing owner of premises for personal injury because owner was officer of company that employed plaintiff); *Hayles,* 2004 WL 26548, at *14 (holding claims would also be barred as against individual defendants because they were acting as agents of the employer).

In light of the above considerable precedent, Plaintiff's claim is barred. Plaintiff makes clear she is alleging a claim for negligent infliction of emotional distress arising out of sexual harassment that occurred at her workplace. Moreover, Plaintiff makes this claim against

Hellberg and Youchnow, whom she admits were officers and shareholders of her employer, Isogon. This is the exact situation the exclusivity provision of the Workers' Compensation Law was designed to address, and there could be no better or clearer example in which to invoke it. Therefore, Plaintiff's cause of action for negligent infliction of emotional distress should be dismissed outright as barred by the Workers' Compensation Law.

        B.      <u>Plaintiff Does Not Allege Facts Sufficient to Support a Claim of Negligent Infliction of Emotional Distress.</u>

Independently of the fatal defect of being barred by the Workers' Compensation Law, Plaintiff's Fourth Cause of Action also fails because Plaintiff has not alleged any special duty owed by Hellberg and Youchnow, and Plaintiff was not subjected to a threat of physical impact or injury.

        1.     *No Special Duty Was Owed to Plaintiff by Hellberg and Youchnow.*

Plaintiff's claim for negligent infliction of emotional distress fails because she did not allege a special duty owed to her by Hellberg and Youchnow. In New York, "recovery for negligent infliction of emotional distress is circumscribed to unique facts where a special duty is owed." *Kojak v. Jenkins*, No. 98 CIV. 4412 (RPP), 1999 WL 244098, at *9 (S.D.N.Y. April 26, 1999) (in a sexual harassment action, law firm employee failed to allege special duty owed by superior). "Absent such a special duty, a claim for negligent infliction of emotional distress can not stand." *Abdullajeva v. Club Quarters, Inc.*, No. 96 Civ. 0383, 1996 WL 497029, at *9 (S.D.N.Y. Sept. 3, 1996) (dismissing claims for negligent infliction of emotional distress in sexual harassment action).

Here, Plaintiff has alleged nothing to suggest any special duty owed by Hellberg and Youchnow to her. Instead, Plaintiff merely alleges Hellberg and Youchnow are shareholders of Isogon and knew or should have known of the alleged harassment. Clearly, like the employee in *Kojak* who brought a negligent infliction of emotional distress claim against her superior, Plaintiff "has not alleged any special duty owed to her by [Hellberg and Youchnow] other than the duty to obey the law." *Kojak*, 1999 WL 244098, at *9. Therefore, because she has failed entirely to allege a special duty, the cause of action should be dismissed.

2.    *Plaintiff Was Not Subjected To a Threat of Physical Impact or Injury.*

Yet another fatal defect in Plaintiff's claim is that she fails to allege she was subjected to a threat of physical impact or injury. In *Gerson*, 176 Misc. 2d 388, this honorable Court had an occasion to examine a claim for negligent infliction of emotional distress in the context of a sexual harassment action. In addition to holding the claim to be barred by the Workers' Compensation Law (*see* Section I.A., *supra*), Judge Miller held that the claim should also be dismissed because the plaintiff failed to allege any fear of physical injury. *Id.* at 391-92. The Judge noted:

> [T]he circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety.

*Id.* at 391.

Indeed, negligent infliction of emotional distress "is not well suited to deal with sexual harassment not involving physical contact or threat thereof." *Id.* The Court went on to state, "[T]he case history of this state has shown that short of sexual assault or battery, or threat thereof, there will be no cause of action for negligent infliction of emotional distress." *Id.* at 392.

Here, as in *Gerson*, Plaintiff alleges absolutely nothing in her Complaint to indicate any sort of physical contact occurred. Instead, her allegations of harassment consist solely of rambling e-mail messages from defendant Steven Barritz, which involved no touching whatsoever. Moreover, Plaintiff does not allege Hellberg and Youchnow participated in, encouraged, or even knew of any physical touching against her, or put her in fear of physical injury. To the contrary, Plaintiff simply alleges Hellberg and Youchnow knew of the alleged harassment and failed to remedy it. These facts, even if true, fall woefully short of the standard described in *Gerson*. Accordingly, as in *Gerson*, Plaintiff fails to adequately state a cause of action for negligent infliction of emotional distress.

## II.    Plaintiff's Unspecified Fifth Cause of Action Fails to State a Claim Against IBM and Isogon Corporation

Plaintiff fails to identify in her Fifth Cause of Action a statutory or other basis for which she seeks relief from the Court.  Therefore, Defendants IBM and Isogon cannot determine the relief she seeks or the standards applicable to the cause of action, and the claim is insufficient as a matter of law.  CPLR § 3013 provides:

> Statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense.

N.Y. C.P.L.R. 3013 (McKinney 2005).

In pleading a cause of action, it is "essential...that the pleading enable the defendant to determine the nature of the plaintiff's grievances and the relief [she] seeks in consequence of the alleged wrongs."  *Shapolsky v. Shapolsky*, 22 A.D.2d 91 (1st Dept. 1964).  *See also, Barocas v. Schweikart & Co.*, 63 Misc. 2d 131, 134, 311 N.Y.S.2d 445, 448 (N.Y. City Civ. Ct. 1970).

Here, Plaintiff gives no indication as to her statutory or other basis for relief.  Instead, her cause of action contains several conclusory statements regarding equal protection and what appears to be a hostile environment harassment claim.  Yet, Plaintiff inexplicably does not set forth any allegations that would allow the defendants to determine the law or laws upon which she seeks relief.  Considering local and federal laws may contain different applicable standards, defendants are unable to prepare a response or defense unless Plaintiff gives them notice of her basis for relief.  Her pleading fails to do so on its face and consequently, the defendants cannot determine the relief she seeks.  The stark brevity of Plaintiff's claim is a direct indication of its lack of substance.  Accordingly, the Fifth Cause of Action should be dismissed as a matter of law.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request judgment in favor of Defendants and dismissal with prejudice of the Fourth Cause of Action, as against Hellberg and

Youchnow, and the Fifth Cause of Action, as against IBM and Isogon, and any other relief the Court deems just and proper.

Dated: New York, New York
      February 7, 2006

                           Respectfully submitted,

                           GORDON & REES LLP

                           By:   _____

                              Diane Krebs, Esq.
                           Attorneys for Defendants
                           IBM, Isogon Corporation, Per Hellberg and
                           Steven Youchnow
                           One Liberty Plaza
                           23rd Floor
                           New York, NY 10006
                           (212) 201.6777

TO:    Gerald A. Bunting, Esq.
       Law Offices of Gerald A. Bunting
       Attorneys for Plaintiff
       114 Old Country Road
       Suite 616
       Mineola, NY 14623
       (516) 248.2366

       Joseph Ortego, Esq.
       Nixon Peabody LLP
       Attorneys for Defendants Robert Barritz and Steven Barritz
       990 Stewart Avenue
       Garden City, NY 11530

       Tetragon, LLC
       57 Ira Place
       Syosset, NY

       Mr. Peter Kassan
       330 Seventh Avenue
       New York, NY 10001

       Mr. David Vardi
       330 Seventh Avenue
       New York, NY 10001

Kathryn Fjeld

v.

**INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ,**

**07 Civ. 10355 (CM/HBP)**

**Exhibit "E"**

**Stipulation**

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
-------------------------------------------------------------------x
KATHRYN FJELD                                               Index No. 100071/2006

                        Plaintiff,

                      - against -                           **STIPULATION**

INTERNATIONAL BUSINESS MACHINES, INC,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ, PETER KASSAN,
PER HELBERG, DAVID VARDI
and STEVEN YOUCHNOW,

                        Defendants.

-------------------------------------------------------------------x

          IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned
parties, that the motion by defendants, STEVEN BARRITZ and ROBERT BARRITZ originally
returnable on February 28, 2006, is hereby adjourned to May 31, 2006 and it is

          FURTHER STIPULATED AND AGREED that the Fourth Cause of Action for
negligent infliction of emotional distress is withdrawn with prejudice as against all defendants,
and it is

          FURTHER STIPULATED AND AGREED that the claim for intentional
infliction of emotional distress shall remain and not be amended and it is

          IT IS FURTHER STIPULATED AND AGREED that  Plaintiffs shall, by April
20, 2006, serve an amended complaint amending the First, Third and Fifth Cause of Action to
correct the deficiencies noted in Defendants' motion to dismiss, originally returnable on February
28, 2006.

Dated: March 23, 2006


_____
For Plaintiff Kathryn Fjeld
The Law Offices of Gerald Bunting
114 Old Country Road, Suite 616
Mineola, NY 11501


_____
For Defendants STEVEN BARRITZ and
ROBERT BARRITZ
Nixon Peabody, LLP
990 Stewart Avenue

G290925.1

**Kathryn Fjeld**

**v.**

**INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ,**

**07 Civ. 10355 (CM/HBP)**


**Exhibit "F"**

**Order dismissing plaintiff's January 2006 Complaint**

Case 1:07-cv-10554-OM Document 11-8 Filed 11/30/2007 Page 2 of 2

PRESENT: **JANE S. SOLOMON**
_Justice_

PART 55

Field, K

- v -

International

INDEX NO. 100071/06

MOTION DATE _____

MOTION SEQ. NO. 01

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... |  |
| Answering Affidavits — Exhibits |  |
| Replying Affidavits |  |

FILED
MAY 11 2006
NEW YORK
COUNTY CLERK'S

**Cross-Motion:** ☒ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion submitted on default plaintiff is granted & the complaint is dismissed // as against the non-appearing deft Steven Barrish and Robert Barrish. So that their complaint are dismissed in their entirety because the "Wherefore" clause first 4 claims in the seeks relief against only those two men on the first four Causes of Action. The Clerk is directed to enter judgment accordingly with costs & disbursements as filed, severing the remaining claims, but see decision in 002.

Dated: 5/3/06

**JANE S. SOLOMON**
J.S.C.

**Check one:** ☐ FINAL DISPOSITION ☑ NON-FINAL DISPOSITION

- 8 -

Kathryn Fjeld

v.

**INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ,**

**07 Civ. 10355 (CM/HBP)**

**Exhibit "G"**

**Defendants' Motion to Dismiss with Exhibits A – F
as Previously Annexed Above**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF YORK

| | |
|---|---|
| KATHRYN FJELD, | |
| Plaintiff, | |
| - against - | **NOTICE OF MOTION TO DISMISS** |
| INTERNATIONAL BUSINESS MACHINES, INC., d/b/a IBM, ISOGON CORPORATION, TETRAGON, L.L.C., STEVEN BARRITZ, ROBERT BARRITZ, | Index No. 113309/2007 |
| Defendants. | |

**PLEASE TAKE NOTICE** that upon the annexed Affirmation of Thomas M. Mealiffe (the "Mealiffe Affirmation"), the exhibits annexed thereto, Defendants' Memorandum of Law in Support, and all prior pleadings and proceedings had herein, defendants Steven Barritz and Robert Barritz, will move before the Supreme Court of the State of New York, New York County, in IAS Motion Part Room 130, located at 60 Centre Street, New York, New York, on the 29th day of November, 2007, at 9:30 a.m., or as soon thereafter as counsel may be heard, for an Order pursuant to section 3211(a)(7) of the New York Civil Practice Law and Rules ("CPLR"): (a) granting defendants Steven Barritz and Robert Barritz's motion to dismiss the First, Second, and Third Causes of Action, as alleged against them, in plaintiff's Verified Complaint; (b) awarding Defendants attorneys' fees and costs; and (c) for such other and further relief as may be just, proper and equitable.

- 2 -

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR 2214(b), your answering

papers, if any, must be served not less than (7) days prior to the return date of this motion.

Dated:  Jericho, New York
        November 7, 2007

                                        NIXON PEABODY LLP


                                        By: _____
                                            Joseph J. Ortego
                                            Thomas M. Mealiffe
                                        *Attorneys for Defendants*
                                        *Steven Barritz and Robert Barritz*
                                        50 Jericho Quadrangle
                                        Jericho, New York 11753
                                        (516) 832-7500


TO:     Gerald A. Bunting, Esq.
        Bunting, Goner & Associates PC
        1983 Marcus Avenue, Suite 117
        Lake Success, NY 11042
        (516) 358-8825

        Diane Krebs, Esq.
        Gordon & Rees LLP
        Attorneys for Defendants
        IBM, Isogon Corporation
        90 Broad Street, 23rd Floor
        New York, NY 10004
        (212) 239-5500

        Tetragon, LLC
        57 Ira Place
        Syosset, New York 11791

10790565.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF YORK

KATHRYN FJELD,

Plaintiff,

- against -

INTERNATIONAL BUSINESS MACHINES, INC.,
d/b/a IBM, ISOGON CORPORATION,
TETRAGON, L.L.C., STEVEN BARRITZ,
ROBERT BARRITZ,

Defendants.

**AFFIRMATION**

Index No. 113309/2007

Thomas M. Mealiffe, an attorney duly admitted to practice before the Courts of the State of New York, affirms the truth of the following under penalty of perjury:

1.     I am an associate with the law firm of Nixon Peabody LLP, attorneys for defendants Steven Barritz[1] and Robert Barritz (collectively referred to herein as "Defendants"). As such, I am fully familiar with the facts and circumstances of this case based upon a review of the file maintained by my office.

2.     This affirmation is respectfully submitted in support of Defendants motion for an Order, pursuant to New York Civil Practice Law and Rules 3211(a)(7), granting Defendants motion to dismiss the First, Second, and Third Causes of Action as alleged against them in plaintiff's Verified Complaint.

---

[1]     Defendant Steven Barritz reserves the right to dispute service of process in this matter, and does not consent to the personal jurisdiction of the Court through this Motion.

10790568.1

099371/000046

## Procedural History

3.    Plaintiff commenced this action with the filing of a Summons and Complaint on or about September 24, 2007.  Annexed hereto as Exhibit "A" is copy of plaintiff's Verified Complaint.

4.    Plaintiff previously commenced an action asserting identical causes of action against Defendants on or about January 4, 2006.  Annexed hereto as Exhibit "B" is a copy of the Complaint dated January 4, 2006.

5.    On or about February 7, 2006, Defendants moved to dismiss plaintiff's prior complaint pursuant to CPLR § 3211.  Annexed hereto as Exhibit "C" is a copy of Defendants' motion to dismiss.  On or about February 6, 2007, co-defendants IBM and Isogon also filed a motion to dismiss.  Annexed hereto as Exhibit "D" is a copy of co-defendants motion to dismiss.

6.    On March 23, 2006, plaintiff and Defendants entered into a Stipulation whereby plaintiff agreed to amend its complaint to cure the deficiencies in its First, Third and Fifth causes of action by April 20, 2006.  Annexed hereto as Exhibit "E" is a copy of the March 23, 2006 Stipulation.  Plaintiff was also granted additional time to respond Defendants motion.  Plaintiff declined to amend its complaint in accordance with the Stipulation, and also failed to oppose Defendants' motion to dismiss.

7.    On May 11, 2006, the court granted Defendants' motion and dismissed plaintiff's Complaint.  Annexed hereto as Exhibit "F" is a copy of the May 11, 2006 Order.

## PLAINTIFF'S SECOND CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MUST BE DISMISSED

8.    The conduct alleged in plaintiff's Complaint  occurred more than two years prior to plaintiff commencing this action.  Pursuant to CPLR § 215(3), a cause of action for intentional infliction of emotional distress must be commenced within one year of the allegedly

- 2 -

inappropriate conduct. Therefore, plaintiff's second cause of action is clearly outside the statute of limitations and must be dismissed. See Defendants' Memorandum of Law in Support.

9.    Even if plaintiff's claim was not commenced significantly outside the applicable statute of limitations, plaintiff's claim fails to allege conduct that approaches the "extreme and outrageous conduct" that the New York courts have determined to be actionable. See Defendants' Memorandum of Law in Support. The conduct alleged by plaintiff consists solely of email correspondence, and no physical touching or attempted touching is alleged. Accordingly, plaintiff's second cause of action must be dismissed.

## PLAINTIFF'S FIRST AND THIRD CAUSES OF ACTION FAIL TO STATE A CLAIM AND MUST THEREFORE BE DISMISSED

10.    Plaintiff's first and third causes of action make no reference to state, federal, or city statute allegedly violated by Defendants. The Complaint contains only conclusory allegations, with vague references to rights that were deprived of plaintiff by Defendants. Defendants are given no indication as to the elements of plaintiff's claims, the applicable standards of law, the relief sought by plaintiff, or the relief that plaintiff may be entitled to. Therefore, Defendants are deprived of their right under New York law to response appropriately and develop their defenses. See Defendants' Memorandum of Law in Support.

11.    Further, plaintiff served this deficient Complaint, despite acknowledging in a Stipulation the deficiencies of identical causes of action in her prior complaint, and despite being made aware of the applicable legal standards in Defendants' prior motion.

## DEFENDANTS SHOULD BE AWARDS COSTS AND ATTORNEYS' FEES

12.    The awarding of attorneys' fees pursuant to 22 NYCRR 130-1.1 is appropriate in this case, as plaintiff had both the time and information to correct the flaws of its prior complaint, and serve a Complaint that complied with New York law. See Defendants' Memorandum of Law

10790568.1

in Support. Nevertheless, plaintiff chose to serve a Complaint containing causes of action it knew to be flawed, thereby compelling Defendants to expend time, effort, and resources in responding to these claims yet again.

WHEREFORE, Defendant Steven Barritz and Robert Barritz respectfully request:

1.  Plaintiff's First and Second Causes of Action against Steven Barritz be dismissed in their entirety;

2.  Plaintiffs Third Cause of Action against Robert Barritz be dismissed in its entirety;

3.  Defendants be awarded costs and attorneys fees for this action;

4.  Any such other and further relief as this Court deems just and proper.

Dated: November 7, 2006
Jericho, New York

_____
Thomas M. Mealiffe

TO:   Gerald A. Bunting, Esq.
      Bunting, Goner & Associates PC
      1983 Marcus Avenue, Suite 117
      Lake Success, NY 11042
      (516) 358-8825

      Diane Krebs, Esq.
      Gordon & Rees LLP
      Attorneys for Defendants
      IBM, Isogon Corporation
      90 Broad Street, 23rd Floor
      New York, NY 10004
      (212) 239-5500

      Tetragon, LLC
      57 Ira Place
      Syosset, New York 11791

- 4 -

10790568.1